**JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsnd.com
Elana R. Levine, Esq. SBN 234155
lani@jrsnd.com
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone:  (310) 446-9900
Facsimile:   (310) 446-9909

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBY DAY; DE ANN YOUNG; JASON GLUCKMAN; JANE DOES 1-24, <br><br> Plaintiffs, <br> v. <br><br> CALIFORNIA LUTHERAN UNIVERSITY; CHRIS KIMBALL; MELISSA MAXWELL-DOHERTY; JIM MCHUGH; and ROES 1 through 200, inclusive, <br><br> Defendants. | Case No.:  8:21-cv-1286 <br><br> **COMPLAINT FOR:** <br> 1.  **Breach of Contract** <br> 2.  **Slander** <br> 3.  **Libel** <br> 4.  **False Light** <br> 5.  **Intentional Infliction of Emotional Distress** <br> 6.  **Negligent Infliction of Emotional Distress** <br> 7.  **Negligence** <br> 8.  **Violation of Title IX** <br> 9.  **Retaliation** <br> 10.  **Hostile Work Environment** <br> 11.  **Constructive Termination** <br> 12.  **Violation of Labor Code §2699** <br> 13.  **Violation of Business and Professions Code § 17200** <br><br> **DEMAND FOR JURY TRIAL** |

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

COMES NOW Plaintiffs Debby Day, De Ann Young, Jason Gluckman, and JANE DOES 1-24 who allege as follows:

## INTRODUCTORY STATEMENT

1.   What does a university do when its accreditation has been threatened due to its longstanding record of fostering racial and gender inequality? It deflects and distracts by: a) manufacturing a sham racially-derogatory event; b) publicly blaming that sham event on a visible group of people that it believes are powerless to defend themselves; and c) making a showing of punishing that powerless group to deceive the public into believing that the university is active in combatting racism on campus.

2.   Defendant California Lutheran University ("CLU") is an accredited undergraduate and graduate institution of higher learning located in Thousand Oaks, California. CLU receives its accreditation from the Western Association of Schools and Colleges ("WASC"). In January 2020, CLU was under investigation by the WASC's Senior College and University Commission ("WSCUC") in part for its history of racial and gender equality-related failures.

3.   CLU's operations at this time were being run in relevant part by its then-President, Chris Kimball ("Kimball"), and its Vice President of Mission and Identity, Pastor Melissa Maxwell-Doherty ("Doherty").

4.   CLU has an NCAA Division III Women's Softball Team ("Softball Team"). During the same time the WASC was investigating CLU, the Softball Team held a team-bonding lip-sync event with makeup and costumes. Five members of the team wore facial hair makeup to disguise themselves as males. Three of these young women wore hats, and two wore Caucasian male wigs (i.e., Napoleon Dynamite costume wigs). Pictures of these members of the Softball Team at said event were subsequently posted to social media.

5.   Defendants Kimball and Doherty viewed said pictures and confirmed with the Softball Team, their coaches, and their parents that said Softball Team members: a) were under the supervision of an African-American Softball coach; b) had makeup on their

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

faces to resemble men's facial hair in the form of beard stubble and goatees; and c) were not engaged in any racially motivated activities. Despite such confirmation, Defendant Kimball and Doherty publicly proclaimed to the community and national press that: a) said conduct constituted "Blackface"; b) Plaintiffs participated in and/or allowed "comedic performances of 'blackness' by whites in exaggerated costumes and makeup"; c) CLU intended to "call attention" to the event; and d) "[t]hose who are responsible will be held accountable."

6.    To make matters worse, Defendant CLU in general, and Defendants Kimball and Doherty in particular, allowed the Softball Team and their Coaches to be publicly shamed and harassed, placed in fear for their safety, and to otherwise suffer lifelong injury to their mental health and reputations. At one point, one of the leaders of the Softball Team expressly informed Defendants in writing that the young women on the Softball Team were in desperate need of help by mental health professionals as a result of the events put in motion by Defendants. The response by CLU in general, and Defendants Doherty and Kimball in particular, was deafening silence.

7.    It is now time for CLU to be held accountable for their gender inequality, for the damage they have unnecessarily caused to be inflicted on the 24 members of the Softball Team (19 of which did not take part in the performance at issue), and for the hostile work environment and constructive firing it inflicted upon the Softball Team's coaching staff.

## THE PARTIES

8.    Plaintiff Debby Day ("Coach Day") is, and at all relevant times was, an individual employed in Ventura County, State of California, and was the head coach of the Softball Team.

9.    Plaintiff De Ann Young ("Coach Young") is, and at all relevant times was, an individual employed in Ventura County, State of California, and was one of the assistant coaches of the Softball Team.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

10.   Plaintiff Jason Gluckman ("Coach Gluckman") is, and at all relevant times was, an individual employed in Ventura County, State of California, and was one of the assistant coaches of the Softball Team.

11.   Plaintiff JANE DOES 1 through 5 ("DOES 1-5") at all relevant times were students at California Lutheran University, in Ventura County, State of California, and members of the Softball Team. DOES 1-5 took part in the lip-sync performance at issue in this case.

12.   Plaintiff JANE DOES 6 through 24 ("DOES 6-24") at all relevant times were students at California Lutheran University, in Ventura County, State of California, and members of the Softball Team. DOES 6-24 did not take part in the lip-sync performance at issue in this case.

13.   Plaintiffs JANE DOES 1-24 are filing this complaint under pseudonyms because this case is one of a sensitive nature, and Courts have recognized and allowed such cases to be brought through the use of pseudonyms under such circumstances. See, e.g., *M.G. v. R.D.*, No. B159974, 2003 WL 21129878, at *3 (Cal. Ct. App. May 16, 2003).

14.   Plaintiffs are informed and believe that, at all relevant times, Defendant CLU is and was an undergraduate and graduate institution of higher learning located at 60 West Olsen Road, Thousand Oaks, California 91360, Ventura County, State of California.

15.   Plaintiffs are informed and believe that, at all relevant times, Defendant Chris Kimball ("Kimball") was the President and Chief Executive Officer of CLU.

16.   Plaintiffs are informed and believe that, at all relevant times, Defendant Pastor Melissa Maxwell-Doherty ("Doherty") was a Campus Pastor, as well as the Vice President for Mission and Identity.

17.   Plaintiffs are informed and believe that, at all relevant times, Defendant Jim McHugh ("McHugh") was the Associate Vice President of CLU.

18.   Plaintiffs are informed and believe that Defendant CLU receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C. § 1681 ("Title IX").

19.   The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants ROES 1-200, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs allege on information and belief that each of the Defendants designated herein as a fictitiously named Defendant are, in some manner, responsible for the events and happenings referred to, either contractually or tortuously, and/or that such fictitiously named Defendants are liable in some manner for the obligations described herein below. When Plaintiffs ascertain the true names and capacities of ROES 1-200, Plaintiffs will amend this Complaint accordingly.

20.   Plaintiffs are informed and believe that at all relevant times mentioned herein, Defendants, including those fictitiously named as ROES 1 through 200, in doing the things alleged in this Complaint, acted in concert and conspired with or aided and abetted each other to do the acts complained of in this complaint, and that each Defendant acted, at all times, as the agent, partner, co-conspirator, co-venturer, joint venturer, representative or employee of the remaining Defendants and were acting within the scope and purpose of that agency, partnership, joint venture or employment, such that the acts and conduct of each Defendant, including those named herein as ROES, was known to, authorized by and ratified by the other Defendants. Plaintiffs are further informed and believe that each of the Defendants named herein engaged in wrongful conduct that is a cause of Plaintiffs' damages, and are responsible in some manner for the damages sustained by Plaintiffs.

## JURISDICTION

21.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

22.   The damages, which are the subject of this lawsuit, occurred within the County of Ventura, State of California.

23.   Defendants targeted Plaintiffs, who, at all relevant times, were students and/or employees of CLU in the County of Ventura, State of California.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

24.   Defendants' behavior and wrongful conduct substantially occurred in the County of Ventura, within the jurisdiction of the United States District Court for the Central District of California.

25.   Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to this claim took place in this judicial district, and Defendants reside in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

### A. GENERAL BACKGROUND

26.   CLU is a private university in the affluent Los Angeles-area suburb of Thousand Oaks, California, and has a robust NCAA Division III sports program.

27.   CLU is accredited by the WASC's WSCUC for federal funding in a number of programs, including student access to federal financial aid.

28.   Plaintiffs are informed and believe that many of CLU's students, including, but not limited to DOES 1-24, receive federal financial aid.

### B. CLU'S POOR HISTORY WITH REGARD TO RACIST EVENTS

29.   Plaintiffs are informed and believe that CLU and its agents have a history of indifference to racial issues on campus, and otherwise have a documented history of racial and gender inequality.

30.   Plaintiffs are informed and believe that in a February 11, 2020 article published by the CLU newspaper, The Echo, Defendant Kimball acknowledged that racism on campus is "a long-standing issue."[1] The article memorializes that students on campus have witnessed racism and racial events to which the CLU administration is perceived to have responded in an unsatisfactory manner.

31.   Plaintiffs are informed and believe that, by way of example, The Echo quotes witnesses to prior racial events on campus such as observing students standing up on tables and using the N-word. *Id.*

---

[1] https://cluecho.com/13000/news/racial-climate-a-long-standing-issue/

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

32.    Plaintiffs are informed and believe, that, in another incident in February 2019, a professor at CLU had his office vandalized. He also received notes and emails that were hate-fueled and racist.[2] Plaintiffs are further informed and believe that the CLU administration conducted an investigation into the matter that concluded on or about March 20, 2020 with no action being taken. *Id.* Plaintiffs are further informed and believe that, outraged at this conclusion, representatives of the student body submitted a petition challenging the manner in which the CLU administration handled their dilatory investigation, and otherwise shamed Defendant Kimball and the CLU administration into re-opening the investigation in April 2020.[3]

33.    Plaintiffs are informed and believe that, in or around 2010, it was publicly reported that swastikas had been painted on a car window and a dorm window at the CLU campus.[4]

34.    Plaintiffs are informed and believe that in or around 1997, it was reported by the Los Angeles Times that CLU experienced a rash of racist and homophobic graffiti and neo-Nazi literature appearing around campus.[5] Plaintiffs are further informed and believe that the Los Angeles Times also memorialized that CLU was widely criticized for its response to these incidents. *Id.*

35.    Plaintiffs are informed and believe that, because of CLU's poor record on racial issues and diversity, outside intervention was required by the WSCUC in 2007, in 2013, and again in 2015.

---

[2] https://www.change.org/p/california-lutheran-university-president-and-cabinet-justice-for-dr-gill; also see https://cluecho.com/13260/news/inconclusive-evidence-one-year-after-professors-office-is-vandalized/#photo
[3] https://cluecho.com/13652/news/president-agrees-to-reopen-inconclusive-investigation-into-vandalization-of-professors-office/
[4] https://www.splcenter.org/fighting-hate/hate-incidents?keyword=lutheran&state=IA&f%5B0%5D=field_hate_incident_type%3A3&f%5B1%5D=field_state%3A19
[5] https://www.latimes.com/archives/la-xpm-1997-04-16-me-49323-story.html

36.   Plaintiffs are informed and believe that WSCUC issued a Special Visit Institutional Report ("Report"), dated December 20, 2019, which described several areas where sustained progress was necessary for CLU's diversity, equity, and inclusion goals, specifically in the following areas:

> "More efforts are needed to ensure equity and inclusion, to provide institution-wide equity and inclusion training ... Refinement is needed in the Comprehensive Equity and Inclusion Plan, including assessment of progress. Changes are needed to improve retention and graduation rates of Black students as well to ensure that Cal Lutheran is not only a Hispanic enrolling institution, but an authentically Hispanic serving institution'…"

37.   Plaintiffs are informed and believe that throughout said Report, constituents cited a need for campus-wide training on holding difficult conversations about race and other politically charged topics about identity, and the necessity of reinforcing the training throughout the academic year. They cited Human Resources as lacking the professional knowledge and resources to provide such trainings.

38.   Plaintiffs are informed and believe that CLU is currently "in danger of violating [its accreditor's] standards," due in part to the toxic racial climate Defendants created on campus.[6] "Colleges that violate such standards are at risk of losing accreditation and access to federal financial aid."[7]

39.   Plaintiffs are informed and believe that on or about February 12, 2020, another racial incident occurred when it was discovered that a racial slur was etched into a Trinity Hall elevator.[8] Plaintiffs are informed and believe that these identified racial incidents, and many others that have not been publicly reported, put pressure on CLU's administration's to take drastic measures to try and change through public relations

---

[6] https://www.chronicle.com/newsletter/race-on-campus/2021-03-30
[7] *Id.*
[8] https://cluecho.com/13039/news/board-of-regents-to-address-unrest-on-campus/

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

efforts the outward perception that CLU has a deplorable record in responding to racism and inequality. As such, Defendants adopted a new (and legally questionable) strategy of publicly shaming people who they subjectively perceived to have engaged in racism or other "things which are not acceptable."[9]

### C. COACH DAY SPEAKS OUT REGARDING DISPARATE TREATMENT OF THE SOFTBALL TEAM

40.    At the time of the relevant events described herein, Coach Day was in her 18th year as head of the CLU Softball Program. During her time at CLU, Coach Day has held many titles, including: Senior Woman Administrator; Compliance Officer; Assistant Athletic Director; and Head Softball Coach.

41.    In or about February 2019, Coach Day observed that there was disparate treatment of CLU Athletic teams by the Athletic Department with regard to strength and conditioning training. In particular, Coach Day observed that her Softball Team, which is in-season during the spring, was scheduled for only one day a week with CLU's strength and conditioning coaches, but that the CLU Women's Volleyball Team and Women's Soccer Team were scheduled three times per week during their off-season. Coach Day observed that such scheduling of off-season teams for such training in the manner in which CLU was doing so was a potential violation of Rule 17.02.1.1.1.4.19 and 17.02.1.1(f)10 of the NCAA Division III Bylaws.

42.    Plaintiffs are informed and believe that in order to make sure that she was interpreting the NCAA Division III Rules correctly, on February 1, 2019 Coach Day emailed the then Executive Director for the Southern California Intercollegiate Athletic Conference ("SCIAC"), asking for clarification.

---

[9] Defendant Kimball stated in an interview with The Echo that the CLU administration would be responding to perceived incidents of racisms by: "**calling out people** when they do things which are not acceptable." See https://cluecho.com/13000/news/racial-climate-a-long-standing-issue/

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900, Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

43.   Plaintiffs are informed and believe that Coach Day then brought the information she received from the SCIAC to Defendant McHugh's attention via email and in a personal meeting that took place on February 4, 2019.

44.   Plaintiffs are informed and believe that during the February 4, 2019 meeting, Defendant McHugh denied the NCAA violations and the disparate treatment of the Softball Team having less access to strength and training coaches than CLU's favored volleyball team – even though the CLU volleyball team was not in-season – and he merely stated that CLU was in compliance despite evidence to the contrary.

45.   Plaintiffs are informed and believe that in May 2019, Defendant McHugh issued his evaluation of Coach Day, with which Coach Day understandably took issue. As such, Coach Day drafted notes of her meeting with Defendant McHugh and provided them to CLU Human Resources.

46.   Plaintiffs are informed and believe that in said notes, Coach Day memorialized that she was required by Defendants McHugh and CLU to maintain a .500 win average or would be fired. Coach Day stated that she felt she was being retaliated against and targeted for reporting said violations, as CLU had never fired a coach in her previous 17 years for not winning enough games. She also took issue with a new CLU requirements imposed on her that she attend NCAA Conventions that are scheduled during conference games. Additionally, Coach Day raised the issue that there still was a lack of equity for all athletes/programs at CLU.

47.   On or about August 22, 2019, Coach Day submitted a rebuttal to Defendant McHugh's evaluation. Said rebuttal again memorialized the inequitable treatment of the Softball Team, the unethical practice of recruiting athletes for admittance who do not satisfy normal academic standards, the lack of financial resources for assistant coaches for the Softball Team compared to other CLU programs (including CLU Men's sports programs), and the fact that Defendant McHugh's comments to Coach Day in their previous meeting were more of a personal nature.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

48.    In addition, Coach Day submitted a document to CLU Human Resources dated August 22, 2019 entitled "CLU Strength and Conditioning Concerns." Said document outlined that: CLU was potentially in violation of NCAA Division III rules with regard to how CLU has been providing strength and conditioning training to CLU athletes, and that Coach Day felt like she was being targeted for retaliation for raising these concerns.

49.    Thereafter, on or about September 21, 2019, Coach Day sent CLU Human Resources a follow-up to a previous report regarding the Athletic Department. This document expressly stated that certain comments from Defendants Kimball and McHugh have come to Coach Day's attention that "have escalated this situation from concern to a hostile workplace." Therein, Coach Day confirmed she was informed that Defendant Kimball thinks so little of Coach Day and the softball program, and that is why he scheduled his meeting with Coach Day in September instead of the end of season – as he does with other coaches. She also learned that Defendant Kimball demeans Coach Day to other coaches by stating that she does not meet with Admissions to see if academic requirements can be skirted to let in certain athletes that do not meet CLU's standard academic requirements. Coach Day was also informed that Defendant McHugh said that he does not like Coach Day and wants her gone, and that CLU needs to get rid of Coach Day. Coach Day believes such hostile statements are a direct result of her reporting the aforementioned violations.

50.    Plaintiffs are informed and believe that, as further punishment for Coach Day reporting CLU's aforementioned violations, the Softball Team was thereafter denied *any* access to strength training during their off-season in the fall, which was in direct contrast to other teams receiving multiple days of strength training per week during their off-season.

51.    Plaintiffs are informed and believe that in October 2019, CLU hired Van Dermyden Law Corporation to conduct an independent investigation of CLU and the claims made by Coach Day. Based thereon, an Executive Summary of Investigative Findings was issued on January 17, 2020. Said Summary found that CLU had not denied the Softball

Team equitable access to strength and conditioning time because of *gender*. It also determined that Defendant McHugh had not retaliated against Coach Day. The problem with the Summary, however, is that Coach Day never said that the Softball Team was denied access to strength and conditioning based on *gender*, but rather based on favoritism of certain athletic programs over others rather than need, and in a manner than violated NCAA bylaws. It also failed to address Coach Day's accusations against Defendant Kimball. Additionally, on January 24, 2020, Coach Day sent the investigator an email memorializing that the CLU Football Team had played ineligible players without reporting said infraction to the NCAA in direct violation of NCAA bylaws. Subsequently, no effort was made to correct said Executive Summary of Investigative Findings.

### D. CLU'S TITLE IX VIOLATIONS WITH REGARD TO ITS DISPARATE TREATMENT BETWEEN THE MEN'S BASEBALL PROGRAM AND THE WOMEN'S SOFTBALL PROGRAM

52.    During said investigation, Coach Day met with Kuntz to discuss the needs of the CLU Softball program, including maintenance issues of the Softball field. This was memorialized in an email dated December 16, 2019.  During said conversation, Coach Day identified the drastic inequities that exist between that which has been afforded to the CLU Men's Baseball program versus the CLU Women's Softball program.

53.    By way of example, and not limitation, the following are just some of the blatant inequities as to competition and practice facilities and services that exist between the CLU Men's Baseball program and the CLU Women's Softball program:

54.    CLU's Men's Baseball has a JV program, which allows for Men's Baseball to maintain a large roster of players, and otherwise receive additional discretionary funds for additional coaching staff and other services. In contrast, CLU has mandated that the Women's Softball program shall not have a JV program. In depriving Women's Softball a JV program, the Women's Softball Program did not have access to the same player retention abilities, competitive opportunities, and/or ability to hire additional coaching staff as has been provided to the CLU Men's Baseball program.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

55.     Baseball has a complete stadium that cost approximately $3 Million to build, including permanent decorative fencing and locking doors around the complex. Softball has a field surrounded by a chain link fence with a padlock on the gate.



Men's Baseball Stadium                    Women's Softball Field

56.     Baseball has permanent seating (including former and historic Dodger stadium seats) and an occupant load of 611. Softball has portable metal bleachers – two with three rows and one full size bleacher of the style commonly used at little league fields behind the backstop.

57.     Baseball has permanent covering over all spectator seating to protect spectators from the sun.  Softball has nothing over the spectator benches and are in direct sunlight with no natural shade.

58.     Baseball has a permanent masonry building behind home plate, which houses a men's and women's restroom, a snack bar and a second story press box/control room. Softball has a portable metal bench and a portable folding table behind home plate that serves as a makeshift press box. This makeshift press box also has no permanent shade. The softball field has no snack bar and no restrooms. The closest restroom is over 100 yards away from the softball field in the main sports building.

59.     Baseball has a wireless scoreboard that includes pitch speed, which was purchased when the new facility was built.  The softball field has a malfunctioning wired scoreboard that is over 20 years old and is in constant need of maintenance.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

60.    Baseball has a permanent sound system with a microphone housed in the press box. Softball has a portable speaker on a stand and a portable microphone that occasionally works.

61.    Baseball has permanent concrete dugouts with easy-access storage compartments for player equipment, a team meeting room, and a coach's office. The softball field has none of these facilities or services. Instead, the softball field only has chain-link-fenced dugouts with a bench and worn tarps that attempt to cover the top and sides thereof.

 

Men's Masonry Baseball Dugout                    Women's Softball Dugout

62.    Baseball has permanent storage behind the visitor's dugout. Softball uses an old shed.

63.    None of these glaring and obvious inequities in the quality of the facilities between the CLU Men's Baseball program and the CLU Women's Softball program were considered in Van Dermyden Law Corporation's Title IX investigation, and Plaintiffs are informed and believe that no one from CLU provided such information to Van Dermyden Law Corporation to investigate, thus making said investigation a sham.

**E.  THE LIP-SYNC EVENT**

64.    At the conclusion of the CLU Softball Team's "Hell Week," it is tradition for the members of the team to break into smaller groups of four or five girls and to perform a

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

choreographed lip-sync routine while wearing costumes and makeup as part of a team-bonding activity. Plaintiffs are informed and believe that this is not an uncommon practice amongst CLU's athletic teams in particular, and NCAA athletic teams in general.

65.     Plaintiffs are informed and believe that the CLU Volleyball team holds a lip-sync team-bonding event every year as well. In the fall of 2018, the CLU Volleyball team posted pictures of such an event to their Instagram page wherein the theme was the "Boy Band Experience."  As such, the CLU Volleyball team posted pictures of themselves dressed like men in Hip-Hop clothing, wigs, gold chains, and makeup resembling facial hair, including a group of non-black CLU Volleyball players in curly wigs portraying the pop group, The Jackson 5.[10]

66.     The parameters of which songs and routines could be performed by the Softball Team members were set forth by Coach Day. Specifically, Coach Day recommended that songs from the 90s or earlier be used because they tend to be more family-friendly than current music, and the routines had to be tasteful to the point that they would not be ashamed to perform them in front of their grandmothers.

67.     Just like the CLU Volleyball Team,[11] one group comprised of DOES 1-5 decided to dress like "dudes" in a "Boy Band" with the style of Hip-Hop clothing worn by "Boy Bands." Said group decided to add hats or wigs to hide their feminine hairstyles, and makeup to portray facial hair to make their faces appear more masculine. DOES 1-5 decided that they wanted to dress like "dudes" before picking the song that were to perform: *to wit,* the theme song to the television show *The Fresh Prince of Bel-Air.* [12]

_____

[10] See https://www.instagram.com/p/BnAtoPOBpLy/?utm_source=ig_web_copy_link
[11] Plaintiffs do not contend that the Volleyball Team did anything wrong or racially insensitive in dressing like men with wigs and perform songs originally performed by African-American artists. Plaintiffs contend that it would be racial discrimination to make such an assertion, as CLU did with the Softball Team.
[12] *The Fresh Prince of Bel-Air* is an American sitcom television series that originally aired on NBC from September 10, 1990 to May 20, 1996. The show stars Will Smith as a fictionalized version of himself, a street-smart teenager from West Philadelphia who is

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

68.    These members of the Softball Team chose to perform *The Fresh Prince of Bel-Air* theme song for two reasons: 1) They all grew up watching the show and enjoying the theme song; and 2) most of the Softball Team shared the common experience of moving to an affluent suburb of Los Angeles (Thousand Oaks) to attend CLU from far-away and/or humble households, and therefore related to the television show's premise of experiencing the culture shock of doing so.

69.    As planned, on or about January 21, 2020, the Softball Team finished their last pre-season practice, and had an hour to change into their costumes and get to the CLU performing arts building to perform their lip-sync routines. The lip-sync routines were threat observed by Coach Day, and Coach Gluckman, and most notably Coach Young, who is African-American.[13]

70.    Plaintiffs are informed and believe that the group in question – DOES 1-5 – dressed in their hip-hop costumes, with two of the girls wearing dirty-blond "Napoleon Dynamite" wigs.

 

_____

sent to move in with his wealthy uncle and aunt in their Bel Air mansion after getting into a fight in his hometown. In the series, his lifestyle often clashes with the lifestyle of his relatives in Bel Air. https://en.wikipedia.org/wiki/The_Fresh_Prince_of_Bel-Air

[13] Plaintiffs are informed and believe that the CLU administration was completely unaware that Coach Young was African-American when they made their false claims that the CLU Softball Team had engaged in a "Blackface" performance in front of her during an event that she was jointly supervising.

71.   Said routine was clean, fun, and enjoyed by those who attended. More particularly, Coach Day, Coach Young, and Coach Gluckman confirmed that neither the subject matter, nor the routine, were offensive, insensitive, or derogatory. As such, the Softball Team posted pictures and videos of said routine to their Team Instagram page.

72.   On or about January 26, 2020, Coach Day received a message from Kuntz saying that an unidentified CLU staff member complained to Defendant Kimball that the Softball Team posted a "Blackface" performance to social media. Coach Day confirmed that no such "Blackface" performance took place, and that DOES 1-5 were wearing makeup to resemble male facial hair. However, she stated that she would have the Softball Team take the performance down from social media to avoid anyone misinterpreting the event.

73.   Thereafter, the Softball Team and coaches told Kuntz what had happened at the lip-sync event and confirmed that there was no "Blackface" performance. They were told that the complaint from the unidentified CLU staff member was that some of the girls in the performance appeared to be wearing "Blackface" makeup on their entire faces.  In response, the team confirmed that the girls were dressed as men with facial hair, and that nothing inappropriate was done at the lip-sync event. More importantly, the Softball Team informed Kuntz that they are all socially conscious and extremely aware of the fact that the members of their team and coaching staff are ethnically, racially, and sexually diverse, and that they would never do anything that would be make anyone feel discriminated against, ridiculed, or not included because of ethnicity, race or sexual orientation.

74.   Plaintiffs are informed and believe that, on or about February 5, 2020, Defendant Kimball caused and/or allowed CLU to send a blast email to the entire CLU community and to every email address in the CLU system. At no time prior to this email did Defendant Kimball attempt to perform any direct investigation into this matter. Specifically, Defendant Kimball had not directly communicated with any of the coaches or the Softball Team to try to learn exactly what occurred at the lip-sync performance. Despite this, Defendant Kimball stated in his February 5, 2020 email that CLU students had engaged in a form of racism and confirmed that such an incident involved "Blackface."  A true and

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

correct copy of Defendant Kimball's February 5, 2020 email is attached hereto as Exhibit "1," and is incorporated herein by this reference. The email further stated: "Those who are responsible will be held accountable." *Id*.[14]

75.    Plaintiffs are informed and believe that the sending of said email was designed to harass and inflict significant harm on Plaintiffs. This is due to the fact that Defendant Kimball and/or whomever wrote said email and put Defendant Kimball's name on it (i.e., a person believed to be Defendant Doherty), had no legitimate need to reference any specific racist incident therein, let alone a false claim that a "Blackface" incident had been perpetrated by any CLU student, in order to communicate that CLU does not condone racism.

76.    Plaintiffs are informed and believe that no one associated with CLU's Women's Softball Team has engaged in, or allowed anyone to engage in, "Blackface" as the term is and was understood by the general public who saw said email, which is also the same understanding as the term is defined by the Oxford Learner's Dictionary, Merriam-Webster Dictionary, Cambridge Dictionary, Macmillan Dictionary, Collins English Dictionary, Lexico.com, definitions.net, dictionary.com, yourdictionary.com, vocabulary.com, or even urbandictionary.com; *to wit,* "Blackface" is the actual wearing of **dark facial makeup to give the appearance of a black person**.

77.    Plaintiffs are informed and believe that although Defendant Kimball did not expressly identify the members of the Softball Team as being the subjects of his "Blackface" statement in said February 5, 2020 email, it was well known in the CLU community and elsewhere that said February 5, 2020 email was referring to the Softball Team.  This was confirmed when, almost immediately after Defendant Kimball sent out the defamatory February 5, 2020 blast email to thousands of people falsely confirming as

---

[14] Plaintiffs are informed and believe that the February 5, 2020 email also made reference to a then-recent video posting of a Caucasian female CLU student, not affiliated with the CLU Softball program, using the N-word in a non-derogatory manner with her African-American friend. Said video went viral and caused outrage on the CLU Campus.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

fact that CLU students posted pictures of themselves on social media in "Blackface," a member of the CLU student governing body confirmed on social media that he understood said email to be referring to the Softball Team.

78.     Plaintiffs are informed and believe that Defendant Kimball's February 5, 2020 email sparked significant and racial outrage on campus and immediately went viral. By way of example, the CLU Newspaper, The Echo, published on February 5, 2020 to thousands of people in an article entitled "Student-Athletes Involved in Racist Incidents." Said article confirmed that Defendant Kimball stated as fact that a "blackface" incident occurred involving student-athletes, and that they would be held accountable.[15]

79.     Plaintiffs are informed and believe that the story was then published on February 6, 2020 by the Ventura County Star[16] in an article entitled: "Racial Social Media Posts by Cal Lutheran Students Denounced by School Officials."[17] The story about the offending February 5th email then made national news on February 7, 2020 when it was published in USA Today[18] in an article that stated: "In one video, students wearing what looked to be blackface lipsynched a song."[19] [20]

---

[15] See https://cluecho.com/12954/news/student-athletes-involved-in-racist-incidents/
[16] The VC Star reported their daily readership in 2016 to be between 45,700 and 58,000. See https://www.pacbiztimes.com/2016/04/08/gannett-buys-ventura-county-star/
[17] https://www.vcstar.com/story/news/local/communities/conejo-valley/2020/02/06/racial-posts-cal-lutheran-students-denounced-school-officials/4683135002/
[18] USA Today reported a combined daily circulation of 1,231,306.   See https://en.wikipedia.org/wiki/USA_Today
[19] https://www.usatoday.com/story/news/nation/2020/02/07/gray-wolf-blackface-homelessness-oscars-joker-mlb-friday-news/4691574002/
[20] Other news articles about the incident https://vcreporter.com/2020/02/clu-softball-team-accused-of-blackface-all-sides-say-admin-response-misses-the-mark/ ; https://www.newsbreak.com/news/0OC8h4x4/clu-softball-team-accused-of-blackface-all-sides-say-admin-response-misses-the-mark; https://www.kclu.org/post/south-coast-university-officials-say-they-are-investigating-some-racist-posts-students#stream/0

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

80.    Plaintiffs are informed and believe that the CLU Black Student Union ("BSU") published an open letter confirming that, but for Defendant Kimball's February 5th email, they "would have not known [of] the Blackface incident." The public letter also threatens: "If appropriate actions (expulsion or suspension) are not taken against these students by the university, we will take matters into our own hands."

81.    Horrified, embarrassed, and fearful for their own safety due to the racially motivated harassment being instituted against them, the Softball Team convened on February 6, 2020 and wrote a letter for Kuntz and Defendants McHugh and Kimball to publish to the CLU Community apologizing for any misunderstanding that may have been caused by their social media post. The letter stated in part:

> "A couple of weeks ago, the California Lutheran University Softball team posted a series of photos and videos featuring different costumes from a team bonding activity. A few of these costumes featured apparel and hairstyles that were perceived as racially insensitive. Additionally, members drew on facial hair that when looked at in a photograph came across as blackface. These were not the intentions of those wearing the beards and no one in attendance viewed the beards as such. Even though the beards were perceived as blackface, no blackface was worn. Nevertheless, we acted from a place of ignorance and had no intention to cause any sort of harm. We acknowledge the place of privilege we come from and accept the harm we have caused to many, and we apologize profusely."

82.    Plaintiffs are informed and believe that the apology letter was given to Defendant Kimball's office through Kuntz and Defendant McHugh. To date, Defendants have kept this letter a secret, and have otherwise continued to promulgate the lie that the Softball Team engaged in a racist "Blackface" incident.

83.    Plaintiffs are informed and believe that this apology letter was, and continues to be, kept a secret because it discloses that Defendants misled the public into believing that an actual racist "Blackface" event had occurred. In turn, the publishing of said apology

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

letter would have garnered sympathy for Plaintiffs and caused a negative backlash against CLU for their gross mishandling of the event.

84.     On or about February 7, 2020, the Softball team was making preparations to leave on February 8, 2020 for Texas, whereat they were scheduled to play six away-games over the course of a week. Instead, they were forced to meet with multiple administrators for several hours that kept trying to convince the players to confess that they did something wrong. However, the Softball Team would not budge, and steadfastly protested their innocence with regard to anyone claiming they engaged in a racist performance of "Blackface."

85.     Thereafter, at approximately 9 PM on February 7, 2020, the Softball Team was informed by Defendant Kimball that he had canceled the Texas trip and that all members of the CLU Softball program were to attend a meeting at CLU with Defendant Kimball to discuss the "Blackface" incident. In addition, the coaches were informed that they were being put on administrative leave pending an investigation in order to determine whether they were to be disciplined and/or terminated, and were otherwise instructed to have no contact with the Softball Team.

86.     Plaintiffs are informed and believe that on or about February 8, 2020, the coaches and players attended said meeting with Defendants Kimball and Doherty, along with a number of the players' parents. The following list contains items of particular note that were memorialized on an audio recording of said meeting:

•     @ 1:27 Defendant Kimball talks about the Texas trip and says that he canceled the Texas trip **not as a punishment**, but rather the trip was going to have the Softball Team gone for nearly a week while "all this stuff is bubbling up on campus," and he needs to "deal with all of this stuff now" and not a week from now when they get back.

•     @3:15 Defendant Kimball states that he **does not believe that anyone was intending any bad things toward any CLU student.** But, things have been done that have been perceived as hurtful.

- @3:36 Defendant Kimball states he is aware the team is angry about the February 5th email. He acknowledges the team believes that said email put a target on the team's back and condemned them for things that they do not believe they did.

- @5:39 Defendant Kimball says that he understands the argument that the team did not do what they are accused of, and that **he believes in his heart that the Team did not intend to do anything racist**. He then says, however, that there is a distinction between intent and impact and that some of the images play to things that are hurtful.

- @6:56 Defendant Kimball says he needs to learn this lesson as much as anybody because he is "an old white male" with privileges.

- @7:56 Defendant Kimball acknowledges there are concerns about safety and that the team has received threatening comments.

- @9:14 Defendant Kimball is questioned by a parent as to what he saw in the videos and if anyone was in "Blackface." Defendant Kimball responds that **he saw a number of photographs and a video and that this was girls wearing male beard stubble**.

- @11:13 One player speaks to Defendant Kimball and tells him that he needs to think not about the intent of his email, but the impact of his email. The impact was that he hurt all of the team. He is in a position of authority and is supposed to protect them and instead he hurt them. That the statement was issued without him knowing all of the facts. She says that the entire school hates them because Defendant Kimball told the entire school that they did "Blackface" when they did not. The player stated Defendant Kimball sent out the email before doing an investigation. Because of Defendant Kimball's carelessness, everyone on the team is now hurt. He did not need to cancel the Texas trip for his own convenience. He could have met with the Team on Wednesday or Thursday or Friday and he made no effort to do so. "Blackface" is a loaded word and he was irresponsible to tell CLU that they did that.

- @13:40 Defendant Kimball says that there are folks that would say that it is "Blackface" as they understand the word – referring to how the girls were dressed, including the wigs.[21]

---

[21] Plaintiffs are informed and believe that, when faced with conclusive evidence that none of the members of the Softball Team had put makeup on their face to imitate a person of color, Defendant Kimball for the first time pivoted to defend his February 5, 2020 email at this meeting by claiming that dressing like men with wigs and wearing "Hip-Hop"

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

- @14:14 Coach Day states that she had not been asked by anyone directly from Defendant Kimball's office about anything regarding the incident and there had been zero communications with her or any of the coaching staff.

- @15:07 Another team member says that Defendant Kimball was dishonest about the reasons he canceled the Texas trip. She says that the incident was brought to their attention two weeks prior and that he did nothing to address it until the evening of the Texas trip. He could have investigated the incident weeks ago, have the group go to meetings and handle the situation before this became a big situation. But no one came to them to properly investigate the matter.

- @17:55 Another player tells Defendant Kimball that it was her dream to come to CLU to play softball for CLU. She tells Defendant Kimball that **everyone knew immediately after he sent the February 5 email that he was referring to the Softball Team**. She said she is afraid to wear her softball gear on campus. She said, as a result of the February 5 email, **students are now calling her racist, and telling her "your ass is going to be fucking beat."** She said Defendant Kimball should know the impact this has had on her family; that they are freaking out.

- @19:08 Another player tells Defendant Kimball that he associated the softball team in his email with an unrelated N-Word incident not involving Plaintiffs. That doing so was **a detrimental attribution that will follow the players for the rest of their college career and after**. She states that **the team is now afraid to be on campus**.

- @26:24 Defendant Kimball says in response to another player accusing him of mishandling the situation that he should have done things differently. Defendant Kimball claims that what they did was "Blackface." Defendant Kimball claims that there are different definitions for "Blackface" for some people, alluding to use of a wig or dressing in hip-hop clothing. The parents erupt uniformly in disagreement. Parents then accuse Defendant Kimball of being the problem by stereotyping that Hip-Hop dress is exclusively meant to mimic black people.

---

clothing was racist and constituted "Blackface." The right to dress in "Hip-Hop" clothing is not exclusive to people of color, and it is actually discriminatory racism to make such an assertion. Likewise, as stated earlier, the dirty blond wigs at issue were part of a Napoleon Dynamite costume – a white male movie character – that were worn to imitate males and not people of color. The fact remains that, had the members of the subject routine in question been African-American, Defendants would not have stated that wearing Napoleon Dynamite wigs and "Hip-Hop" clothing was "Blackface."

87.     During said meeting, Defendant Kimball also admitted that he did not write the email himself, as he was on an airplane when it was sent. Rather, he claims someone else wrote the email and put his name on it, but that he would take responsibility for its content. Plaintiffs contend that the offending February 5th email was actually written and sent in whole or in part by Defendant Doherty, and that she put Defendant Kimball's name on it.

88.     Thereafter, the Softball Team was forced to attend a mandatory meeting with the CLU Pastors for several hours under the pretense that it was to be a private and confidential counseling session between the players and their spiritual advisors. In reality, the purpose of the meeting was to allow Defendant Doherty to pressure the players into confessing that they engaged in a racial "Blackface" event, and that they otherwise did something worthy of punishment.

89.     Plaintiffs are informed and believe that, at no time during this "counseling session" did Defendant Doherty disclose that she was the author of the February 5th email that harmed the players, that she intended to continue to harm the players if they failed to confess, and that she intended to use the information in said meeting to do so. As such, it is likely that Defendant Doherty violated her duties owed to the players as a Lutheran Pastor in engaging in the conduct identified herein.[22]

90.     After the February 8th meetings, the Players were told to attend another meeting on February 9, 2020 with Defendant Doherty in attendance. The Players gave up time away from their studies to attend this meeting.  However, the meeting was immediately stopped by their attorney, as it was designed to allow Defendants to show the general public that

---

[22] A pastor has a duty not to harm those that seek their spiritual guidance and to otherwise hold in confidence any information obtained during a counseling session. A pastor who violates this trust "might be on the losing end of a suit for an invasion of privacy or defamation." See David C. Gibbs, attorney (September 26, 2003). "Pastoral Counseling: Safeguard Against Potential Liability." *Church Solutions*; Also See Richard N. Olstling; J.Madeleine Nash/Chicago:Martin Casey/Miami (Oct 1984). "Confidence and the Clergy." *Time U.S*. David C. Gibbs, attorney (September 26, 2003). "Pastoral Counseling: Safeguard Against Potential Liability." *Church Solutions*.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Defendants were disciplining the Softball Team without telling the Softball Team they were actually being disciplined.

91.    Plaintiffs are informed and believe that Plaintiffs' attorney and CLU's attorney then met in person on Sunday, February 9, 2020 to try and mitigate the damage that was being inflicted upon Plaintiffs. As a direct outcome from said meeting, the Softball Team received on Monday, February 10, 2020 at 12:18 PM an email from the Assistant Dean of Students stating that: "Based on our review of this situation, we have determined that there will be no individual student conduct process related to the performances." A true and correct redacted copy of said email is attached hereto as Exhibit "2" and is incorporated herein by this reference.

92.    Plaintiffs are informed and believe that this email was supposed to help reassure the Softball Team that they would not be facing any official CLU discipline for the alleged incident, and could start trying to return their lives back to normal.

93.    However, not even an hour later, Plaintiffs are informed and believe that Defendant Kimball (and Defendant Doherty) sent out a second damaging "blast" email that again unnecessarily referenced the "Blackface" incident, but this time in a more racially inflammatory manner.

94.    Plaintiffs are informed and believe that Defendant Kimball (and Defendant Doherty) inexplicably sent out said email despite being directly and personally informed that: 1) the entire campus knew the offending February 5th email was referring to the Softball Team when it mentioned the "Blackface" incident; 2) that publicly referring to the "Blackface" incident was hurtful to those that are associated with the Softball Team (including those nineteen (19) girls who did not engage in the subject lip-sync performance); and 3) that reference to the "Blackface" incident was so racially inflammatory that it compromised the safety of those involved with the CLU Softball program.

95.    Plaintiffs are informed and believe that this second email was sent out on February 10, 2020 at 1:16 PM to the entire CLU community (and known public for whom CLU

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

had an email address). A true and correct redacted copy of the February 10, 2020 email is attached hereto as Exhibit "4" and is incorporated herein by this reference.  Said email stated:

> "As a starting point, we want to share more detailed information about some incidents and their impact. The University has a responsibility to identify and respond to behavior that is inconsistent with our values. In one incident, students were recorded doing performances in which there were exaggerated characterizations of black people and culture. The images were shared on social media. Many viewers in our campus community took offense and identified it as blackface. While some have questioned the University's use of the term "blackface," and whether such a definition is solely limited to using makeup on one's face, the University used the term as it is often used by historians – comedic performances of "blackness" by whites in exaggerated costumes and makeup. Regardless of how one views this particular definition, it does not change the nature of the underlying conduct."

96.    There was no reason for said email "to share more detailed information about some incidents and their impact" other than to intentionally publicly smear Plaintiffs and to intentionally cause them to be in fear for their safety.

97.    Plaintiffs are informed and believe that the February 10, 2020 email contained numerous maliciously false facts: First, there were no "performances in which there were exaggerated characterizations of black people and culture." Thus, it was false to say that students were recorded engaging in such racially inflammatory behavior.

98.    Second, Plaintiffs are informed and believe that the video and pictures in question were not viewed by "many members" of the "campus community." The view count on Instagram of the subject social media posting was extremely low, and the BSU confirmed that they had previously not known about the alleged incident and had never viewed the content. Rather, the individual viewer that complained was a CLU employee.

99.    Third, Plaintiffs are informed and believe that the email then falsely states: "the University used the term as it is often used by historians – comedic performances of 'blackness' by whites in exaggerated costumes and makeup. Regardless of how one views

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

this particular definition, it does not change the nature of the underlying conduct." This statement is defamatory on its face, as it is false on many levels.

100.    Plaintiffs are informed and believe that the "Blackface" definition used by CLU in the February 10, 2020 email does not exist. Rather, it is an intentional and bad-faith perversion of the definition of "Minstrelsy," as noted by the single historian Dale Cockrell. [23] It is not the definition of "Blackface," which focuses on the art of donning black makeup to one's entire face to portray a person of color.

101.    Plaintiffs are informed and believe that not only is CLU's perverted definition of "Blackface" incorrect, but it both implies intent and otherwise asserts – contrary to Defendant Kimball's previous statement that he believed in his heart that there was no racist intent – that the entirety of the Softball Team callously and maliciously intended to portray African-American people and culture in a derogatory and comedic fashion.

102.    Plaintiffs are informed and believe that the negative effect and connotation of this February 10, 2020 email cannot be understated, especially since its content and reference to the "Blackface" incident was completely unnecessary to the information contained in the rest of the email. What is more, the email went on to belittle the information Defendants Kimball and Doherty received from the Softball Team of the threats of violence that were being made against them when it stated: "On the other hand, we recognize that people are sharing their feelings and opinions, which some may perceive as threats. There is a difference between critiques and threats." See Exhibit "3."

_____

[23] CLU intentionally and in bad-faith perverted the following definition of the term "Minstrelsy": "Historian Dale Cockrell once noted that poor and working-class whites who felt 'squeezed politically, economically, and socially from the top, but also from the bottom, invented minstrelsy' as a way of expressing the oppression that marked being members of the majority, but outside of the white norm. **Minstrelsy, comedic performances of 'blackness' by whites in exaggerated costumes and make-up, cannot be separated fully from the racial derision and stereotyping at its core."** See:   https://nmaahc.si.edu/blog-post/blackface-birth-american-stereotype   (emphasis added).

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

103. As a direct and proximate result of Defendants' conduct, Defendants have destroyed the Softball Team's ability to effectively and fully mentally and/or physically participate in scholastic and extracurricular endeavors at CLU.

104. Plaintiffs are informed and believe that, as a direct result of Defendants' wrongful conduct documented herein, Plaintiffs have suffered extreme and irreparable damage to their reputations and mental health. They have also had their physical safety put at risk, and their academic and/or professional careers tarnished and/or destroyed.

## F. CLU CAMPUS CIVIL UNREST AND HARASSMENT RESULTING FROM THE FALSE "BLACKFACE" ACCUSATIONS

105. Plaintiffs are informed and believe that the February 10th email had inflamed racial passions and anger on the CLU campus to such a degree that the BSU organized an unauthorized campus "walk-out," whereat they demanded the expulsion of the entire Softball Team for being racists. On the way to the "walk-out," students who were trying to stay in their classes and learn were confronted by hostile mobs of students that called them "racist," and otherwise pressured said students to participate and follow a crowd shouting: **"Give us their names! Expel them all!"**[24]

106. Plaintiffs are informed and believe that the "walk-out" mob then stormed the Administration Building and live-streamed their confrontations with administrators. In such videos, the students confront Defendant McHugh and demanded the expulsion of the Softball Team. The mob said to Defendant McHugh that they know who the team is that engaged in "Blackface" and that they demand the Softball Team be expelled because they do not want to be near them on campus.

107. Plaintiffs are informed and believe that in said videos, Defendant McHugh further defames Plaintiffs by confirming as fact there was a "Blackface" incident. The students also claim that Defendant Kimball's emails confirmed that the Softball Team had already

---

[24]Plaintiffs are informed and believe that Defendant Kimball and other CLU faculty members voluntarily spoke publicly at said "walk-out," and otherwise supported and condoned the "walk-out."

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

been found guilty by Defendants of engaging in racist "Blackface" conduct. The video then shows Defendant McHugh committing a Federal Educational Rights and Privacy Act ("FERPA") violation by disclosing that the student involved in the N-Word incident was suspended.

108.   Plaintiffs are informed and believe that, in another video, the mob corners Christine Paul, the Assistant Dean of Students. Therein, Ms. Paul attempts to deny the content of her February 10, 2020 email wherein she states that the Softball Team would not be facing any "individual student conduct process related to the performances." Instead, in response to the mob demanding the Softball Team be expelled, Ms. Paul falsely implies that Plaintiffs are still subject to discipline, and are *being* disciplined, because: "there are lots of things that can happen." This too is a potential FERPA violation since the mob had already stated that they knew CLU was referring to the Softball Team when it made reference in its emails to the "Blackface" incident.

109.   Plaintiffs are informed and believe that, in an effort to try and calm tensions and explain what occurred, the Softball Team reached out to the BSU and invited them to meet over a dinner to "talk about the information that is now out there, causing so much pain for everyone, and create a dialogue between our two groups."  The BSU outright refused the invitation due to Defendants' conduct that branded the Softball Team as racists and turned them into social pariahs.

110.   The toxic, volatile, and substantially racially-charged environment on campus Defendants created had become so pervasive and dangerous that the members of the Softball program were made to fear for their own personal safety and well-being. The Thousand Oaks Police Department had been monitoring the situation and deemed the threat level against the Softball Team and their coaches was so high that it warranted the public display of a police presence at all softball practices and games for approximately two weeks.

111.   Plaintiffs are informed and believe that at this juncture that CLU failed to provide any security to the Softball Team until their next home game on February 17, 2020.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Instead, CLU went so far as to state that the threats of physical violence to the Softball Team's safety were mere criticisms. See February 10, 2020 email at Exhibit "3." And, during this ineffective token attempt at providing additional security at said home game, the Softball Team's locker room was burglarized while the Softball Team was on the softball field playing a game, and their personal possessions were stolen.

112.   Plaintiffs are informed and believe that in order to show Defendants' hypocrisy, pictures surfaced on Twitter that Defendant Kimball had proudly posted on his CLU social media page. The pictures were of a CLU administrator dressing as Bob Marley, **_with actual "Blackface" makeup_** and wig and imitation illegal narcotics, all of which squarely fit CLU's newly-minted definition of "Blackface."



113.   Plaintiffs are informed and believe that in response, on or about February 13, 2020, Defendant Doherty made Defendant Kimball publicly apologize for said postings to the

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

entire CLU community in the Chapel.[25] Members of the Softball Team recorded this public meeting, which quickly deteriorated into an open forum of both students and faculty demanding that the Softball Team be expelled due to the false information Defendants continued to maliciously publish about them. Of particular note, Defendant Kimball confirmed his and CLU's racist bias against the Softball Team, and CLU's racist policies regarding the Softball Team's ability to perform songs by African-American artists, when he announced at said meeting that he regrets not telling the employee that **white people have no right to dress like Bob Marley.** It is also of note that Defendant Kimball falsely stated at said meeting to the CLU community that Plaintiffs were being disciplined.

114.   As a direct result of the poisoned atmosphere Defendants had unnecessarily created on campus against the members of the CLU Softball program, countless numbers of students continued to attack and harass the Softball Team on social media. One such student was a Senior ASCLU student Senator that wrote: "@regals softball @callutheran O-M-[Statue of God]. Will you acknowledge those affected. yt voices with instagram accounts ARE NOT 'being silenced.'"

115.   Plaintiffs are informed and believe that this post appears to be in response to one of the softball team member's statements at Defendant Kimball's Chapel meeting. Said student addressed said message to the entire "regal" (the official name of the softball team) Softball program. The message is racially motivated in origin, as it refers to "yt voices with instagram accounts." "yt" is slang for "whitey," which is a racially derogatory term for Caucasians. Therefore, the message is directly aimed at a certain group of people based on the color of their skin.

116.   Plaintiffs are informed and believe that the purpose, and most certainly the effect, of the message was to racially harass and bully the members of the Softball program.

[25] See News Story at   https://www.kclu.org/post/more-controversy-south-coast-university-over-racism-concerns#stream/0

Case No.:  8:21-cv-1286
File No.:  5.440.001                       31
COMPLAINT

117.   Plaintiffs are informed and believe that the posting, its message, and its effect, derives from "unwelcome behavior that…fails to respect the rights of others" (i.e., including the right to protest one's innocence), and "interferes with work, learning, living or campus environment."  It constitutes a "threat to the well-being of a person or a group, which is derived from a written communication through a computer [ ] or by any other means of communication." It therefore constitutes an inappropriate posting on social media sites or other applications and graphic commentaries as identified in Section 17.1b of the CLU Student Handbook ("Handbook").

118.   Plaintiffs are informed and believe that said posting also appears to be a Hate Incident and a Hate Crime under Section 18.0 of the Handbook, as it is harassment directed to members of the University's community based on race and color, and it otherwise constitutes "any act that has the purposes or effect of unreasonably or substantially interfering with an individual's safety and security by creating a(n) intimidating, hostile, discriminatory, or offensive education or working environment," which the University has promised its students "will not be tolerated."

119.   Plaintiffs are informed and believe that the subject post constitutes a Hate Crime under Section 18.1 of the Handbook, in that it is an offense "motivated by hatred against a victim or a group of victims based on their actual or perceived race," and is reportable as intimidation under the Clery Act. Such conduct is an offense that may result in suspension/dismissal from the University.

120.   Plaintiffs are informed and believe that the subject post also constitutes a Hate Incident under Section 18.2 of the Handbook, which is "broadly defined as acts which threaten a person's sense of belonging, dignity, emotional and/or physical well-being."

121.   Plaintiffs are informed and believe that countless others would not have directed their venom toward the Softball Team players and coaches but for the egregiously wrongful actions of Defendants. Defendants, through their extremely reckless and grossly negligent conduct, have fostered and maintained a racially toxic environment on campus

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

that has directly and proximately caused these postings, and many other postings of a similar nature, to be directed at Plaintiffs.

122.   As a direct result of such conduct, in or about February 2020, the Softball Team filed an Internal Student Grievance Complaint against several students and Defendant Kimball with the CLU administration. Plaintiffs are informed and believe that CLU opened an investigation into said Internal Student Grievance Complaints approximately a month later in mid-March 2020. The players and the coaches of the Softball Team were then interviewed in mid to late March 2020 by an investigator hired by Defendants. Plaintiffs are informed and believe that CLU waited until late into the following fall semester to inform Plaintiffs that CLU closed said investigation finding no violations of the Handbook.

## G. CLU'S CONTINUED CAMPUS-WIDE PUBLIC SHAMING OF THE SOFTBALL TEAM AND REFUSAL TO PROVIDE THE SOFTBALL TEAM REQUESTED PROFESSIONAL MENTAL HEALTH SERVICES.

123.   On or about February 24, 2020, Defendants made it mandatory that the members of the Softball Program attend another meeting featuring guest speaker Dr. Shaun Harper from the University of Southern California's Race and Equity Center. The stated purpose of the meeting was to discuss the topic of "inclusion" with the entire CLU community. However, the topic of "inclusion" was barely discussed. Rather, the meeting actually became another vehicle for Plaintiffs to be publicly shamed and ridiculed.

124.   Plaintiffs are informed and believe that Defendant Doherty had reserved seats in the gym for the Softball Team to sit up front and center so that the CLU community could see that they were the focus of the meeting. All other students attending were allowed to sit wherever, and with whomever, they wished. Dr. Harper then allowed both students and faculty to get up and otherwise chastise and malign the Softball Team in front of the CLU community. At one point, Dr. Harper joined in the public ridiculing of the Softball Team by adopting the statement that the Softball Team was obviously guilty of racism

because they hired a lawyer to represent their interests, and **only guilty people hire lawyers**.

125.   At this point, Plaintiffs' counsel expressly informed CLU's counsel that the Softball Team would not be attending any further meetings due to the fact that said meetings were interfering with the Softball Team's school work and degrading their mental health. Despite this admonition, on or about February 26, 2020, Defendant Doherty again attempted to single out the Softball Team and make them attend several more hours of meetings related to the "Blackface" incident. In declining to attend any further meetings, one of the Softball Team players responded to Defendant Doherty:

> "you should be aware that **the members of the softball team need professional mental health help** instead of poems, trees and rocks. The damage inflicted by the university on all of the team is deep and traumatic. If the university is truly trying to look out for our welfare, your time would be better spent making such arrangements."

126.   In addition to requesting professional mental health help in writing, Plaintiffs prepared and provided to CLU individual impact statements from each of the players and coaches. Said statements reveal the extreme emotional distress they have suffered as a result of the discriminatory harassment and treatment memorialized herein[26]

---

[26] Said impact statements included the following descriptions of the effect Defendants' conduct has personally had on them:

- "Constant anxiety…feelings of panic... hoping that this will not be a forever medication"
- "…Anxiety and depression…lack of sleep…lonely and emotionally weak… emotionally unstable. The community never knew what actual [sic] happened, so I constantly felt like I had to fix my broken reputation by explaining myself and what actually happened"
- "The accusations of racism that came from this were never apparent to any of us, including our black coach…This nausea turned to anxiety, which stayed with me for days and days as this ordeal trudged on… uncomfortable and full of anxiety... unable to focus

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

127.   Further review of the statements show that a majority of Plaintiffs suffered in a similar manner: They have vomited, cried uncontrollably, lost sleep, lost weight, have been unable to focus on their studies, and have been made to feel isolated. Additionally, most of the Softball Players have stated that they are now on medication for their depression, anxiety, and PTSD, and that some otherwise submitted themselves to the care of medical professionals as a direct result of Defendants' conduct.

## H. ADDITIONAL EMPLOYMENT ISSUES REGARDING THE COACHES

128.   As a result of the Defendants' false "Blackface" narrative, all three softball coaches suffered damages to their reputation and wellbeing.

129.   Defendants caused a hostile work environment for the coaches and caused the coaches to suffer damages resulting from being directly and/or indirectly publicly ridiculed in front of students and peers, being publicly placed on administrative leave, being made to feel anxious from the threats of physical harm being made to members of

---

… anxiety grew, as fear of my future at work and future career stared me in the face… emotionally drained."

- "…emotional and mental trauma… crippling anxiety that made it impossible for me to do everyday things and carry on with my life... intense anxiety that caused me to lose my appetite for entire days and then overindulge in food and binge. I couldn't not [sic] sleep at night, I would wake up with night terrors… of deep sadness and lack of motivation… makes me sick to my stomach… extremely nauseous..."
- "I've never felt so targeted in my life."
- "Made me sick to my stomach…I could not sleep… I felt attacked."
- "Felt very blindsided…I didn't have an appetite…I burst into tears… I would cry silently in the bathroom."
- "I became distraught… I had an extreme loss of appetite as well as sleep. **I was unable to focus on any of my classes**... My depression and anxiety flared."
- "I was lethargic and **I couldn't focus for more than 10 minutes at a time on school work**… depression set in… This experience has caused me to feel anxiety, embarrassment, depression, anger, sadness, exhaustion, unfocused, and just emotionally drained. It has turned me into a person I don't recognize. I feel as if I've been existing outside of my body and that I'm not living my life as I've known it."

---

the CLU Softball Program, and Defendants refusing to provide any additional security to Plaintiffs during practice for over a week.

130.   Defendants' creation of a hostile work environment has resulted in substantial emotional distress to the coaches, including causing substantial fear, anxiety, or emotional torment.

131.   Defendants' conduct has resulted in severe emotional distress, which has resulted in physical manifestations including, but not limited to: loss of sleep; anxiety; depression; nausea; loss of appetite; loss of weight; fear; sense of helplessness; and despair.

132.   Coach Young and Coach Gluckman have sought other employment due to the intense harassment, defamation, and hostile work environment perpetuated by Defendants.

## I.   EXHAUSTION OF ADMINISTRATIVE PROCEDURE

133.   All legal prerequisites for proceeding with the claims contained in this complaint have been met.

134.   On or about August 3, 2021, Coach Day, through counsel, sent a letter to the Labor Workforce Development Agency and Defendants outlining claims pursuant to the Private Attorney General Act ("PAGA").  The LWDA has not responded to the letter, and thus Coach Day may proceed with the PAGA claims outlined below.

135.   Coach Day, Coach Young, and Coach Gluckman have all received a "Right to Sue" letter from the Department of Fair Employment and Housing of the State of California authorizing their claims against Defendants stated herein.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**DOES 1 THROUGH 24 AGAINST CLU and ROES 1 THROUGH 20**

136.   Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 135 of this Complaint as though fully set forth herein.

137.   Plaintiffs are informed and believe that CLU and ROES 1 through 20 (collectively "Contract Defendants") entered into written contractual agreements with DOES 1-24

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

whereby the Parties agreed to adhere to the Student Handbook (the "Handbook"), relevant portions of which are incorporated herein.

138.  Plaintiffs are informed and believe that the 2019-2020 Student Handbook ("Handbook") is one of the primary documents that spells out the contractual relationship between Contract Defendants and DOES 1-24. A contract was initially formed when Contract Defendants accepted the students and when the students submitted their initial payment to attend CLU.

139.  Plaintiffs are informed and believe that Page 3 of the Handbook specifies: "Students accept the following policies and agree to be bound thereby upon admission, readmission, or continued enrollment with California Lutheran University. Any student is bound to follow all of the University's policies and procedures and is subject to the jurisdiction of the University with regard to violations of such policies and procedures. California Lutheran University students who fail to read this handbook will not be excused from compliance with policies and procedures."

140.  Plaintiffs are informed and believe that Contract Defendants entered into a contract with DOES 1-24 to attend CLU and play softball for CLU in exchange for DOES 1-24 enrolling in CLU and paying tuition. Included in the terms of that agreement was that all parties would abide by, and conduct themselves in accordance with, the terms in the Handbook and the Code of Conduct therein. When Contract Defendants violated the Handbook Code of Conduct, it breached its contract with DOES 1-24.

141.  Plaintiffs are informed and believe that the CLU Code of Conduct at all relevant times specified in relevant part:

17.0 Student Harassment and Bullying

"The University seeks to create and maintain an academic environment in which all members of the community are free from harassment and bullying based on sex, race … color, …. harassment compromises the integrity of a liberal arts education, because it makes the learning and working environment hostile, intimidating and offensive; it destroys opportunities

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

for students to develop a strong, positive self-concept and the sense of self-confidence which is essential to living out the ideals of a liberal arts education. In addition, persons who harass others compromise their own integrity and credibility. Consequently, no form of harassment will be tolerated at California Lutheran University."

"17.1 **Harassment**: Harassment refers to unwelcome behavior that is offensive, fails to respect the rights of others, and interferes with work, learning, living or campus environment. Harassment includes intimidation, invasion of privacy, or any threat to the well-being of a person or a group which is communicated verbally, in writing, or through contact by telephone, computer, a third party, or by any other means of communication. Forms of harassment include, but are not limited to: ... postings on social media sites or other applications."

18.0 **Hate Crime** Harassment directed to members of the University's community based on race and color, and it otherwise constitutes "any act that has the purposes or effect of unreasonably or substantially interfering with an individual's safety and security by creating a(n) intimidating, hostile, discriminatory, or offensive education or working environment," which the University has promised its students "will not be tolerated."

142. On or about February 14, 2020, the Softball Team filed an Internal Student Grievance Complaint against a student and Defendant Kimball with the CLU administration. Additionally, on or about February 15, 2020, the Softball Team filed an Internal Student Grievance Complaint against another student and Defendant Kimball with the CLU administration. Plaintiffs are informed and believe that Contract Defendants opened an investigation into said Internal Student Grievance Complaints approximately a month later.

143. Plaintiffs are informed and believe that the subject post by one of the students that used a racial slur directed at the Softball Team constituted a Hate Crime under Section 18.1 of the Handbook, in that it is an offense "motivated by hatred against a victim or a group of victims based on their actual or perceived race," and is reportable as intimidation under the Clery Act. Such conduct is an offense that may result in suspension/dismissal from the University.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900, Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

144.   Plaintiffs are informed and believe that the subject post also constitutes a Hate Incident under Section 18.2 of the Handbook, which is "broadly defined as acts which threaten a person's sense of belonging, dignity, emotional and/or physical well-being."

145.   Plaintiffs are informed and believe that, in addition, it is abundantly clear that said student and countless others would not have directed their venom toward the Softball Team but for the egregiously wrongful actions of Defendants. Defendants, through their extremely reckless and grossly negligent conduct, have fostered and maintained a racially toxic environment on campus that has directly and proximately caused these postings, and many other postings of a similar nature, to be directed at the Softball Team.

146.   Plaintiffs are informed and believe that Contract Defendants breached its contract to DOES 1-24 by engaging in harassing behavior in violation of the terms of the Handbook, and otherwise letting others violate the Handbook with regard to conduct directed at the Softball Team.

147.   Plaintiffs are informed and believe that by Defendants engaging in the conduct set forth above, including cyberbullying and perpetuating falsehoods in an effort to harm Plaintiffs, Plaintiffs did not receive the benefits of their bargain. As such, Contract Defendants should pay an amount sufficient to restore each Plaintiffs to their position but for Defendants' breach.

148.   Plaintiffs are informed and believe that DOES 1-24 performed all conditions, covenants, and promises required of them to be performed in accordance with the terms of the Handbook, except for those provisions they have been prevented by Contract Defendants from performing or which otherwise have been excused.

149.   Plaintiffs are informed and believe that Contract Defendants breached the terms of the Handbook by allowing unjustified violations of the Handbook, which included, but were not limited to: permitting hate crimes and harassment on campus; permitting cyberbullying; de facto punishing DOES 1-24 without affording them the right to due process, as required by the Handbook; and failing to timely investigate complaints, as required by the Handbook.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

150.   Plaintiffs are informed and believe that Contract Defendants' breaches of contract caused harm to Plaintiffs. Such harm includes the fact that some of DOES 1-24 will not obtain a degree from CLU, which was the reason that they entered into a contract with Contract Defendants in the first place and paid approximately $66,000 per year over the past four (4) years. DOES 1-24 seek reimbursement of some or all of their tuition and fees paid to Contract Defendants, in an amount to be proven at trial.

151.   Plaintiffs are informed and believe that Contract Defendants' breaches of contract forced some of Plaintiffs to transfer to other universities, at a cost to be proven at trial, but is estimated to exceed $66,000 per Plaintiff that transferred away from CLU.

152.   Contract Defendants' conduct in breaching the contract was a substantial factor in causing DOES 1-24 harm. As a direct, foreseeable and proximate result of Contract Defendants' breach of the implied covenant, DOES 1-24 have suffered and sustained damages in an amount according to proof.

## SECOND CAUSE OF ACTION
### SLANDER
### DOES 1 THROUGH 24 AGAINST ALL DEFENDANTS
### and ROES 21 THROUGH 40

153.   Plaintiffs hereby incorporate by reference each and every allegation contained in preceding paragraphs 1 through 152 of this Complaint as though fully set forth herein.

154.   Plaintiffs are informed and believe that numerous false oral statements have been made in and around campus concerning the Softball Team. These statements were made in open forums by CLU representatives Defendants Kimball, Doherty, McHugh, and ROES 21-40 (Collectively "Slander Defendants").

155.   Plaintiffs are informed and believe that numerous false oral statements were made about the Softball Team, even though only DOES 1through 5 participated in the lip-sync event.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

156.  Plaintiffs are informed and believe that these statements have caused great harm to Plaintiffs. These include statements uttered in open forums, including, but not limited to a February 8, 2020 meeting and a February 13, 2020 campus open forum meeting.

157.  Plaintiffs are informed and believe that Slander Defendants' statements were made within the scope of his/her/their employment with CLU and is/are attributable to CLU.

158.  Plaintiffs are informed and believe that the Slander Defendants' aforementioned statements about the Softball Team was/were unprivileged, and false. The Slander Defendants were obligated not to publicly make any statements about the subject event, as to do so could constitute a FERPA violation under the circumstances since the recipients of said statements knew to whom they referred.

159.  Plaintiffs are informed and believe that the Slander Defendants knew or should have known that his/her/their statements were false, especially since the Slander Defendants had prior notice of the falsity of the statements before they were made.

160.  Plaintiffs are informed and believe that the Slander Defendants failed to use reasonable care and took no reasonable steps to determine whether their statements were true or false.

161.  Plaintiffs are informed and believe that the nature of the statements made by the Slander Defendants is so defamatory that referral to extrinsic material is unnecessary to determine their defamatory meaning and/or effect. As such, the Slander Defendants' statements pertaining to the Softball Team are slander per se.

162.  As a direct and proximate result of the Slander Defendants' statements, DOES 1-24 have been injured, including, but not limited to, injury to their reputations, as well as injury to their emotional health, well-being, and personal relationships, as discussed above. These statements also directly injured DOES 1-24 in their occupation as students and as athletes.

163.  As a direct and proximate result of the Slander Defendants' statements, DOES 1-24 have incurred special damages that include, but are not limited to, the costs associated

with seeking mental health help to address the harm caused by virtue of Slander Defendants' misconduct.

164. Plaintiffs are informed and believe that the Slander Defendants made said false statements about and/or concerning DOES 1-24 with malice, oppression, and/or fraud, and intended to injure and damage DOES 1-24 with the false statements, which warrants an award of punitive damages.

165. Plaintiffs are informed and believe that, as a direct and proximate result of the conduct of Slander Defendants as stated herein, DOES 1-24 have been damaged in an amount to be proven at trial, but which is otherwise expected to exceed collectively $80,000,000.

166. Plaintiffs are informed and believe that, in doing the acts alleged herein, Slander Defendants acted with oppression, fraud, malice, and in total disregard of the Softball Team's rights. As such, DOES 1-24 are entitled to exemplary damages in an amount designed to deter such behavior in the future.

## THIRD CAUSE OF ACTION
### LIBEL
### DOES 1 THROUGH 24 AGAINST CLU, KIMBALL DOHERTY,
### and ROES 41 THROUGH 60

167. Plaintiffs hereby incorporate by reference each and every allegation contained in preceding paragraphs 1 through 166 of this Complaint as though fully set forth herein.

168. Plaintiffs are informed and believe that written defamatory matter was published to thousands of members of the CLU community in at least two emails by Defendant Kimball and Defendant Doherty and Roes 41 through 60 on behalf of the CLU administration (Collectively "Libel Defendants"); *to wit,* the February 5, 2020 email and February 10, 2020 email. The statements in these emails were then republished by various news agencies, including national news agencies, as well as thousands of social media posts.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900, Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

169.  Plaintiffs are informed and believe that the statements made by the Libel Defendants in said emails pertaining to DOES 1-24 were false, including those that expressly state that CLU student athletes engaged in "Blackface" and engaged in "Blackface" performances. The truth is that there never was an incident involving student athletes engaging in "Blackface," let alone in several "Blackface" performances, under the generally understood definition of the term "Blackface."

170.  Plaintiffs are informed and believe that the entire CLU student body and faculty, and eventually the world, understood that said emails and "Blackface" statements were referring to the Softball Team, a small group of 24 girls. Further, immediately after the publication of the February 5th email, members of the Softball Team were contacted by various media sources and reporters seeking information as to the statements made therein, and members of student government were posting on social media that they knew for certain that the Libel Defendants were referring to the Softball Team in said email. Additionally, the Softball Team expressly informed the Libel Defendants that they were receiving harmful threats because it was generally understood that the Libel Defendants were speaking about DOES 1-24 in their February 5th email. As such, the statements therein were defamatory on their face as applied to a small group of players and coaches that constitute the members of the CLU Softball Program.

171.  Plaintiffs are informed and believe that readers of these publications reasonably understood, without resort to any extrinsic material or explanatory information, that Libel Defendants meant that the Softball Team intentionally engaged in harmful racial misconduct, including "blackface" performances.  As such, it was generally understood by the public receiving said emails that the Softball Team as whole had applied paint to their faces in order to create offensive caricatures of African-Americans. These statements directly injured DOES 1-24 in their occupation as students and as athletes.

172.  Plaintiffs are informed and believe that readers of various publications reasonably understood, without resort to any extrinsic material or explanatory information, that statements regarding the use of "blackface" were of and concerned the Softball Team.

173.   Plaintiffs are informed and believe that readers of various publications reasonably understood, without resort to any extrinsic material or explanatory information, that the Libel Defendants' statements meant that the Softball Team had engaged in "blackface," meaning that DOES 1-24 had collectively applied paint to their faces in order to create offensive caricatures of African-Americans.

174.   Plaintiffs are informed and believe that the Libel Defendants' aforementioned written statements about the Softball Team were unprivileged and false. The Libel Defendants were obligated not to publicly make any statements about the subject event, as to do so could constitute a FERPA violation under the circumstances.

175.   Plaintiffs are informed and believe that Libel Defendants knew or should have known that the statements pertaining to the Softball Team in said emails were maliciously false, especially because the Libel Defendants had been directly informed of the falsity of their statements before they were made yet continued to publicly broadcast said statements to thousands in any event.

176.   Plaintiffs are informed and believe that Libel Defendants took no reasonable steps to determine whether the statements they broadcasted referring to DOES 1-24 were true. Had Libel Defendants exercised reasonable, or even minimal, care to investigate the circumstances giving rise to the photographs, they would have learned the falsity of their statements.

177.   Plaintiffs are informed and believe that the nature of the statements made by the Libel Defendants is so defamatory that referral to extrinsic material is unnecessary to determine their defamatory meaning and/or effect. As such, the Libel Defendants' statements pertaining to the Softball Team are libel per se.

178.   Plaintiffs are informed and believe that as a direct and proximate result of the conduct of Libel Defendants described herein, DOES 1-24 have been shunned, avoided, and/or injured in their occupation as students and athletes.

179.   Plaintiffs are informed and believe that, as a direct and proximate result of the conduct of Libel Defendants as stated herein, DOES 1-24 have been damaged in an

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

amount to be proven at trial, but which otherwise is expected to collectively exceed $80,000,000.

180.   Plaintiffs are informed and believe that, in doing the acts alleged herein, Libel Defendants acted with oppression, fraud, malice, and in total disregard of the Softball Team's rights. As such, DOES 1-24 are entitled to exemplary damages in an amount designed to deter such behavior in the future.

## FOURTH CAUSE OF ACTION
### FALSE LIGHT
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### and ROES 61 THROUGH 80

181.   Plaintiffs hereby incorporate by reference each and every allegation contained in preceding paragraphs 1 through 180 of this Complaint as though fully set forth herein.

182.   Plaintiffs are informed and believe that named Defendants and ROES 61 through 80 (Collectively "False Light Defendants") have made numerous false statements regarding Plaintiffs, which have depicted Plaintiffs in a false light in the public eye. These statements include, but are not limited to, statements that made it seem that all of the Plaintiffs had engaged in, or otherwise allowed there to be, "blackface" performances that were orchestrated and/or promoted and/or tolerated by Plaintiffs, and that the Softball Team had collectively applied paint to their faces in order to specifically create offensive comedic caricatures of African-Americans.

183.   The publicity created by False Light Defendants was offensive and objectionable to Plaintiffs and to a reasonable person of ordinary sensibilities.

184.   The publicity created by False Light Defendants was done with gross negligence, oppression, fraud, and/or malice in that it was made either with knowledge of its falsity or in reckless disregard of its truth in that the statements depicting Plaintiffs were calculated falsehoods because False Light Defendants knew the statements to be false at the time the statements were made.  For instance, Defendant Kimball knew that there was no "Blackface" incident before he confirmed to news outlets that there was a "Blackface"

incident and saying that those who were responsible would be held accountable. Nonetheless, said Defendants proceeded with the publication of false facts to portray Plaintiffs in a false light.

185.   As a proximate result of the above-mentioned disclosure and depictions, Plaintiffs suffered general damages in an amount according to proof. Plaintiffs are informed and believe that, as a direct and proximate result of the conduct of False Light Defendants as stated herein, Plaintiffs have been damaged in an amount to be proven at trial, but which is otherwise is expected to exceed $100,000,000.

186.   Plaintiffs are informed and believe that, in doing the acts alleged herein, False Light Defendants acted with oppression, fraud, malice, and in total disregard of Plaintiffs' rights. As such, Plaintiffs are entitled to exemplary damages in an amount designed to deter such behavior in the future.

187.   Plaintiffs believe that False Light Defendants will continue disclosing the above information. Unless and until enjoined and restrained by order of this court, and otherwise ordered to retract their statements, False Light Defendants' will continue publication of their lies, which will in turn continue to cause Plaintiffs great and irreparable lifelong injuries. Plaintiffs have no adequate remedy at law for the injuries being suffered in that a judgment for monetary damages will be inadequate.

<u>**FIFTH CAUSE OF ACTION**</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DOES 1 THROUGH 24 AGAINST ALL DEFENDANTS**

**and ROES 81 THROUGH 100**

188.   Plaintiffs incorporate paragraphs 1 through 187 of this Complaint as if fully set forth herein.

189.   Plaintiffs are informed and believe that the conduct of the named Defendants and ROES 81-100 (Collectively "IIED Defendants") alleged in the preceding paragraphs is outside the parameters of the normal educational experience and constitutes outrageous conduct.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900, Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

190.   Plaintiffs are informed and believe that the IIED Defendants owe the Softball Team a duty of care to not engage in conduct that they knew, or with reasonable care should have known, will cause the Softball Team extreme emotional distress.

191.   Plaintiffs are informed and believe that the IIED Defendants knowingly and intentionally breached said duty of care that they owed to DOES 1-24 by engaging in the aforementioned conduct. By way of example, DOES 1-24 informed the IIED Defendants' that their conduct, including, but not limited to falsely accusing the Softball Team of engaging in "Blackface," and publicly confirming to the entire CLU community that the Softball team had engaged in such conduct, was causing them severe emotional distress. Yet, despite being so informed, the IIED Defendants persisted in publishing said false information, and in an even more inflammatory manner.

192.   As stated above, Plaintiffs are informed and believe that the IIED Defendants' conduct was a substantial factor in causing the Softball Team to suffer severe emotional distress and physical manifestations of that emotional distress.

193.   Plaintiffs are informed and believe that the IIED Defendants' conduct was not privileged. As to this point, the IIED Defendants were legally obligated to not publicly discuss anything having to do with the subject incident, as doing so could constitute a FERPA violation regarding the potential disclosure of a student's disciplinary record contained in a private and legally protected student file.

194.   The Softball Team's damages include, but are not limited to, lost educational benefits, diminished future earning capacity, and loss of future employment opportunities. The Softball Team members have also suffered and continue to suffer depression, anxiety, loss of sleep, nausea, vomiting, shame, loss of appetite, humiliation, emotional distress, as well as pain and suffering.

195.   In performing the acts described herein, the IIED Defendants were guilty of gross negligence, oppression, fraud, and/or malice, in that the IIED Defendants engaged in such conduct with a willful and conscious disregard of Plaintiffs' property rights. The Softball Team therefore seeks an award of damages, including punitive damages, in an amount to

be proven at trial, but that is otherwise high enough to ensure that the IIED Defendants will never engage in such conduct against their own students ever again.

## SIXTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## DOES 1 THOUGH 24 AGAINST ALL DEFENDANTS
## and ROES 101 THROUGH 120

196.   Plaintiffs incorporate paragraphs 1 through 135 of this Complaint as if fully set forth herein.

197.   Plaintiffs are informed and believes that the conduct of the named Defendants and ROES 101-120 (Collectively "NIED Defendants") alleged in the preceding paragraphs is outside the parameters of the normal educational experience and constitutes outrageous conduct.

198.   Plaintiffs are informed and believe that the NIED Defendants owe DOES 1-24 a duty of care to not engage in conduct that they know, or with reasonable care should have known, will cause the Softball Team extreme emotional distress.

199.   Plaintiffs are informed and believe that the NIED Defendants were negligent and breached said duty of care that they owed to the Softball Team by engaging in the aforementioned conduct, which, at a minimum, caused the Softball Team to suffer serious emotional distress.

200.   As stated above, Plaintiffs are informed and believe that the NIED Defendants' conduct was a substantial factor in causing the Softball Team to suffer severe emotional distress and physical manifestations of that emotional distress.

201.   Plaintiffs are informed and believe that the NIED Defendants' conduct was a substantial factor in causing the Softball Team severe emotional distress.

202.   The Softball Team's damages include, but are not limited to, lost educational benefits, future earning capacity and other future employment benefits. The Softball Team members have also suffered and continue to suffer depression, anxiety, nausea,

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

vomiting, loss of sleep, depression, shame, loss of appetite, humiliation, emotional distress, as well as pain and suffering.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

### DOES 1 THROUGH 24 AGAINST ALL DEFENDANTS
### and ROES 121 THROUGH 140

203.   Plaintiffs incorporate paragraphs 1 through 135 of this Complaint as if fully set forth herein.

204.   Plaintiffs are informed and believe that the conduct of the named Defendants and ROES 121-140 (Collectively "Negligence Defendants") alleged in the preceding paragraphs is outside the parameters of the normal educational experience.

205.   Plaintiffs are informed and believe that the Negligence Defendants owe DOES 1-24 various duties of care to act as a normal and prudent university, and to otherwise not engage in conduct that they know, or with reasonable care should know, will cause their students undue harm and severe emotional distress.

206.   Plaintiffs are informed and believe that the Negligence Defendants were negligent and breached said duties of care that they owed to the Softball Team by engaging in the aforementioned conduct, which, at a minimum, caused the Softball Team to suffer serious emotional distress.

207.   Plaintiffs are informed and believe that, as an actual and proximate cause of the conduct of the Negligence Defendants, the Softball Team has been damaged and suffered harm, including severe emotional distress and physical manifestations of that emotional distress, all in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF TITLE IX

### ALL PLAINTIFFS AGAINST DEFENDANT CLU

208.   Plaintiffs incorporate paragraphs 1 through 207 of this Complaint as if fully set forth herein.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

209.   Plaintiffs are informed and believe that, as stated above, Defendant CLU engaged in disparate treatment between the CLU Women's Softball Program and the CLU Men's Baseball program, in addition to other instances of unfair treatment when compared to other CLU sports programs. Such disparate treatment included unequal access to facilities and services, wherein CLU allowed money, equipment, services, and benefits to be directed to the CLU Men's Baseball program that it did not provide to the CLU Women's program. Further, there was no justifiable reason for said disparate treatment between the two programs.

210.   Plaintiffs are informed and believe that Coach Day reported issues of disparate treatment to CLU's agents including, but not limited to: Kuntz, Defendant McHugh and Defendant Kimball. These individuals were/are responsible employees who had the ability to respond to Coach Day's report.

211.   Plaintiffs are informed and believe that CLU acted with deliberate indifference in response to Coach Day's reports. For example, CLU intentionally failed to include information about the disparity between the money, equipment, services, and benefits directed to the CLU Men's Baseball program that were not provided to the CLU Women's program when it hired a third-party investigator to determine if CLU had violated Title IX. CLU showed further deliberate indifference by predetermining the outcome of Coach Day's complaint.

212.   Plaintiffs are informed and believe that CLU intentionally discriminated against Coach Day and the Softball Team based on their gender in general, and specifically in the manner in which it responded to Coach Day's complaint.

213.   Plaintiffs are informed and believe that CLU presented to Coach Day and the Softball Team that CLU was following its policies, including providing a fair and neutral investigation into Coach Day's report. However, in reality, CLU's investigation process was nothing more than a charade intended to mislead Plaintiffs.

214.   Plaintiffs are informed and believe that Defendants came to an erroneous outcome regarding Coach Day's NCAA complaint in December 2019. Just one month after CLU

predetermined the outcome of Coach Day's potential Title IX violation, CLU and its agents perpetuated a false "blackface" event, and otherwise completely mishandled said event in part to retaliate against Coach Day for reporting the potential Title IX violation in conjunction with other NCAA violations.

215.   Plaintiffs are informed and believe that, as a result of CLU's Title IX violations, Coach Day suffered emotional distress, including but not limited to, emotional distress, fear, anxiety, and trauma; lost past and future earnings and earning capacity; and delays in pursuing her career.

216.   Plaintiffs are informed and believe that as a result of CLU's Title IX violations, DOES 1-24 suffered emotional distress, including but not limited to, emotional distress, fear, anxiety, and trauma, shame; and delays in pursuing their education.

217.   Plaintiffs are informed and believe that, unless restrained, CLU will continue to violate Title IX. As such, Plaintiffs have no adequate remedy at law, and hereby seek an injunction against CLU to cure its Title IX violations and ensure reasonable parody of the services, facilities, opportunities and benefits  between the CLU Men's Baseball program and the CLU Women's Softball program.

## NINTH CAUSE OF ACTION

## RETALIATION

## PLAINTIFF DAY AGAINST DEFENDANTS CLU, KIMBALL, MCCUGH and ROES 141 THROUGH 160

218.   Plaintiffs incorporate paragraphs 1 through 217 of this Complaint as if fully set forth herein.

219.   Plaintiffs are informed and believe that, at all times material to this Complaint, *California Labor Code* §1102.5 was in effect and binding on Defendants, CLU, Kimball, McCugh and ROES 141-160 (Collectively "Retaliation Defendants"). This section requires Retaliation Defendants to refrain from retaliating against an employee for refusing to participate in an activity that she reasonably believes would result in a violation of a state or federal statute, or a violation or noncompliance with a state or

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

federal rule or regulation. *Labor Code* §1102.5(b) also states that: "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency…"

220.   Plaintiffs are informed and believe that Coach Day has been a victim of retaliation since questioning the potentially unlawful Title IX practices at CLU, in addition to other NCAA violations.  Retaliation Defendants were dismissive of Coach Day's questioning and ultimately publicly punished Coach Day by falsely accusing the Softball Team of engaging in a "Blackface" incident, and thereby accusing Coach Day of mismanagement of her Softball program by allowing such a "Blackface" incident to occur, by placing Coach Day on administrative leave after the incident, and then refusing to clear her name or employment file when it was ultimately determined that no such "Blackface" incident occurred as promulgated by Defendant CLU. Thereafter, CLU excluded Coach Day from department meetings, and continues to this day to exclude Coach Day from said meetings. CLU's conduct was in direct retaliation to Coach Day's reports of potential NCAA and Title IX violations, all in violation of the law. Coach Day is informed and believes that she had a reasonable belief that Retaliation Defendants were violating state and federal laws, and questioned those violations to CLU, as Retaliation Defendants well knew, and as alleged hereinabove.

221.   Plaintiffs are informed and believe that Retaliation Defendants retaliated against Coach Day by harassing, and threatening to terminate her, among other things, all in violation of *Labor Code* § 1102.5.

222.   Plaintiffs are informed and believe that, following Coach Day's questions regarding potential NCAA and Title IX violations, Retaliation Defendants engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of Coach Day's work environment. Coach Day's questions were, in part, a motivating reason for Retaliation Defendants to fabricate a false narrative regarding the "Blackface" incident, and/or a motivating reason for the Retaliation Defendants to have handled the

"Blackface" in a more responsible and professional manner. The decision to retaliate against Coach Day and to create a false narrative regarding the Softball Team was in close nexus to Coach Day's questioning of Retaliation Defendants' potentially unlawful practices.

223.  Plaintiffs are informed and believe that, as stated above, said Defendants encouraged — or did not discourage — CLU employees in their showing of defiance, insubordination and a total lack of respect toward Coach Day.

224.  Plaintiffs are informed and believe that, as a direct and proximate cause of Retaliation Defendants' retaliatory conduct identified herein, Coach Day was harmed. Retaliation Defendants' conduct was a substantial factor in causing Coach Day's harm.

225.  As a direct and proximate result of said Retaliation Defendants' willful, knowing, and intentional retaliation against Coach Day, she has suffered and continues to suffer emotional distress, mental and physical pain, anguish, pain and suffering, loss of sleep, loss of appetite, and anxiety to her damage in a sum according to proof.

226.  In light of the willful, knowing, and intentional harassment, Coach Day seeks an award of punitive and exemplary damages in an amount according to proof at trial.

227.  Coach Day has incurred and continues to incur legal expenses and attorneys' fees. Coach Day will seek the recovery of attorneys' fees and costs at the conclusion of this lawsuit.

## TENTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT
## PLAINTIFFS DAY, YOUNG, AND GLUCKMAN AGAINST DEFENDANTS CLU, KIMBALL, DOHERTY, MCHUGH and ROES 161 THROUGH 170

228.  The allegations set forth in paragraphs 1 through 227 are realleged and incorporated by reference as though fully set forth herein.

229.  Plaintiffs are informed and believe that the above conduct was unwelcome and was directed towards Coaches Day, Young, and Gluckman based on their status as employees,

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

1    and specifically as coaches of the CLU Softball Program. All the above conduct was part
2    of an ongoing and continuing pattern of conduct.

3    230.   Hostile work environment is defined as inappropriate behavior in the workplace,
4    such as harassment based on race or ethnicity and/or retaliation for exercising a legal
5    right, that is either severe or pervasive enough to create an abusive work atmosphere for
6    one or more employees.

7    231.   Plaintiffs are informed and believe that the aforementioned conduct (including
8    conduct directed at Coaches Day, Young, and Gluckman) caused Coaches Day, Young,
9    and Gluckman to perceive their work environment as intimidating, hostile, abusive or
10   offensive and created a hostile work environment based on their perceived race and/or
11   ethnicity and/or in retaliation for exercising a lawful right.

12   232.   Plaintiffs are informed and believe that complaints and/or information about much
13   of the harassing conduct were made to Defendants CLU, Kimball, Doherty, McHugh,
14   and Roes 161-170 (Collectively "Hostile Work Environment Defendants"). However,
15   Hostile Work Environment Defendants failed to conduct a prompt, timely, and thorough
16   investigation into the allegations. After the complaints, the harassment continued in
17   similar forms and resulted in new forms of harassment and discrimination.

18   233.   Hostile Work Environment Defendants' acts were malicious, oppressive or
19   fraudulent with intent to vex, injure, annoy, humiliate and embarrass Coaches Day,
20   Young, and Gluckman, and in conscious disregard of the rights or safety of Coaches Day,
21   Young, and Gluckman and in furtherance of CLU's ratification of the wrongful conduct
22   of the administrators of CLU, including Defendants Kimball, Doherty, and McHugh.
23   Accordingly, Coaches Day, Young, and Gluckman are entitled to recover punitive
24   damages from Hostile Work Environment Defendants.

25   234.   By reason of the conduct of Hostile Work Environment Defendants' and each of
26   them as alleged herein, Coaches Day, Young, and Gluckman have necessarily retained
27   attorneys to prosecute this action. Coaches Day, Young, and Gluckman are therefore
28   entitled to reasonable attorney's fees and litigation expenses, including expert witness

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

fees and costs incurred in bringing this action. By reason of the conduct of Hostile Work Environment Defendants' and each of them as alleged herein, Coaches Day, Young, and Gluckman sustained economic damages to be proven at trial. As a further result of Hostile Work Environment Defendants' and each of their actions, Coaches Day, Young, and Gluckman have suffered emotional distress, resulting in damages to be proven at trial.

235.   The above harassing and discriminatory conduct violates FEHA, *Government Code* §§ 12940 and 12941 and California Public Policy, and entitles Coaches Day, Young, and Gluckman to all categories of damages, including exemplary or punitive damages against  Hostile Work Environment Defendants.

## ELEVENTH CAUSE OF ACTION

### CONSTRUCTIVE TERMINATION

### PLAINTIFFS YOUNG AND GLUCKMAN AGAINST DEFENDANT CLU and ROES 171 THROUGH 180

236.   The allegations set forth in paragraphs 1 through 235 are realleged and incorporated by reference as though fully set forth herein.

237.   As a direct result of the aforementioned conduct, Coaches Young and Gluckman have left their employment at CLU due to the fact that they could no longer tolerate the abhorrent hostility and treatment they received from CLU, and as such, maintaining their employment at CLU had become untenable. As such, Coaches Young and Gluckman have been constructively terminated.

238.   Plaintiffs are informed and believe that Plaintiffs' termination was substantially motivated by both protected complaints and refusal to accept the harassing treatment. Plaintiffs' termination violates the public policies contained in the Fair Employment & Housing Act. Moreover, at all times mentioned in this complaint, *Labor Code* § 1102.5 was in full force and effect and was binding on Defendant CLU and ROES 171-180 (Collectively "Constructive Termination Defendants"). This law requires Constructive Termination Defendants to refrain from retaliating against employees who refuse to participate in or condone conduct they reasonably believe to violate state or federal law.

239.   Plaintiffs are informed and believe that Coach Young and Coach Gluckman were constructively terminated at the end of the 2020 Softball Season after being publicly defamed, harassed, and embarrassed by CLU and its agents at the school, within the community, and on a national level for an event that simply did not happen. As a further point, Coach Young and Coach Gluckman were publicly placed on administrative leave regarding said fabricated event, despite the fact that CLU was in possession of evidence that no such event took place under said Coaches' supervision. By way of example, and not limitation, Coach Young and Coach Gluckman were placed on administrative leave on or about February 8, 2020, which is the same day Defendant Kimball was recorded saying that the pictures of the Softball Team show that certain players had makeup on their faces resembling male facial hair stubble, and that there was no racial intent to their performances. Instead, CLU wrongfully placed Coach Young and Coach Gluckman on administrative leave for public relations purposes and attempted to make them patsies for the false narrative CLU was attempting to push regarding the "Blackface" incident. Remarkably, Plaintiffs are informed and believe that when the Constructive Termination Defendants put Coach Young on administrative leave to "investigate" said fabricated "Blackface" incident to further perpetuate their false narrative, CLU did not know that Coach Young is African-American, and that the Constructive Termination Defendants were in essence publicly accusing an African-American coach of producing and/or allowing racially disparaging "Blackface" performances by the Softball Team.

240.   Plaintiffs are informed and believe that Constructive Termination Defendants' potentially unlawful and/or unethical conduct, all as mentioned above, were each a proximate cause of their termination in violation of the law. But for Constructive Termination Defendants' conduct, Coach Young and Coach Gluckman would more than likely still be working at CLU.

241.   At all times material hereto, Coach Young and Coach Gluckman have suffered and continue to suffer harm due to the discharge.  Constructive Termination Defendants' wrongful termination is a substantial factor in causing such harm.  As a direct and

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

proximate result of the constructive termination, Coach Young and Coach Gluckman have sustained losses in earnings and other employment benefits. As a direct and proximate result of the constructive termination by Constructive Termination Defendants, Coach Young and Coach Gluckman have suffered and continues to suffer humiliation, emotional distress, mental and physical pain and anguish, pain and suffering, loss of sleep, depression and shame.

242. In light of Constructive Termination Defendants' constructive termination of Coach Young and Coach Gluckman, said Plaintiffs also seek an award of punitive and exemplary damages in an amount according to proof at trial.

### TWELFTH CAUSE OF ACTION
### PRIVATE ATTORNEY GENERAL ACTION
### PLAINTIFF DEBBY DAY AGAINST DEFENDANT CLU
### and ROES 181 THROUGH 190

243. Plaintiffs incorporate paragraphs 1 through 242 of this Complaint as if fully set forth herein.

244. Plaintiffs are informed and believe that CLU violated its recordkeeping obligations as to Coach Day and other employees by providing them with inaccurate and/or incomplete wage statements. Specifically, CLU failed to accurately specify the gross wages earned by Coach Day and other aggrieved employees by improperly recording donations to the university from pre-tax categories of the pay stubs, in violation of *Labor Code* § § 226 and 2802. Specifically, Coach Day alleges that the inaccurate recording of donations resulted in a false recordation of a "all deductions" and "net wages earned" in violation of *Labor Code* § 226. Plaintiffs are further informed and believe that Defendant CLU placed donations to the university in the pre-tax donation portion of Plaintiff and other employees' pay stubs, in violation of the *Labor Code* and in violation of both state and federal tax mandates, all in violation of *Labor Code* § 2802.

245. Coach Day, an aggrieved employee, hereby seeks recovery of civil penalties as prescribed by the *Labor Code* Private Attorneys General Act of 2004 on behalf of herself

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

and other aggrieved employees against whom one or more of the violations of the *Labor Code* were committed.

246.   On or about August 3, 2020, Coach Day sent a certified letter to the Labor Workforce and Development Agency ("LWDA"), Defendant CLU as prescribed by *Labor Code* § 2699.3 regarding claims for penalties pursuant to *Labor Code* § 221-224, 226, 1102.5, and 2802. At least sixty-five (65) days have passed since the postmark date of that notice and the LWDA has not indicated that it intends to investigate the alleged violations.   Therefore, pursuant to *Labor Code* § 2699.3(a)(2)(A), Plaintiff may commence a civil action.

247.   Plaintiff and other aggrieved employees are entitled to penalties for the herein alleged violations, to be proven at the time of trial, allocated 75% to the LWDA and 25% to the affected employees, subject to the following formula: a) $100.00 for the initial violation per employee per pay period; and b) $200.00 for each subsequent violation per employee per pay period.

248.   The remedies provided under PAGA are intended to be cumulative of other available remedies.  *Lab. Code* § 2699(g)(1).

### THIRTEENTH CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### ALL PLAINTIFFS AGAINST ALL DEFENDANTS AND ROES 191 THROUGH 200

249.   Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs 1 through 248 of this Complaint as though fully set forth herein.

250.   Plaintiffs, on their behalf and on behalf of the general public, bring this claim pursuant to *Business & Professions Code* § 17200, *et seq*. The conduct of all Defendants and ROES 191 through 200 (Collectively "UCL Defendants") as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs and the general public.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

251.  Plaintiffs are "persons" within the meaning of *Business & Professions Code* § 17204, and therefore have standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

252.  *Business & Profession Code* §17200, *et seq*. prohibits unlawful and unfair business practices.

253.  Plaintiffs are informed and believe that, as stated above, the UCL Defendants have violated statutes and public policies. Through the conduct alleged in this Complaint, the UCL Defendants have acted contrary to these public policies, have defamed, harassed, and retaliated against Plaintiffs, have engaged in unethical business practices, have not ensured a safe and non-violent educational experience and/or workplace for Plaintiffs and others, and have engaged in other unlawful and unfair business practices in violation of *Business & Profession Code* § 17200, *et seq*., depriving Plaintiffs of rights, benefits, and privileges guaranteed to all "persons" under the law.

254.  Plaintiffs are informed and believe that the UCL Defendants' conduct, as alleged hereinabove, constitutes unfair competition, in violation of § 17200, *et seq*. of the *Business & Professions Code*.

255.  Plaintiffs are informed and believe that the UCL Defendants, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care should have known, that their conduct was unlawful. As such, it is a violation of § 17200, *et seq*. of the *Business & Professions Code*. As a proximate result of the above-mentioned acts of the UCL Defendants, Plaintiffs have lost money and/or property.

256.  Plaintiffs are informed and believe that there is no adequate remedy at law to address the UCL Defendants' conduct. Unless restrained by this Court, the UCL Defendants will continue to engage in the unlawful conduct as alleged above. Pursuant to *Business & Professions Code* § 17200, *et seq*., this Court should make such orders or judgments as may be necessary to prevent the use or employment by the UCL Defendants, their agents or employees, of any unlawful or deceptive practice prohibited by the *Business & Professions Code*, including but not limited to disgorgement of profits.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:

- For general, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## SECOND CAUSE OF ACTION FOR SLANDER:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For punitive damages in an amount high enough to deter such conduct in the future;
- For injunctive relief;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## THIRD CAUSE OF ACTION FOR LIBEL:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For punitive damages in an amount high enough to deter such conduct in the future;
- For injunctive relief;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## FOURTH CAUSE OF ACTION FOR FALSE LIGHT:

- For general, special, incidental, and/or consequential damages in a sum to be

proven at trial;

- For punitive damages in an amount high enough to deter such conduct in the future;
- For injunctive relief;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

**FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

**SIXTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:**

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

**SEVENTH CAUSE OF ACTION FOR NEGLIGENCE:**

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## EIGHTH CAUSE OF ACTION FOR VIOLATION OF TITLE IX:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## NINTH CAUSE OF ACTION FOR RETALIATION:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;
- For punitive damages in an amount high enough to deter such conduct in the future;
- For attorneys' fees;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## TENTH CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For punitive damages in an amount high enough to deter such conduct in the future;
- For attorneys' fees;
- For prejudgment interest at the legal rate of 10%;
- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

## ELEVENTH CAUSE OF ACTION FOR CONSTRUCTIVE TERMINATION:

- For general, special, incidental, and/or consequential damages in a sum to be proven at trial;
- For prejudgment interest at the legal rate of 10%;

Case No.:   8:21-cv-1286
File No.:   5.440.001

62

- For costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

**TWELFTH CAUSE OF ACTION FOR VIOLATION OF LABOR CODE § 2699:**

- For penalties pursuant to Labor Code § 2699;
- For prejudgment interest at the legal rate of 10%;
- For reasonable attorneys' fees and costs of suit incurred herein and as permitted by law; and,
- For such other and further relief as the Court deems appropriate.

**THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200:**

- For injunctive relief;
- For costs of suit incurred herein and as permitted by law; and
- For such other and further relief as the Court deems appropriate.

Dated: July 29, 2021                    **Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**

_____
Michael J. Saltz, Esq.
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial of their claims to the extent authorized by law.

Dated: July 29, 2021                    **Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**

_____
Michael J. Saltz, Esq.
Attorneys for Plaintiffs

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax:: 310.446.9909