Henry A. Platt (SBN: 142304)
henry.platt@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006-3434
Tel: (202) 342-3447
Fax: (202) 337-6065

Joshua W.B. Richards, *admitted pro hac vice*
Joshua.richards@saul.com
Amy L. Piccola, *admitted pro hac vice*
amy.piccola@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Fax: (215) 972-7725

*Limited appearance on behalf of Defendants California Lutheran University, Chris Kimball, Melissa Maxwell-Doherty, Jim McHugh, and Karin Grennan*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBY DAY; DE ANN YOUNG; JASON GLUCKMAN; JANE DOES 1-24,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA LUTHERAN UNIVERSITY; CHRIS KIMBALL; MELISSA MAXWELL-DOHERTY; JIM MCHUGH; KARIN GRENNAN and ROES 1 through 200, inclusive,<br><br>Defendants. | CASE NO. 8:21-cv-1286<br><br>**DEFENDANTS CALIFORNIA LUTHERAN UNIVERSITY, CHRIS KIMBALL, MELISSA MAXWELL-DOHERTY, JIM MCHUGH, AND KARIN GRENNAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date of Motion Hearing:<br>July 8, 2022 at 10:30 a.m.<br>The Hon. Josephine L. Staton |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... iv

**INTRODUCTION** .......... 1

**FACTS** .......... 2

I. The CLU community has a heightened awareness of racism and racist conduct during the 2019-2020 academic year .......... 3

II. The CLU student body reacts to the racially-charged Softball Team event and other racially motivated incidents on campus. .......... 5

III. Coach Day raises CLU's compliance with NCAA Bylaws. .......... 6

IV. Plaintiffs sue CLU in July of 2021 .......... 7

V. Plaintiffs fail to timely serve Defendants and then, when prompted by the Court to take action, file misleading attestations of service. .......... 8

**ARGUMENT** .......... 10

I. Legal Standards. .......... 10

II. This action must be dismissed at to Defendants CLU, Kimball, Maxwell-Doherty, and McHugh for lack of proper service. .......... 12

**A.** Plaintiffs failed to properly serve the complaint. .......... 13

**B.** Plaintiffs failed to timely serve the complaint. .......... 14

**C.** Plaintiffs' defamation claims (Counts 2-4) should be dismissed with prejudice because they are time-barred. .......... 16

III. Count 1 (Breach of Contract) fails to state a claim. .......... 16

**A.** Plaintiffs have failed to allege the existence of a contract. .......... 17

**B.** Even if the Softball Players had sufficiently alleged the existence of a contract, they have failed to allege any breach .......... 19

IV. Even if they were not time-barred, the Softball Players' defamation claims (Count 2 - Slander and Count 3 - Libel) fail because the common interest privilege immunizes Defendants from the claims

and because the Softball Players have failed to state a claim. ................ 21

**A.** The alleged communications were privileged. .............................. 22

**B.** The February 5 and 10 Emails Were Not "Of and Concerning" the Softball Players................................................ 24

V. Plaintiffs' false light claim (Count 4) must be dismissed on the same grounds as their defamation claims. ............................................ 25

VI. Plaintiffs' intentional infliction of distress claim (Count 5) fails because Plaintiffs have not sufficiently pleaded "outrageous conduct" or severe emotional suffering, and the common-interest privilege immunizes Defendants. ......................................................... 25

**A.** The Softball Players fail to allege "outrageous conduct" or severe emotional suffering. ......................................................... 26

**B.** The common-interest privilege immunizes Defendants. ............... 28

VII. Counts 6 and 7 (Negligence/Negligent Infliction of Emotional Distress) fail because Plaintiffs fail to identify any cognizable duty of care or that any such duty was breached. .......................................... 29

**A.** The Softball Players fail to identify any duty of care. ................... 29

**B.** Plaintiffs fail to plead any alleged breach of a duty of care. ......... 30

VIII. Coach Day's Retaliation Claim (Count 9) must be dismissed for failure to state a claim because she alleges no protected activity. .......... 30

IX. The Softball Coaches' hostile work environment claim (Count 10) must be dismissed for failure to state a claim. ....................................... 33

X. Coach Young's and Coach Gluckman's constructive termination claim (Count 11) must be dismissed for failure to state a claim. ............ 34

XI. Coach Day's PAGA Claim (Count 12) fails to provide sufficient notice of the employees on whose behalf the claim is being asserted. ............................................................................................... 36

XII. Plaintiffs lack statutory standing to bring a claim under California's Unfair Competition Law. .................................................. 37

XIII. Counts 1-7 and 13 are barred by California's Strategic Lawsuits

Against Public Participation Statute. ........ 40

**A.** Defendants' at-issue conduct was protected because it was made in connection with an issue of public interest. ........ 41

**B.** Plaintiffs' claims are legally insufficient. ........ 42

XIV. Plaintiffs' punitive damages demand is unsupported. ........ 42

**CONCLUSION ........ 43**

# TABLE OF AUTHORITIES

## CASES

*A.S.M. V. v. Cty. of Los Angeles*,
No. 19-CV-06158, 2:19-cv-06158-SB-PLA (C.D. Cal. Jan. 11, 2021) ............ 15

*Abbas v. Woleben*,
No. 3:13CV147, 2013 WL 5295672 (E.D. Va. Sept. 19, 2013) ........................ 18

*Arnaud v. Little Caesar Enters., Inc.*,
No. ED CV 18-01316-DOC, 2018 WL 4772274 (C.D. Cal. Oct. 1, 2018) ....... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 12

*Averill v. Superior Ct.*,
50 Cal. Rptr. 2d 62 (Cal. App. 4th 1996), *as modified* (Mar. 14, 1996) ........... 41

*Banga v. Kanios*,
No. 16-cv-04270-RS, 2017 WL 6731639 (N.D. Cal. Dec. 29, 2017) ............... 17

*Barger v. Playboy Enterprises., Inc.*,
564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984) ......... 24

*Bassam v. Bank of Am.*,
No. CV 15–00587 MMM, 2015 WL 4127745 (C.D. Cal. Jul. 8, 2015) ............ 26

*Bierbower v. FHP, Inc.*,
82 Cal. Rptr. 2d 393 (Cal. App. 4th 1999) ................................................ 22

*Bolden v. City of Topeka, Kan.*,
441 F.3d 1129 (10th Cir. 2006) ................................................... 14, 15

*Brewer v. Second Baptist Church*,
197 P.2d 713 (Cal. 1948) ............................................................. 22, 40

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ........................................................ 11, 20

*Brown v. Kelly Broad. Co.*,
771 P.2d 406(Cal. 1989) ............................................................... 22

*Church of Scientology v. Wollersheim*,
49 Cal. Rptr. 2d 620 (Cal. App. 4th 1996) ........ 41

*Cooper v. Simpson*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) ........ 39

*Dauven v. George Fox Univ.*,
No. CV. 09-305-PK, 2010 WL 6089077 (D. Or. Dec. 3, 2010) ........ 18

*Davidson v. City of Westminster*,
32 Cal. 3d 197 (1982) ........ 27

*Dehen v. Does 1-100*,
No. 17cv198-LAB (WCG), 2018 WL 4502336 (C.D. Cal. Sept. 19, 2018) ........ 20

*Dowell v. Contra Costa Cty.*,
928 F. Supp. 2d 1137 (N.D. Cal. 2013) ........ 32

*E.E.O.C. v. California Psychiatric Transitions, Inc.*,
644 F. Supp. 2d 1249 (E.D. Cal. 2009) ........ 42

*Eastwood v. Sera Labs, Inc.*,
No. No. 2:20-cv-06503-RGK, 2021 WL 4439221
(C.D. Cal. June 23, 2021) ........ 42, 43

*Eclectic Properties East LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........ 12

*Edgerly v. City of Oakland*,
150 Cal. Rptr. 3d 425 (Cal. App. 4th 2012*), as modified* (Dec. 13, 2012) ........ 35

*Eisenberg v. Alameda Newspapers, Inc.*,
88 Cal. Rptr. 2d 802(Cal. App. 4th 1999) ........ 25

*Elias v. Spotify USA Inc., et al.*,
No. CV 20-1854-JFW, 2020 WL 11626649 (C.D. Cal. Dec. 16, 2020) ........ 36

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
No. 20-CV-06846-EJD, 2021 WL 3037701 (N.D. Cal. July 19, 2021) ........ 11

*Elliott v. QF Circa 37, LLC*,
No. 16-cv-0288-BAS-AGS, 2017 WL 6389775 (S.D. Cal. Dec. 14, 2017) ........ 38

*Ernest v. Univ. of Phoenix*,
No. 08-CV-2363-H (POR), 2010 WL 11508435 (S.D. Cal. July 27, 2010) 29, 30

*FilmOn.com Inc. v. DoubleVerify Inc.*,
439 P.3d 1156 (Cal. 2019) .......... 41

*Gavriliuc v. TEKsystems, Inc.*,
No. 8:20-cv-02164-JLS-DFM, 2021 WL 3568252
(C.D. Cal. Apr. 14, 2021) .......... 33

*Golden v. Dungan*,
20 Cal. App. 3d 295 (1971) .......... 26

*Griffin v. Burke v. Trevor Basil, et al.*,
No. 8:20-cv-00635-JVS-JDEx, 2021 WL 4168380
(C.D. Cal. June 21, 2021) .......... 29

*Haley v. Cohen & Steers Cap. Mgmt., Inc.*,
871 F. Supp. 2d 944 (N.D. Cal. 2012) .......... 26

*Harkonen v. Fleming*,
880 F. Supp. 2d 1071 (N.D. Cal. 2012) .......... 23

*Havensight Cap. LLC v. Nike, Inc.*,
No. CV 14–7153–R, 2014 WL 12613382 (C.D. Cal. Nov. 19, 2014) .......... 30

*Hawran v. Hixson*,
147 Cal. Rptr. 3d 88 (Cal. App. 4th 2012) .......... 23

*Haynes v. Bank of Am.*,
No. CV 09–3579–VBF(SSx), 2009 WL 10680861
(C.D. Cal. Sept. 9, 2009) .......... 29

*Hughes v. Pair*,
209 P.3d 963 (Cal. 2009) .......... 27

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020) .......... 38

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 17

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 4th 2009) .......................................................................... 39

*In re Waldner*,
183 B.R. 879 (B.A.P. 9th Cir. 1995) ................................................................ 15

*Inst. of Athletic Motivation v. Univ. of Illinois*,
170 Cal. Rptr. 411 (Cal. App. 3d 1980) ....................................................... 22, 23

*Iskanian v. CLS Transp. Los Angeles, LLC*,
327 P.3d 129(Cal. 2014)................................................................................ 36

*J2 Global, Inc. v. FAX87.COM*,
No. CV 13–05353 DDP, 2014 WL 462832 (C.D. Cal. February 5, 2014)........ 11

*Kashmiri v. Regents of Univ. of California*,
*67 Cal. Rptr. 3d 635 (Cal. App. 4th 2007), as modified (Nov. 15, 2007), as modified (Nov. 28, 2007)* ..................................................................... *17, 18*

*Khan v. Dunn-Edwards Corp.*,
*19 Cal. App. 5th 804 (Cal. App. 2018)*.................................................................. *36*

*Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*,
966 F. Supp. 2d 971 (N.D. Cal. 2013)............................................................... 32

*Kwikset Corp. v. Sup. Ct.*,
246 P.3d 877 (Cal. 2011)................................................................................... 38

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (Cal. 2011) ........................................................................ 37, 38

*Lee v. Eden Med. Ctr.*,
690 F. Supp. 2d 1011 (N.D. Cal. 2010) .............................................................. 33

*Lenk v. Monolithic Power Sys., Inc.*,
No.15-cv-01148-NC, 2015 WL 7429498 (N.D. Cal. Nov. 23, 2015) ......... 31, 35

*Martin v. Kearney*,
124 Cal. Rptr. 281 (Cal. App. 3d 1975) ............................................................ 22

*Martinez v. Costco Wholesale Corp.*,
481 F. Supp. 3d 1076 (S.D. Cal. 2020) ....................................................... 31, 43

*McGrory v. Applied Signal Tech., Inc.*,
152 Cal. Rptr. 3d 154 (Cal. App. 4th 2013) ........ 22

*McKenna v. Permanente Med. Grp., Inc.*,
894 F. Supp. 2d 1258 (E.D. Cal. 2012) ........ 26, 34, 35

*Menna v. Radmanesh*,
No. CV 13–501–R (MAN), 2013 WL 3071054 (C.D. Cal. June 18, 2013) ........ 15

*Moore v. Crescent Jewelers*,
No. C-94-423 JSB, 1997 WL 383297 (N.D. Cal. June 26, 1997) ........ 27

*Morgan v. Regents of Univ. of Cal.*,
105 Cal. Rptr. 2d 652 (Cal App. 4th 2000) ........ 33

*Naufahu v. City of San Mateo*,
C 07-4517 MMC, 2008 WL 2323869 (N.D. Cal. May 14, 2008) ........ 14

*Navellier v. Sletten*,
52 P.3d 703 (Cal. 2002) ........ 40

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
C–04–3955 SC, C–05–1605 SC, 2009 WL 4258550
(N.D. Cal. Nov. 24, 2009) ........ 14

*Noel v. River Hills Wilsons, Inc.*,
7 Cal. Rptr. 3d 216 (Cal. App. 4th 2003) ........ 22

*Oasis W. Realty, LLC v. Goldman*,
51 Cal. 4th 811 (Cal. 2011) ........ 16

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987) ........ 12

*Paz v. State of California*,
994 P.2d 975 (Cal. 2000) ........ 29

*Pearson v. Los Angeles Cty. Sheriff's Dep't*,
2:18-09065 SB (ADS), 2020 WL 6436970, (C.D. Cal. Oct. 20, 2020), *report and recommendation adopted*, 2:18-09065 SB (ADS), 2020 WL 7024922
(C.D. Cal. Nov. 28, 2020) ........ 11

*Penrose Hill, Ltd. v. Mabray*,
479 F. Supp. 3d 840 (N.D. Cal. 2020)........................................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018).............12, 42

*Popa v. Winn Law Grp., APC*,
No. CV 17-6804 DSF, 2017 WL 6016567 (C.D. Cal. Dec. 4, 2017)................38

*Potter v. Firestone Tire & Rubber Company*,
863 P.2d 795 (Cal. 1993)..........................................................................28, 30

*Rogers v. W. Univ. Health Sciences,*
*No. CV 16-07681-MWF (AGRx), 2017 WL 11567381*
*(C.D. Cal. Jan. 17, 2017)* .........................................................................*29, 30*

*Rudolph v. UT Starcom, Inc.,*
*No. C 07–04578 SI, 2009 WL 248370 (N.D. Ca. Feb. 2, 2009)* ....................... *15*

*Sanchez v. Am. Media, Inc.*,
No. CV 20-2924-DMG, 2020 WL 8816343 (C.D. Cal. Dec. 29, 2020)......40, 42

*Sanchez v. Gruma Corp.*,
No. 19-cv-02015-WHO, 2019 WL 2716539 (N.D. Cal. Jun. 28, 2019)...........37

*Schneider v. TRW, Inc.*,
938 F.2d 986 (9th Cir. 1991).........................................................................25

*Schultz v. Stericycle, Inc.*,
No. CV F 13–1244 LJO MJS, 2013 WL 4776517 (E.D. Cal. Sept. 4, 2013)....28

*Scotch v. Art Inst. of California*,
93 Cal. Rptr. 3d 338 (Cal. App. 4th 2009)......................................................32

*SDV/ACCI, Inc. v. AT & T Corp.*,
522 F.3d 955 (9th Cir. 2008).........................................................................24

*Sepehry-Fard v. MB Fin. Servs.*,
No. 13-CV-02784-BLF, 2015 WL 903364 (N.D. Cal. Mar. 2, 2015)...............39

*Shelton v. Ocwen Loan Serv., LLC*,
No. 18-cv-02467-AJB-WVG, 2019 WL 4747669 (S.D. Cal. Sept. 30, 2019) ..38

*Shively v. Bozanich*,
80 P.3d 676 (Cal. 2003)....................21

*Singh v. Litton Loan Servicing*,
No. CV F 10–1355 LJO GSA, 2011 WL 1627315 (E.D. Cal. Apr. 28, 2011)..28

*Sipple v. Found. For Nat. Progress*,
83 Cal. Rptr. 2d 677 (Cal. App. 4th 1999)....................41

*Smith v. Superior Ct.*,
13 Cal. Rptr. 2d 133 (Cal. App. 4th 1992)....................43

*Sobel v. Inst. for Shipboard Educ.*,
No. 3:15-cv-00040, 2017 WL 398425 (W.D. Va. Jan. 26, 2017)....................14

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)....................12

*Summers v. McClanahan*,
44 Cal. Rptr. 3d 338 (Cal. App. 4th 2006)....................14

*Swenson v. Amtrak*,
No. No. 2:14–CV–02629–KJM–CMK, 2015 WL 6447493 (E.D. Cal. Oct. 23, 2015)....................42

*Taus v. Loftus*,
151 P.3d 1185 (Cal. 2007)....................21

*Thomas v. Vulcan Materials Co.*,
No. 19-CV-06042-KAW, 2019 WL 6700107 (N.D. Cal. Dec. 9, 2019).....34, 35

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)....................4, 6, 16, 37

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011)....................12

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017)....................37

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. Jul. 31, 2015)....................39

*Watkins v. City of Moreno Valley*,
No. ED CV 17-1424-DMG, 2018 WL 6265100 (C.D. Cal. Feb. 13, 2018) ...... 33

*Weinstein v. HBE Corp.*,
No. 2:13–cv–04643–CAS(JCx), 2014 WL 5602510
(C.D. Cal. Nov. 3, 2014) ...... 42

*Whitlock v. Pepsi Americas*,
681 F. Supp. 2d 1116 (N.D. Cal. 2010) ...... 28

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ...... 38

*Wittenbrock v. Sunovion Pharms. Inc.*,
No. EDCV 19-342, 2019 WL 4453719 (C.D. Cal. May 20, 2019) ...... 32

*Wong v. Jing*,
117 Cal. Rptr. 3d 747 (Cal. App. 4th 2010) ...... 27

*Zochlinski v. Regents of the Univ. of California*,
No. 2:10-cv-1824-KJM-KJN PS, 2015 WL 6744654
(E.D. Cal. Nov. 4, 2015) ...... 27

**FEDERAL STATUTES**

20 U.S.C. §§ 1681 ...... 8

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...... 37, 40, 41

Cal. Gov. Code § 12940(h) ...... 31

Cal. Civ. Code §§ 45-46 ...... 21, 22

Cal. Civ. Code § 47 ...... 22, 23, 29

Cal. Civ. Proc. Code §§ 416.10, 416.90 ...... 11

Cal. Civ. Proc. Code § 425.16 ...... *passim*

Cal. Labor Code § 1102.5(b) ...... *passim*

Cal. Labor Code § 2699.3 ...... 36

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 4 .......... *passim*

Fed. R. Civ. P. 6(b)(1)(B) .......... 15

Fed. R. Civ. P. 8 .......... 12

Fed. R. Civ. P. 12 .......... *passim*

L.R. 7-3 .......... 2, 10

**INTRODUCTION**

At bottom, this lawsuit is principally about a group of mostly white students seeking to blame California Lutheran University ("CLU" or the "University") for their peers' reaction when they decided to dress up as Black television actors, record themselves performing a song, and then place that performance on social media.

During the 2019-20 academic year, CLU leadership was working to create an educational space for productive dialogue and a campus culture that was inclusive and welcoming in the wake of several racially-charged incidents on campus. It was against this backdrop that Plaintiffs Jane Does 1-5, members of CLU's Softball Team, decided to perform a lip-sync routine in which they dressed up – and colored their faces – to look like the Black cast of a well-known sitcom. Others on campus quickly deemed this routine as insensitive, mocking, and racially-charged. Unfortunately, this racially-charged team event was quickly followed by another incident wherein a student (not a member of the softball team) used a racial slur in a social media posting. As it had done in the past, CLU moved quickly to engage its community and to address, as necessary, the incidents themselves. This response involved an investigation and engagement between CLU's senior leadership and the softball team and its coaches. **At no time did CLU name any individual, or even the softball team more generally, when publicly addressing the incident, nor did CLU discipline any member of the softball team, or its coaches, in connection with the incident**. The Amended Complaint does not allege to the contrary.

Despite CLU's measured and reasonable reaction to the racially-charged team lip-sync event, and the fact that it was Plaintiff softball players' poor judgment, not any response by the University that has gotten them here, Plaintiffs – coaches and players affiliated with the softball team – filed a 13-count complaint against the University alleging misconduct ranging from defamation to discrimination to breach of contract.

Plaintiffs filed the Complaint on the eve of the expiration of the statute of

limitations on their defamation claims and then did nothing for ninety-three days. It was not until this Court prompted action – after expiration of the service period provided by the Federal Rules – that Plaintiffs rushed to CLU's campus to drop off copies of the summonses and complaint with a CLU employee not authorized to accept service on behalf of any Defendant. Service of process was late, then ineffective when made.

In tacit acknowledgement of this invalid service (following the L.R. 7-3 meet and confer process), Plaintiffs now purport to have "served" Defendants Maxwell-Doherty, McHugh, Grennan, and CLU with their First Amended Complaint more than 160 days after commencing this action. The Amended Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(5). (*See also* Doc. 17 (Standing Order) ¶2.)) While dismissal on procedural grounds is typically without prejudice, here, dismissal *with* prejudice is warranted as to at least Counts 1-7 and 9-13 because: (a) Plaintiffs' defamation claims (Counts 2-4) will be time-barred upon re-filing; and (b) those same defamation claims, along with the claims for breach of contract (Count 1); intentional infliction of emotional distress (Count 5); negligence and negligent infliction of emotional distress (Counts 6-7); violation of state labor and employment laws (Counts 9-12); and violation of the California Business and Professions Code (Count 13) fail to state any legally cognizable claim and are properly dismissed with prejudice under Fed. R. Civ. P. 12(b)(6). In addition, Counts 1-7 and Count 13 involve protected activity by the University under California's Strategic Lawsuits Against Public Participation Statute and must also be dismissed for this reason.

## **FACTS**

CLU is a private university located in greater Los Angeles. (Doc. 41 ("Am. Compl.") ¶ 27.) The Amended Complaint centers around events involving members of the CLU Softball Team and their coaches during the 2019-2020 academic year. During that time, Plaintiff Debby Day ("Coach Day") was the head coach of the

Softball Team. (*Id.* at ¶ 8.) Coach Day worked with assistant coaches and now-Plaintiffs Jason Gluckman ("Coach Gluckman") and Ann Young ("Coach Young" and, together with Coach Day and Coach Gluckman, the "Softball Coaches"). (*Id.* at ¶¶ 9-10.) The nominally-anonymous Plaintiffs Jane Does 1-24 were former students and members of the Softball Team (the "Softball Players"). (*Id.* at ¶¶ 11-12.)

**I. The CLU community has a heightened awareness of racism and racist conduct during the 2019-2020 academic year.**

Like other institutions across the United States, CLU continues to reckon with past and ongoing societal racism and racially-charged incidents involving and/or perpetrated against members of its own community. (*Id.* at ¶¶ 31-35, 40; Doc. 1-1 at 2.) The efficacy of CLU's responses to racially-charged incidents on campus became the subject of accrediting-body and student-body concern, especially during the 2019-2020 academic year. (*Id.* at ¶¶ 31, 33, 35-36.)

While this was unfolding on campus (*see id.* at ¶¶ 31-38), the Softball Players were commemorating their team's "Hell Week." (*Id.* at ¶ 65.) The team broke into small groups to perform lip-sync routines. (*Id.*) Jane Does 1-5 chose to perform the theme song from *The Fresh Prince of Bel-Air*, a 1990s sitcom about a Black teenager from Philadelphia who moves to the Los Angeles area to live with wealthy extended family. (*Id.* at ¶ 68 & n.12.) On January 21, 2020, they performed their *Fresh Prince* routine. (*Id.* at ¶ 70.) Jane Does 1-5 wore "their hip-hop costumes," dark facial makeup they contend resembled facial hair, and some wore wigs of tightly curled, short hair that stood tall on the scalp. (*Id.* at ¶¶ 71-72.) Videos and photos of the performance were posted to the Softball Team's social media accounts, which resulted in complaints "that the Softball Team posted a 'Blackface' performance to social media." (*Id.* at ¶¶ 72-73.) Shortly thereafter, Coach Day removed the images and videos of the performance from social media. (*Id.* at ¶¶ 73, 74.)

After an additional, unrelated racially concerning incident occurred, Kimball

emailed the CLU community to emphasize that CLU does not condone or tolerate acts of racism (the "February 5 Email"). The February 5 Email makes reference to "[t]wo racist incidents involving social media posts by Cal Lutheran students," but provides no further detail on those incidents and does not reference any individual by either name or affiliation. (Ex. A to the Declaration of Henry A. Platt, Esq. submitted herewith ("Platt Decl.") at 2-3.)[1] The February 5 Email concluded by inviting the community to participate in "dialogue at a campus forum on race and equity" on February 24, 2020. (*Id.* at 3.)

On February 8, 2020, Kimball hosted a meeting with and facilitated a counseling session for the Softball Players and their parents regarding the racially-charged team event (the "February 8 Meeting") (*Id.* at ¶¶ 86, 89), at which attendees exchanged conflicting points of view about whether the *Fresh Prince* performance constituted blackface. (*Id.* at ¶ 87.)

On February 10, 2020, Kimball sent another email (the "February 10 Email") acknowledging the hurt in the community and encouraging respectful discourse:

> We are one community.
>
> Members of our community with different experiences and perspectives are hurting right now. In the days and weeks ahead, we want to take clear steps that demonstrate our commitment to our core values and build a bridge to better understanding.
>
> This will be difficult, and we need everyone to engage in these challenging conversations with respect.
>
> As a starting point, we want to share more detailed information about some incidents and their impact. The University has a responsibility to

---

[1] Plaintiffs reference the February 5 Email throughout their Amended Complaint. The Court may therefore consider the email "as part of the complaint." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

> identify and respond to behavior that is inconsistent with our values.
>
> In one incident, students were recorded doing performances in which there were exaggerated characterizations of black people and culture. The images were shared on social media. Many viewers in our campus community took offense and identified it as blackface.
>
> While some have questioned the University's use of the term "blackface," and whether such a definition is solely limited to using makeup on one's face, the University used the term as it is often used by historians – comedic performances of "blackness" by whites in exaggerated costumes and makeup. Regardless of how one views this particular definition, it does not change the nature of the underlying conduct.

(Ex. B to Platt Decl. at 2-3.) The February 10 Email concludes by (1) expressly stating that the University does "not condone" the actions "to identify and call out the students" involved and (2) warning that "[t]o the extent we have or will receive reports of threats [against the students implicated in the racially-charged events], we will continue to address them." (*Id.*) That same day, the University determined that, "[b]ased on our review of [the racially-charged Softball Team event] . . . there will be no individual student conduct process related to the performances." (*Id.* at ¶ 92, Ex. C to Platt Decl. at 2.)

## II. The CLU student body reacts to the racially-charged Softball Team event and other racially motivated incidents on campus.

Following the racially-charged performance, students staged a walkout and confronted University administrators to demand to know the identity and enrollment status of the students implicated in both the N-word incident and racially-charged team event. (*Id.* at ¶¶ 107-09.) Students called for the expulsion of the Softball Players during a February 13 "open forum" regarding racially-charged events on

campus (the "February 13 Community Forum"). (*Id.* at ¶ 114.) Some CLU students also took to social media to discuss the climate at CLU and the racially-charged Softball Team event. (*Id.* at ¶ 115.) As promised in the February 5 Email, the University hosted a public forum on race and equity on February 24, 2020 (the "February 24 Public Forum"), in which the Softball Players participated. (*Id.* at ¶ 124; *see also* Ex. A to Platt Decl. at 3.) During the February 24 Public Forum, CLU community members publicly shared their feelings about the racial incidents on campus. (Am. Compl. ¶ 125.)

Eventually, the Softball Players filed an internal CLU complaint against Kimball and "several students" alleging that they violated certain anti-harassment and anti-hate-speech provisions of the CLU Student Handbook. (*Id.* at ¶¶ 117-23.) CLU investigated the complaint and ultimately determined no violations of the Handbook occurred. (*Id.* at ¶ 123.) Coaches Young and Gluckman eventually left their employment with CLU. (*Id.* at ¶ 133.)

### III. Coach Day raises CLU's compliance with NCAA Bylaws.

On February 1, 2019, nearly one year before the events central to the Complaint discussed above, Coach Day emailed the Executive Director of the Southern California Intercollegiate Athletic Conference ("SCIAC") asking whether "there is some sort of document . . . that will clarify what is/is not allowable" regarding use of weight-training facilities in the off-season because it was "that time of year where I hear a lot of questions/accusations of what other schools are doing." (Ex. D to Platt Decl.[2] at 2). Specifically, Coach Day sought "back-up for when we tell our coaches something is not permissible." (*Id.* at 2) SCIAC responded by providing Coach Day with citations to certain relevant NCAA bylaws. (*Id.* at 2-3.)

---

[2] Plaintiffs expressly reference Coach Day's February 1, 2019 email to SCIAC and the August 22, 2019 "CLU Strength and Conditioning Concerns" document in the Amended Complaint (Am. Compl. ¶¶ 43, 46, 49.) allowing the court to consider the email "as part of the complaint." *Ritchie*, 342 F.3d at 908.

Coach Day then met with Defendant McHugh to discuss SCIAC's response. (Am. Compl. ¶ 44-45.) Coach Day expressed her concerns about NCAA bylaw compliance and that "some teams [are] given 3-4 days of strength and conditioning coaching throughout the school year while other are given none (Men's Water Polo, for instance) or one like Softball." (Ex. D to Platt Decl. at 3.) McHugh expressed that he did not believe there were compliance issues, and directed Coach Day to bring her strength and conditioning coaching concerns to an athletics staff member. (*Id.*)

Several months later, Coach Day received an evaluation from McHugh that she believed to be unfavorable. (*Id.* at ¶ 46.) She met with McHugh to discuss the evaluation, and submitted a rebuttal to her review to "memorialize the inequitable treatment of the Softball Team," among other things. (*Id.* at ¶ 48.) In August 2019, Coach Day wrote to CLU Human Resources raising alleged NCAA violations and her "fe[eling] like she was being targeted for retaliation for raising these concerns." (*Id.* at ¶¶ 49, 50.) She submitted a follow-up report to Human Resources in September 2019 reporting that she had learned that McHugh and Defendant Chris Kimball, CLU's President and CEO, did not like her and that McHugh wished she did not work at CLU. (*Id.* at ¶ 50.)

In October 2019, CLU hired an independent investigator to examine Coach Day's concerns. (*Id.* at ¶ 52.) The investigator's report concluded that CLU had not denied the Softball Team equitable access to strength-training resources on the basis of gender and that McHugh had not engaged in retaliation. (*Id.* at ¶ 52.) Coach Day was not satisfied with these findings.

## IV. Plaintiffs sue CLU in July of 2021.

On July 29, 2021, Plaintiffs filed a 13-count Complaint against CLU, Kimball, McHugh, and Maxwell-Doherty. (Doc. 1) On December 31, 2021, Plaintiffs filed an Amended Complaint against CLU, Kimball, McHugh, Maxwell-Doherty, and added Grennan. (Doc. 41.) The Softball Players assert claims for breach of contract (Count

1; *id.* at ¶¶ 137-53); defamation (Counts 2-4; *id*. at ¶¶ 154-210); intentional infliction of emotional distress (Count 5; Am. Compl. ¶¶ 211-18); and negligence and negligent infliction of emotional distress (Counts 6-7; *id*. at ¶¶ 219-30.) The Softball Coaches allege violation of state labor and employment laws (including a PAGA claim) (Counts 9-12; *id*. at ¶¶ 241-83.) All Plaintiffs also allege violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*. (Count 8; *id*. at ¶¶ 231-40) and California's Business and Professions Code §§ 17200, *et seq*. (Count 13; *id*. at ¶¶ 284-91.) Plaintiffs filed purported Proofs of Service of the Amended Complaint with the Court for all Defendants on January 18, 2022. (Docs. 53-57.) After filing the Complaint in July, Plaintiffs did nothing for three months: they did not contact CLU or its known counsel to discuss the Complaint and did not attempt service.

**V. Plaintiffs fail to timely serve Defendants and then, when prompted by the Court to take action, file misleading attestations of service.**

Plaintiffs had until October 27, 2021 to serve their complaint under Rule 4(m). Plaintiffs' attorneys admit that no attempt at service was made on or before this date, (Doc. 28), despite the fact that the University's campus has been open and operating throughout the COVID-19 pandemic. (*See* the Declaration of California Lutheran University signed by Karen Davis ("CLU Decl.") at ¶¶ 4, 8.) Plaintiffs likewise made no attempt to contact known counsel for the University to request a waiver of service.[3] (*Id*. at ¶ 10.) On October 29, 2021, after the service deadline passed, this Court issued an Order to Show Cause regarding Dismissal for Lack of Prosecution.

---

[3] Plaintiffs' attorneys contend that they spent months attempting to track down addresses for the individual Defendants. (Doc. 28 at ¶ 5.) The implausibility of these sworn allegations is underscored by the fact that 11 days after the Court filed its show-cause order, Plaintiffs made a belated attempt to personally serve McHugh at his current place of employment. Notably, McHugh's current place of employment is readily ascertainable with a quick Internet search.

(Doc. 20.) The Order required Plaintiffs to file, by November 5, either (1) a written response explaining why the "action should not be dismissed for lack of prosecution," or (2) proof of service. (*Id.*) The Order stated that "[a]bsent a showing of good cause, an action shall be dismissed if the summons and complaint have not been served upon all defendants within 90 days after filing of the complaint." (*Id.*)

Plaintiffs sent a process server to CLU's campus hours after the Order was issued on October 29. The process server left a stack of papers containing the summonses and copies of the Complaint for all then-named Defendants with Ms. Norma Meza, a secretary at CLU. (*See* the Declaration of Norma Meza ("Meza Decl.") at ¶ 9.) Ms. Meza informed the process server that Karen L. Davis, CLU's authorized agent for service at the time, was not available and asked that he return on the next business day so that Ms. Davis could accept the documents; the process server declined to return. (*Id.* at ¶ 10.) The process server did not confirm whether Ms. Meza was authorized to accept service on behalf of any Defendant. (*Id.* at ¶ 11.) Had he taken care to ask, the process server would have learned that none of the individual Defendants – Kimball, McHugh, and Maxwell-Doherty – who are each being sued in their individual, and not official, capacity, had authorized Ms. Meza to accept service on their behalf, (*id.* at ¶¶ 5-8; *see also* CLU Decl. at ¶ 7; the Declaration of James McHugh ("McHugh Decl.") at ¶ 6; the Declaration of Christopher Kimball ("Kimball Decl.") at ¶ 6; the Declaration of Melissa Maxwell-Doherty ("Maxwell-Doherty Decl.") at ¶ 4.)), and that Defendant McHugh was not even employed by CLU on October 29. (McHugh Decl. at ¶ 4.) The process server executed Proofs of Service for all four of the original Defendants, falsely representing, under penalty of perjury, that he had personally "served" the summons on an "agent authorized to accept service" for each of the four defendants. (Docs. 24-27.) Plaintiffs filed the false Proofs of Service on November 4, 2021. (*Id.*)

In the meantime, having received defective and belated service copies,

Defendants filed a Statement of Interest in response to the Show Cause Order on November 2, 2021. (Doc. 22.) Prompted by the Statement, Plaintiffs' attorney filed a Declaration informing the Court that "the attorney service completed service of process of all defendants on day 92" and suggested that the filed Proofs of Service and the Declaration satisfied the Court's Show Cause Order. (Doc. 28 at ¶¶ 4, 6.) The Declaration argues in part that "good cause" exists for failing to timely, and properly, effect service because Declarant Attorney Michael J. Saltz was on trial and then on leave for parts of the 90-day service period. (*Id.* at ¶¶ 3-4.) The Declaration does not explain why or how others at Mr. Saltz's firm, including his co-counsel who appeared in this action on July 30, 2021 (and filed the most recent requests for summonses, *see* Doc. Nos. 42-46), were prevented from supervising serving the Complaint.

Plaintiffs thereafter made a second attempt for service on Defendant McHugh, personally serving him at his current place of employment on November 9, 2021. (*See* the Declaration of James McHugh ("McHugh Decl.") at ¶ 7.) Mr. McHugh is now the *only* Defendant who has been personally served with the summons and Complaint, albeit ineffectively late in light of applicable deadlines.

Following the L.R. 7-3 meet and confer over Defendants' proposed motion to dismiss the original Complaint for improper and insufficient service of process – in a thinly-veiled effort to evade the Court's still-pending Order to Show Cause – Plaintiffs asked the Clerk of Court to issue *new* summonses related to the First Amended Complaint. While Plaintiffs have delivered copies of the *Amended* Complaint to each of the Defendants, any such "service" of the Amended Complaint does not remedy the ineffective service of the original summonses and Complaint.

## ARGUMENT

### I. Legal Standards.

Defendants bring this motion to dismiss pursuant to Federal Rules 12(b)(2), (5) and (6) and California's Strategic Lawsuit Against Public Participation ("anti-

SLAPP") statute, Cal. Civ. Proc. Code § 425.16.

Under Rule 12(b)(5), a complaint may be dismissed for failure to comport with the requirements for proper service identified in Rule 4. *See J2 Global, Inc. v. FAX87.COM*, No. CV 13–05353 DDP (AJWx), 2014 WL 462832, at *2 (C.D. Cal. February 5, 2014) (the failure to properly serve a defendant provides a basis for dismissal of the complaint). Because service was improper, this Court also lacks personal jurisdiction over Defendants pursuant to Rule 12(b)(2). Rule 12(b)(5) allows a defendant to attack both the manner in which service was, or was not, attempted and the timeliness of service. *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-CV-06846-EJD, 2021 WL 3037701, at *2 (N.D. Cal. July 19, 2021); *Pearson v. Los Angeles Cty. Sheriff's Dep't*, 2:18-09065 SB (ADS), 2020 WL 6436970, at *2 (C.D. Cal. Oct. 20, 2020), *report and recommendation adopted*, 2:18-09065 SB (ADS), 2020 WL 7024922 (C.D. Cal. Nov. 28, 2020). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citations and internal quotation marks omitted).

Three aspects of Rule 4 are implicated here: (1) Rule 4(e)'s requirement that service upon an individual be accomplished by "delivering a copy of the summons and complaint to an agent authorized to receive service of process" or "following the law of the state of service with respect to serving a summons;"[4] (2) Rule 4(h)'s requirement that service upon a corporation be accomplished either "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," or as permitted by state law; and (3) Rule 4(m)'s requirement that service on either

---

[4] In relevant part, the California Code of Civil Procedure provides that service may be accomplished by delivering a copy of the summons and the complaint to a person ***"designated as agent for service of process***." Cal. Civ. Proc. Code §§ 416.10, 416.90 (emphasis added).

an individual or an entity be accomplished with 90 days of the filing of the complaint.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the focus is the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). The Court accepts as true only those well-pleaded allegations in the complaint to determine whether there is "sufficient factual matter" that, when taken as true, "state[s] a claim for relief that is plausible on its face." *Id.* (quotation omitted). A claim for relief is facially plausible, and thus survives a Rule 12(b)(6) motion, only "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether allegations are plausible, "courts must also consider an obvious alternative explanation for defendant's behavior." *Eclectic Properties East LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quotation omitted). Further, where the allegations conflict with a document referenced in, or an exhibit to the complaint, the document itself or exhibit controls. *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

If a defendant moves under California's anti-SLAPP statute founded on purely legal arguments, then the analysis is purely legal under Federal Rules 8 and 12. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018) (an "anti-SLAPP motion 'may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

## II. This action must be dismissed at to Defendants CLU, Kimball, Maxwell-Doherty, and McHugh for lack of proper service.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Here, Plaintiffs failed

to satisfy the procedural requirements of Rule 4 because attempted service was (1) improperly effectuated and (2) untimely.

### A. Plaintiffs failed to properly serve the complaint.

Plaintiffs' only attempt to serve the original Complaint and summonses on Defendants CLU, Kimball, and Maxwell-Doherty to commence this action occurred on October 29, 2021, when a process server handed summonses for all Defendants to Norma Meza, a secretary at CLU.[5] (*See* Meza Decl. at ¶ 9.) Despite the process server's reckless attestation to the contrary (Docs. 24-27), service was not validly effectuated on *any* of the defendants on October 29, 2021.

Pursuant to Rule 4(e), service on an individual is valid if the summons and complaint are delivered "to an agent authorized to receive service of process." Rule 4(h) provides that service upon an entity may be accomplished by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Service was accordingly valid as of October 29 *only if* Ms. Meza was authorized to accept service on behalf of all Defendants, or if, as to CLU, she is "an officer, manager or general agent" of the University. For the avoidance of any doubt, Ms. Meza was not authorized to accept service on behalf of any other Defendants.[6] (*See* Meza Decl. at ¶¶ 5-8; McHugh Decl. at ¶ 6; CLU Decl. at ¶ 7; Kimball Decl. at ¶ 6;

---

[5] Defendants Kimball, McHugh, and Maxwell-Doherty have been sued in their individual capacities, not as University officials. Mr. McHugh is not currently employed by CLU. (*See* McHugh Decl. at ¶ 4.)

[6] Even a cursory search of the California Secretary of State's Business Entities Search page would have revealed that Ms. Karen L. Davis was CLU's authorized agent for service of process. Apparently neither Plaintiffs nor their process server reviewed the readily available resource on the Secretary of State's website. *See* https://businesssearch.sos.ca.gov/CBS/SearchResults?filing=&SearchType=CORP&SearchCriteria=California+Lutheran+University&SearchSubType=Keyword.

Maxwell-Doherty Decl. at ¶ 4.) Service on October 29, 2021 therefore was not valid. It follows that Plaintiffs did not satisfy the Court's show cause order.

Ms. Meza was likewise not otherwise empowered to accept service on CLU's behalf by nature of being an officer or manager of the institution. (*See* Meza Declaration at ¶¶ 3-5; *see also* CLU Decl. at ¶ 7.) Courts have repeatedly held that service of process on a secretary or assistant, where the defendant did not authorize such a person to accept service, is invalid. *See, e.g., NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, C–04–3955 SC (JCS), C–05–1605 SC, 2009 WL 4258550, at *2 (N.D. Cal. Nov. 24, 2009) (service improper where plaintiff served as defendant-corporation's administrative assistant); *Naufahu v. City of San Mateo*, C 07-4517 MMC, 2008 WL 2323869, at *2 (N.D. Cal. May 14, 2008) (defendant's assistant not an agent authorized to accept service); *Summers v. McClanahan*, 44 Cal. Rptr. 3d 338, 346-47 (Cal. App. 4th 2006) (service improper where plaintiff served defendant's personal manager who had never been authorized by defendant to accept service). Because Plaintiffs have failed to meet their burden to establish proper service, and, of greater concern, filed affidavits of service that were reckless in their falsity, this civil action must be dismissed. Plaintiffs cannot cure defective service of the original Complaint and summons by serving an Amended Complaint. *See, e.g.*, *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) (holding that plaintiffs cannot refile amended complaints to circumvent Rule 4); *Sobel v. Inst. for Shipboard Educ.*, No. 3:15-cv-00040, 2017 WL 398425, at *8 (W.D. Va. Jan. 26, 2017).

**B. Plaintiffs failed to timely serve the complaint.**

Plaintiffs filed their Complaint on July 29, 2021 (Doc. 1) and were required to effectuate service by October 27, 2021. *See* Fed. R. Civ. P. 4(m). Plaintiffs did not serve any of the original Defendants by October 27 and, in fact, did not even *attempt* to serve any Defendant until October 29. (Doc. 20.) Even if service on October 29

had been proper (it was not), that service was not timely, so this action must be dismissed as to all Defendants. Importantly, service of an amended complaint does not restart the 90-day clock. "The [90]-day time limit imposed by Rule 4(m) expires [90] days after the *first* complaint in which the defendant is named" and service of an amended complaint does nothing to cure a failure to comply with Rule 4(m). *Rudolph v. UT Starcom, Inc.*, No. C 07–04578 SI, 2009 WL 248370 at *2 (N.D. Ca. Feb. 2, 2009); *Bolden*, 441 F.3d at 1148 ("[T]he 120-day period provided by [FRCP] 4(m) is not restarted by the filing of an amended complaint[.]").

If a plaintiff fails to serve the Complaint within the 90-day period, they *must* show good cause to avoid dismissal. *See* Fed. R. Civ. P. 4(m). "The burden of establishing good cause is on the plaintiff [and this] 'good cause' exception to Rule 4(m) applies 'only in limited circumstances' and is not satisfied by 'inadvertent error or ignorance of the governing rules.'" *Menna v. Radmanesh*, No. CV 13–501–R (MAN), 2013 WL 3071054, at *1 (C.D. Cal. June 18, 2013) (internal citation omitted) (dismissing action without prejudice for failure to comply with Rule 4(m)); *see also A.S.M. V. v. Cty. of Los Angeles*, No. 19-CV-06158, 2:19-cv-06158-SB-PLA, at *2 (C.D. Cal. Jan. 11, 2021) (same). Showing good cause to avoid dismissal under Rule 4(m) is frequently described as "difficult." *In re Waldner*, 183 B.R. 879, 882 (B.A.P. 9th Cir. 1995). In addition to having to establish good cause, Plaintiffs must also demonstrate excusable neglect for their failure to seek an enlargement of time to serve the Complaint *before* the expiration of the allotted 90 days. Fed. R. Civ. P. 6(b)(1)(B).

Plaintiffs cannot demonstrate either good cause or excusable neglect here. While one of Plaintiffs' attorneys filed a Declaration citing to his unavailability for portions of the 90-day period, the Declaration does not explain why or how others at Mr. Saltz's firm, including his co-counsel (who appeared in this action on July 30, 2021), were prevented from making service. Plaintiffs' response to the show cause

order is moreover premised on inaccurate proofs of service and should not be deemed to constitute good cause under Rule 4(m) or an "appropriate response" to the show cause order itself. Dismissal is the appropriate remedy.

**C. Plaintiffs' defamation claims (Counts 2-4) should be dismissed with prejudice because they are time-barred.**

Defamation claims are subject to a one-year statute of limitations. *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 850 (N.D. Cal. 2020). The conduct in this lawsuit alleged to be defamatory took place between February 5 and 13, 2020. By function of California State Judicial Council ER-9, the statute of limitations with respect to each defamation claim was extended until August 13, 2021. Any attempt to refile these claims after that date would be futile.

**III. Count 1 (Breach of Contract) fails to state a claim.**

In Count 1, the Softball Players allege that CLU violated certain provisions of its 2019-2020 Student Handbook and the Standards of Conduct incorporated therein (the "Handbook") relating to harassment, bullying, and hate crimes/incidents. (Am. Compl. ¶¶ 137-53.) Specifically, the Softball Players allege that CLU violated the Handbook by "[1] engaging in harassing behavior . . . and [2] otherwise letting others violate the Handbook with regard to conduct directed at the Softball Team," (Am. Compl. ¶ 147; *see also* Am. Compl. ¶¶ 142, 144; Ex. E to Platt Decl. at 45-48.[7])

To state a claim for breach of contract, the Softball Players must show: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). The Softball Players have failed to plausibly allege both the existence of a contract and any breach, with each failure

---

[7] Plaintiffs frequently reference and incorporate the 2019-2020 Student Handbook in the Amended Complaint (Am. Compl. ¶¶ 138–50), allowing the Court to consider the Handbook "as if it were part of the complaint." *Ritchie*, 342 F.3d at 908.

independently fatal to their claim. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610-11 (9th Cir. 2020) (affirming dismissal of breach-of-contract claim where plaintiff failed to adequately allege all elements of claim).

**A. Plaintiffs have failed to allege the existence of a contract.**

The Softball Players allege that the Handbook evidences the "contract [that] was initially formed when [] Defendants accepted the students and when the students submitted their initial payment to attend CLU." (Am. Compl. ¶ 139.) Contrary to this assertion, the Handbook does not constitute a contract because it makes no specific promise and contains no language signaling that it is to be interpreted as a contract.

Although courts have characterized the relationship between a student and a private university as "contractual in nature," *Banga v. Kanios*, No. 16-cv-04270-RS, 2017 WL 6731639, at *6 (N.D. Cal. Dec. 29, 2017), "it is well settled that contract law is not always rigidly applied" to the analysis. *Kashmiri v. Regents of Univ. of California,* 67 Cal. Rptr. 3d 635, 646 (Cal. App. 4th 2007), *as modified* (Nov. 15, 2007), *as modified* (Nov. 28, 2007). In particular, while courts often apply a "contract theory" with respect to a "***specific*** promise" made – such as promises about fees to be charged or educational services to be provided by the school – courts take a more "flexible approach" (i.e. opt to *not* apply rigid contract law) with respect to a university's academic or disciplinary decisions, *Banga*, 2017 WL 6731639, at *6, and "have been reluctant to apply contract law to *general* promises or expectations." *Kashmiri*, 67 Cal. Rptr. 3d at 826 (emphasis added).

When assessing whether a university handbook constitutes a contract triggering the application of rigid contract law, courts look for *specific* language that clearly indicates the handbook's status as a contract. *See, e.g., Banga* 2016 WL 7230870, at *5 (concluding that student handbook provision promising refund in the event a student withdraws from class amounted to "specific promise" that "can be enforced with contract principles"); *Dauven v. George Fox Univ.*, No. CV. 09-305-

PK, 2010 WL 6089077, at *17 (D. Or. Dec. 3, 2010) (finding a student handbook was an enforceable contract because it included an "Agreement Contract" requiring students to read, sign, and abide by the guidelines contained therein).

Here, the Softball Players contend that the following language in the CLU Handbook gives rise to an enforceable contract:

> Students accept the following policies and agree to be bound thereby upon admission, readmission, or continued enrollment with California Lutheran University. Any student is bound to follow all of the University's policies and procedures and is subject to the jurisdiction of the University with regard to violations of such policies and procedures. California Lutheran University Students who fail to read this handbook will not be excused from compliance with policies and procedures.

(Am. Compl. ¶ 140.) The quoted provision does not make any specific promise to CLU students akin to a university's promise to charge only certain fees or to offer certain educational opportunities nor does it impose any obligations on CLU; instead, it sets forth the general expectations that CLU has of its students. Likewise, nothing in this provision, or in the Handbook as a whole, includes the type of specific language necessary to signal an intention that the document be read as an enforceable contract between CLU and its students. *See Abbas v. Woleben*, No. 3:13CV147, 2013 WL 5295672, at *4 (E.D. Va. Sept. 19, 2013) (declining to recognize student handbook as enforceable contract where its terms do not bind university).[8]

The Softball Players also assert that CLU violated the harassment and bullying provision of the Handbook by "engaging in harassing behavior" and "otherwise

---

[8] California courts have observed that "[t]here are very few California cases addressing the [nature of the] relationship between students and educational institutions," and, therefore, cases from foreign jurisdictions are "instructive." *Kashmiri*, 156 Cal. App. 4th at 824 n.9.

letting others violate the Handbook with regard to conduct directed at the Softball Team." (Am. Compl. ¶ 147.) However, even if CLU did engage, or permit others to engage, in this conduct, doing so would not have constituted a breach of contract. The Handbook makes no promise that students will not experience harassment or bullying while enrolled at CLU, but rather simply provides that "[a]ny member of the University community may report student misconduct," and that the University "may conduct an investigation to determine if the [reported] allegations have merit." (Ex. E to Platt Decl. 101) Neither the prefatory language nor the conduct provisions of the Handbook amount to the type of "specific promises" to students that courts have found legally enforceable. Because the Softball Players failed to identify any such "specific promise," Count I fails.

**B. Even if the Softball Players had sufficiently alleged the existence of a contract, they have failed to allege any breach.**

The Softball Players argue that CLU breached the Handbook in two ways: (1) by engaging in harassing behaviors and (2) "letting others violate the Handbook" and failing to timely investigate the alleged harassing behaviors. (Am. Compl. ¶¶ 147, 148, 150.) Neither allegation amounts to a breach.

The Handbook defines "Harassment" as certain untoward behavior that is *based on the victim's membership in an enumerated protected class*. (Ex. E to Platt Decl. at 45-47.) The Softball Players seem to argue, based on their selective quotation of the Handbook (Am. Compl. ¶ 142), that CLU engaged in harassment "based on [the Softball Players'] sex, race, [and/or] color," but the allegations in the Amended Complaint do not square with such a conclusion. For one thing, the Softball Players do not identify the "egregiously wrongful actions" or "extremely reckless and grossly negligent conduct" that allegedly comprise the harassment; instead, they refer only to unspecified "conduct set forth above." (Am. Compl. ¶¶ 146, 148) Further, if the "conduct set forth above" refers to CLU's measured and rational response to the

racially-charged team event (*e.g.*, Kimball's transmission of the February 5 and 10 Emails and facilitation of the February 13 Community Forum), the Amended Complaint nowhere alleges that CLU sent such emails or held such forum *because of* the sex, race, or color of any of the Softball Players. Having failed to connect the "conduct set forth above" to the sex, race, or color of any of the Softball Players, the Softball Players fail to plausibly allege that CLU "breached" the Handbook.

Plaintiffs also argue that CLU "allowed unjustified violations of the Handbook" by "letting others" engage in harassment, hate crimes, or cyberbullying, and failing to "timely investigate complaints [of the same], as required by the Handbook." (Am. Compl. ¶ 150.) Plaintiffs, however, fail to identify *any* provision of the Handbook that imposes an obligation on CLU to affirmatively prevent, *before it occurs*, harassment (because there is no such provision).

The Handbook moreover provides that, if and when harassment is reported, CLU "*may* conduct an investigation to determine if the allegations have merit" or if further action should be taken. (Ex. E to Platt Declaration at 101 (emphasis added).) The fact that CLU has discretion to investigate complaints of harassment – or not – necessarily means that no breach occurs if CLU does not "timely investigate complaints," even if such a thing were true. (Am. Compl. ¶ 150.); *see also Dehen v. Does 1-100*, No. 17cv198-LAB (WCG), 2018 WL 4502336 at *1, 4 (C.D. Cal. Sept. 19, 2018) (holding permissive "may" in handbook precluded breach). In any event, CLU *did* elect to open an investigation into the Softball Players' complaints of harassment by Kimball and fellow students in March 2020. (Am. Compl. ¶ 123.) The Softball Players' allegation that CLU breached the Handbook by failing to "timely investigate complaints" is accordingly not plausible (because it is not rooted in the Handbook's unambiguous terms) *or* credible (because Plaintiffs concede there was an investigation). (Am. Compl. ¶ 123.)

Finally, the Softball Players assert that CLU breached the Handbook by "*de*

*facto* punishing DOES 1-24 without affording the right to due process, as required by the Handbook." (Am. Compl. ¶ 150.) The Amended Complaint does not explain the nature of the purported "*de facto* punish[ment]" and does not identify the provision of the Handbook that affords the students "the right to due process." Given the indecipherable nature of this allegation, it is insufficient to show a breach.

Finally, to the extent this claim is asserted against "Roes 1-200," Plaintiffs have not even alleged the existence of any contract with anyone other than CLU. As a result, Count 1 must be dismissed as to all Defendants.

## IV. Even if they were not time-barred, the Softball Players' defamation claims (Count 2 - Slander and Count 3 - Libel) fail because the common interest privilege immunizes Defendants from the claims and because the Softball Players have failed to state a claim.

Defamation is an injury to one's reputation by either a writing (libel) or a spoken communication (slander). *Shively v. Bozanich*, 80 P.3d 676, 682 (Cal. 2003); *see also* Cal. Civ. Code §§ 45-46. Either way, defamation involves (1) a publication (2) that is false, (3) defamatory, and (4) unprivileged, (5) that has a natural tendency to injure or that causes special damages, and (6) that "specifically refer[s] to, or [is] of and concerning, the plaintiff." *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007).

The Softball Players premise their slander claim on alleged "false oral statements" made during the February 8 Meeting and the February 13 Community Forum (Am. Compl. ¶¶ 154-57.), and their libel claim on the February 5 Email, the February 10 Email, and the "various statements made to news media sources." (Am. Compl. ¶ 157). As explained below, the common interest privilege requires dismissal of both the libel and slander claims and, further, the Softball Players libel claim must be dismissed because the February 5 Email and the February 10 Email were not "of and concerning" the Softball Players.

### A. The alleged communications were privileged.

Defamation is a false and *unprivileged* publication. Civil Code §§ 45-46. The common interest privilege works to bar defamation claims by "extend[ing] a conditional privilege against defamatory statements made without malice on subjects of mutual interest." *Noel v. River Hills Wilsons, Inc.*, 7 Cal. Rptr. 3d 216, 220 (Cal. App. 4th 2003); Civil Code § 47. "If the privilege arises, it is a complete defense." *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 412 n.7(Cal. 1989). Whether a communication is privileged is a question of law. *Arnaud v. Little Caesar Enters., Inc.*, No. ED CV 18-01316-DOC (KKx), 2018 WL 4772274, at *4 (C.D. Cal. Oct. 1, 2018). The privilege applies where the communication, i.e. the publication, is not to the "world at large" but is instead confined to those that had a "concern for the subject matter of the communication." *See Inst. of Athletic Motivation v. Univ. of Illinois*, 170 Cal. Rptr. 411, 418 (Cal. App. 3d 1980) (applying privilege to professor's four-page letter critical of plaintiff-sports company sent to athletic organizations and magazines); *Brewer v. Second Baptist Church*, 197 P.2d 713 (Cal. 1948) (applying privilege to church's publication of information about church members' misconduct to church members); *Martin v. Kearney*, 124 Cal. Rptr. 281 (Cal. App. 3d 1975) (applying privilege to letters "defaming" a teacher sent to teacher's employer).

Significantly, California courts routinely apply the common interest privilege to cases involving the spread of knowledge of potential harassment and discrimination. *See, e.g.*, *Bierbower v. FHP, Inc.*, 82 Cal. Rptr. 2d 393, 394 (Cal. App. 4th 1999) ("employers and employees both have a common interest in preventing and correcting sexual harassment."); *McGrory v. Applied Signal Tech., Inc.*, 152 Cal. Rptr. 3d 154, 176 (Cal. App. 4th 2013) (applying privilege to communication by employer to employees regarding investigation into plaintiff-former-employee's alleged sexual orientation discrimination against a subordinate).

Plaintiffs' assertion that "the law is well established in California that the

common interest privilege (Civil Code § 47(c)) does not apply whenever a statement is given to the media" (Am. Compl. ¶ 163), is simply untrue. Each of the cases that Plaintiffs cite for this supposed "well established" principle merely stands for the fundamental, and uncontroversial, proposition that the common interest privilege does not apply where the subject statements were made with malice, improper motive, or with knowledge of their falsity. *See, e.g.*, *Hawran v. Hixson*, 147 Cal. Rptr. 3d 88, 115, 123 n. 8 (Cal. App. 4th 2012) (privilege did not apply where defendant issued a malicious press release). In fact, California courts have repeatedly applied the common interest privilege where the at-issue statements were made to media outlets. *See, e.g.*, *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1079 (N.D. Cal. 2012) (applying common interest privilege where professor's allegedly defamatory statements appeared in a journal article and were also made during speeches at universities); *Inst. of Athletic Motivation*, 170 Cal. Rptr. at 418 (applying privilege where professor sent allegedly defamatory statements to several magazines).

Here, the University and the individual defendants had an interest in discussing racially-charged events on campus, including the event central to this lawsuit. During the 2019-2020 academic year, CLU was steeped in a discussion of racial issues. (Am. Compl. ¶¶ 30-34, 39; Doc. 1-1 at 2.) The entire CLU community – students, professors, administrators, and staff alike – were focused on racial diversity, equity, and inclusion at CLU. (*Id*. at ¶¶ 31, 33, 35-36.) It is undisputed that racism on campus is "a long-standing issue," prior racially-charged incidents had occurred on campus, and the University has been engaging in efforts to instill institution-wide equity and inclusion. (*Id*. at ¶¶ 31-37, 40.)

In parallel with the goal of combating racism on campus and continuing the ongoing discussion of equity and inclusion, Kimball sent the February 5 and February 10 Emails to discuss two recent racially-charged incidents at CLU. (Am. Compl. ¶¶ 75, 96.) Also in line with CLU's interest in eradicating racism on campus, Kimball

hosted the February 8 Meeting for the Softball Players and their parents to facilitate a discussion about the racially-charged team event (Am. Compl. ¶¶ 86, 89) and Doherty and Kimball hosted the February 10 Community Forum to hear concerns from the campus community.[9] (Am. Compl. ¶ 114.)

Given the CLU community's focus on addressing racism and the unfortunate history of racially-charged incidents on campus, and CLU's broader efforts to improve diversity and equity on campus, the allegedly "defamatory" statements at issue in this lawsuit were "communications among interested persons" subject to the common interest privilege as a matter of law.

**B. The February 5 and 10 Emails Were Not "Of and Concerning" the Softball Players.**

A statement cannot be defamatory if it does not ***specifically refer to***, or is not of and concerning, the plaintiff. *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959-60 (9th Cir. 2008) ("If there is no ***express reference*** to the plaintiff in a defamatory statement, the claim will fail unless the statement refers *to the plaintiff* by reasonable implication."). When a statement is ambiguous as to its target, it must be capable of being understood to refer to the plaintiff *and* it must be shown to actually have been so understood by third parties. *See id*. Moreover, when a statement refers to a group, "plaintiffs face a more difficult and sometimes insurmountable task" in showing that the statements were "of and concerning them." *Barger v. Playboy Enterprises., Inc.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984).

---

[9] That Kimball allegedly stated that he "believes in his heart that the Team did not intend to do anything racist" is not, as Plaintiffs' argue, evidence of his lack of belief in the truth of February 5 Email, February 10 Email, or statements made at the February 8 Meeting (none of which references intent at all). (Am. Compl. ¶ 173.) As Kimball himself clarified, "there is a distinction between intent and impact and that some of the images play to things that are hurtful." (Am. Compl. ¶ 87.) That Kimball allegedly did not believe the Softball Players *intended* to be racist does not mean he did not believe that the conduct the team lip-sync event was racist, or at least perceived as such.

Here, the Softball Players baldly allege that those who read the February 5 and February 10 Emails understood that they were referring to the Softball Players. (Am. Compl. ¶¶ 182-185.) These allegations are not only impermissibly conclusory, but are belied by the source documents. The Softball Players, a large group of twenty-four individuals, cannot point to *any* reference in either the February 5 or February 10 email that mentions them ***specifically***, ***personally***, or ***expressly***. In this way, the February 5 and February 10 Emails are not "of and concerning" the Softball Players and Count 3 so must be dismissed as to all Defendants.

**V. Plaintiffs' false light claim (Count 4) must be dismissed on the same grounds as their defamation claims.**

When a false light claim is coupled with a defamation claim the false light claim is superfluous. *Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 823 n. 13(Cal. App. 4th 1999). Plaintiffs' false light claim provides no more or different factual detail than provided in relation to the defamation claims. *See* Am. Compl. ¶¶ 204-10.

**VI. Plaintiffs' intentional infliction of distress claim (Count 5) fails because Plaintiffs have not sufficiently pleaded "outrageous conduct" or severe emotional suffering, and the common-interest privilege immunizes Defendants.**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must adequately plead: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (applying California law). Here, the Softball Players have not, and cannot, show that Defendants engaged in "outrageous conduct" or that any Plaintiffs experienced "severe emotional suffering" as a result.

### A. The Softball Players fail to allege "outrageous conduct" or severe emotional suffering.

To support an IIED claim, a plaintiff must allege that the defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bassam v. Bank of Am.*, No. CV 15–00587 MMM (FFMx), 2015 WL 4127745, at *10 (C.D. Cal. Jul. 8, 2015) (quotation omitted). "Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1273 (E.D. Cal. 2012) (applying California law); *see also Golden v. Dungan*, 20 Cal. App. 3d 295, 304 (1971) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). This is a notably "high bar," *Haley v. Cohen & Steers Cap. Mgmt., Inc.*, 871 F. Supp. 2d 944, 960 (N.D. Cal. 2012), one that the Softball Players have not cleared.

Referring to the February 5 Kimball Email, February 8 Meeting, February 10 Email, and the February 13 Community Forum, the Softball Players allege that Defendants engaged in conduct "outside the parameters of the normal educational experience and constitutes outrageous conduct." (Am. Compl. ¶ 212; 214.) Contrary to the Softball Players' conclusory suggestion, these emails and the forum do not rise to the level of conduct reasonably considered to be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bassam*, 2015 WL 4127745, at *10. Sending emails to a college community addressing a racially-charged event (without even identifying the Softball Players); addressing

that racially-charged event with the responsible individuals, the Softball Players; and holding an open forum on race and equity are simply not the types of "outrageous" conduct intended to fall within the ambit of an IIED claim. *See, e.g.*, *Moore v. Crescent Jewelers*, No. C-94-423 JSB, 1997 WL 383297, at *4 (N.D. Cal. June 26, 1997) (holding "occasional acts that are definitely inconsiderate and unkind" are not enough to amount to "outrageous" and name-calling is insufficient for IIED claim).

Moreover, "if the defendant had another stated purpose for his or her behavior, the other, lawful purpose may preclude a finding of intent to inflict distress." *Zochlinski v. Regents of the Univ. of California*, No. 2:10-cv-1824-KJM-KJN PS, 2015 WL 6744654, at *14 (E.D. Cal. Nov. 4, 2015) (citing *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)). Here, Defendants sent those emails, hosted the forum, and met with the Softball Players for the lawful purpose of addressing issues of racism.

The Softball Players' IIED claim also fails because no Player has plausibly alleged the essential element of severe emotional suffering. "Severe emotional distress" is a "high bar" that requires "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes v. Pair*, 209 P.3d 963, 977 (Cal. 2009). The Softball Players' allegations are deficient for two reasons: (1) their broad generalizations of emotional distress are insufficient to state a claim; and (2) they have failed to *individually* assert the specific types of emotional distress they each allegedly suffered.

The Amended Complaint includes a generalized list of "emotional distress" – including "anxiety", "lonely[ness]", a feeling of being "targeted", "sick to [her] stomach", and "cry[ing]" – allegedly suffered by the Softball Players. (Am. Compl. ¶ 127, n. 26.) These ailments are not sufficient to state a claim for IIED. *See Wong v. Jing*, 117 Cal. Rptr. 3d 747, 767 (Cal. App. 4th 2010) (stating that "discomfort, worry, anxiety, upset stomach, concern, and agitation" do not constitute severe

enough emotional distress for an IIED claim). More precisely, it is not enough to make broad allegations of pain and suffering without alleging "facts to support such symptoms or conditions." *See Schultz v. Stericycle, Inc.*, No. CV F 13–1244 LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013) (dismissing IIED claim because complaint lacked facts to support alleged emotional distress). This "kitchen-sink" approach to listing symptoms cannot satisfy pleading requirements. *See Singh v. Litton Loan Servicing*, No. CV F 10–1355 LJO GSA, 2011 WL 1627315, at *5 (E.D. Cal. Apr. 28, 2011) ("[A] pleading may not simply allege a wrong has been committed and demand relief.").

The Softball Players have likewise not identified who suffered what. In a case involving multiple plaintiffs, *each individual* must sufficiently allege injuries. *See Whitlock v. Pepsi Americas*, 681 F. Supp. 2d 1116, 1121 (N.D. Cal. 2010) (citing *Potter v. Firestone Tire & Rubber Company*, 863 P.2d 795 (Cal. 1993) (holding that allegations must focus on each particular plaintiff)). Plaintiffs collectively assert that "a *majority* of Plaintiffs . . . vomited, cried uncontrollably, lost sleep, lost weight, have been unable to focus on their studies, and have been made to feel isolated," (Am. Compl. ¶ 128 (emphasis added.)) and that "*most* of the Softball Players have stated that they are now on mediation for their depression, anxiety, and PTSD, and that *some* otherwise submitted themselves to the care of medical professions[.]" (*id.* (emphasis added.)). The Amended Complaint also provides a bulleted list of alleged conditions, but no clarity around who suffered from those conditions. (Am. Compl. ¶ 127 n.26.) Because no Softball Player has sufficiently pleaded "severe emotional suffering," all of their IIED claims must be dismissed.

### B. The common-interest privilege immunizes Defendants.

Even if the Softball Players had managed to sufficiently plead all of the elements of an IIED claim, Count 5 would still be subject to dismissal because Defendants are immunized from this claim under the common-interest privilege. Cal.

Civil Code § 47(a); *see also Griffin v. Burke v. Trevor Basil, et al.*, No. 8:20-cv-00635-JVS-JDEx, 2021 WL 4168380, at *7-8 (C.D. Cal. June 21, 2021) ("This [common-interest] privilege is a defense to other torts as well as defamation, including, . . . intentional infliction of emotional distress."). The common-interest privilege applies in the same manner to the IIED claim as the defamation claim. *See* Section IV(A) in the argument section, above.

## VII. Counts 6 and 7 (Negligence/Negligent Infliction of Emotional Distress) fail because Plaintiffs fail to identify any cognizable duty of care or that any such duty was breached.

A plaintiff asserting a negligence claim must sufficiently plead: (1) a legal duty; (2) breach of duty; (3) proximate causation; and (4) and damages. *Paz v. State of California*, 994 P.2d 975, 980 (Cal. 2000); *see, e.g.*, *Haynes v. Bank of Am.*, No. CV 09–3579–VBF(SSx), 2009 WL 10680861, at *4 (C.D. Cal. Sept. 9, 2009) (dismissing plaintiff's negligence claim where plaintiff fails to specifically allege what duty defendant breached). The Softball Players have failed to plead the existence of a legally cognizable duty and, while their claim fails on that basis alone, it must also be dismissed because they have not pleaded a breach of any specific duty.

### A. The Softball Players fail to identify any duty of care.

The threshold element of a negligence claim is the existence of a duty. *Ernest v. Univ. of Phoenix*, No. 08-CV-2363-H (POR), 2010 WL 11508435, at *7 (S.D. Cal. July 27, 2010). The Softball Players allege that Defendants owe them "various duties of care to act as a normal and prudent university, and to otherwise not engage in conduct that they know, or with reasonable care should have known, will cause their students undue harm and severe emotional distress." (Am. Compl. ¶ 228.) The Softball Players do not articulate any basis in the law for these invented duties.

In *Rogers v. W. Univ. Health Sciences*, this Court explained that "no court has found that a university has a general duty of care to avoid emotionally harming

students by depriving students of promised educational opportunities, No. CV 16-07681-MWF (AGRx), 2017 WL 11567381 *4 (C.D. Cal. Jan. 17, 2017) (dismissing student's negligence claim). The Softball Players' bare conclusion that CLU had a duty is insufficient. *See Ernest*, 2010 WL 11508435, at *7 (dismissing student's negligence claim against university for failure to adequately plead a duty).

**B. Plaintiffs fail to plead any alleged breach of a duty of care.**

In both their negligence and negligent infliction of emotional distress counts, the Softball Players refer to the at-issue conduct as "the conduct of the named Defendants . . . alleged in the preceding paragraphs" or "the aforementioned conduct," or, worse yet, just "the conduct." (*See, e.g.*, Am. Compl. ¶¶ 220, 222, 227, 229.) These conclusory statements are insufficient to plead a breach of duty. *See, e.g.*, *Havensight Cap. LLC v. Nike, Inc.*, No. CV 14–7153–R, 2014 WL 12613382, at *2 (C.D. Cal. Nov. 19, 2014) (finding "conclusory statements" of a breach "vague and ambiguous" and "insufficient to plead a plausible negligence claim."). While the Softball Players allege that Defendants sent the February 5 Email and February 10 Email to the CLU community, they do not bother to explain *how* such conduct might have constituted a breach of any duty, which is fatal to their claim.

Finally, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery [on an NIED claim] is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Potter*, 863 P.2d at 808. The Softball Players' do not allege that Defendants assumed a specific duty for the Softball Players' "emotional condition." *See* Am. Compl. ¶ 220 (premising NIED claim on "conduct . . . outside the parameters of the normal educational experience."). As a result, the NIED claim is tied to the failure of the negligence claim.

**VIII. Coach Day's Retaliation Claim (Count 9) must be dismissed for**

**failure to state a claim because she alleges no protected activity.**

Coach Day contends that Defendants CLU, Kimball, Grennan, and McHugh retaliated against her in violation of California Labor Code §1102.5 and California Government Code § 12940(h) (the Fair Employment and Housing Act or the "FEHA") because she reported potential NCAA violations and questioned CLU's Title IX compliance. (Am. Compl. ¶¶ 241-262.) In relevant part, Section 1102.5 prohibits employers from retaliating against an employee because the employer believes that the employee disclosed or may disclose a violation of a local, state, or federal rule or regulation. Section 1102.5(b).[10] Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To establish a *prima facie* claim under both Section 1102.5(b) and the FEHA, a plaintiff must allege that "(1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1096, 1100 (S.D. Cal. 2020).

Coach Day's claim fails for two reasons. First, Section 1102.5 defines protected activity as disclosure of a "violation [of] or [] noncompliance with a ***local, state, or federal rule or regulation***" to one of the persons or entities identified in the statute. *See* Cal. Lab. Code § 1102.5(b) (emphasis added). The NCAA – a private, not-for-profit, nongovernmental entity – does not make such rules. *See, e.g., Lenk v. Monolithic Power Sys., Inc.*, No.15-cv-01148-NC, 2015 WL 7429498, at *8 (N.D. Cal. Nov. 23, 2015) (dismissing Section 1102.5 claim because disclosure of an "alleged violation of an industry committee's standards" was "not a violation of state

[10] Coach Day has not alleged that she refused to participate in an activity that would result in a violation of state or federal law and thus has not attempted to state a claim under Section 1102.5(c) of the Code.

or federal law"); *Wittenbrock v. Sunovion Pharms. Inc.*, No. EDCV 19-342 JVS (SHKx), 2019 WL 4453719, at *5 (C.D. Cal. May 20, 2019) (granting motion to dismiss Section 1102.5 claim because PhRMA Code and Office of Inspector General guidance was not "local, state, or federal statute, rule or regulation."). Nor are NCAA violations a "practice forbidden under the FEHA." *See Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*, 966 F. Supp. 2d 971, 988 (N.D. Cal. 2013).

Second, there is no causal nexus between Coach' Day's report under Title IX and CLU's response to the racially-charged lip-syncing event. A plaintiff bringing a Section 1102 claim "must plead a causal link between her disclosure of what she had reasonable cause to believe constituted Defendants' illegal conduct, and Defendants' adverse actions." *Dowell v. Contra Costa Cty.*, 928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013). "Without an allegation that Defendants were aware that Plaintiff engaged in protected activity, there can be no basis to find a causal link between the protected activity and adverse action." *Id*. Identically to a Section 1102 claim, a claim of retaliation under the FEHA requires that "a causal link existed between the protected activity and the employer's action" which, in turn, requires a plaintiff to show that "the employer had knowledge of the employee's [protected status or activity] when the adverse employment decision was made." *Scotch v. Art Inst. of California*, 93 Cal. Rptr. 3d 338, 356 (Cal. App. 4th 2009).

The Amended Complaint alleges that CLU retaliated against Coach Day for "questioning the potentially unlawful Title IX practices at CLU[.]" (Am. Compl. ¶ 243.) Coach Day, according to the Amended Complaint, reported potential Title IX violations when she "met with Kuntz to discuss the needs of the CLU Softball program[.]" Coach Day does not identify who Kuntz is, or allege that she ever told anyone else about her Title IX concerns nor that she, or Kuntz, or anyone else, reported her Title IX concerns to McHugh, Kimball, Grennan, or anyone else at CLU. This means, of course, that Coach Day has not alleged that any Defendant subjected

her to any adverse action because she raised Title IX concerns.

Coach Day alleges that some Defendants "made misleading and false statements to the news media," which was allegedly done weeks after Coach Day spoke to Kuntz (Am. Compl. ¶ 250), but because she never alleges that she reported her Title IX concerns to *any* Defendant, these allegation do nothing to create the required nexus. *See Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652, 666 (Cal App. 4th 2000) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Gavriliuc v. TEKsystems, Inc.*, No. 8:20-cv-02164-JLS-DFM, 2021 WL 3568252, at *5 (C.D. Cal. Apr. 14, 2021) (granting motion to dismiss for failure to allege employer knew of plaintiff's alleged "protected activity"). Simply alleging temporal proximity, without an allegation of direct knowledge of Coach Day's Title IX concerns by Defendants, is not enough. *See Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) ("A causal link requires direct evidence of causation or a showing ***that the defendant knew of the protected activity*** ***<u>and</u>*** that the temporal proximity between the protected activity and the adverse action was 'very close.'") (emphasis added).

## IX. The Softball Coaches' hostile work environment claim (Count 10) must be dismissed for failure to state a claim.

To state a *prima facie* case of a hostile work environment, a plaintiff must allege that "(1) he or she was a member of a protected class; (2) he or she was subjected to unwelcome protected class harassment; (3) the harassment was based on protected class; (4) the harassment unreasonably interfered with his or her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the defendant is liable for the harassment." *Watkins v. City of Moreno Valley*, No. ED CV 17-1424-DMG (KKx), 2018 WL 6265100 *6 (C.D. Cal. Feb. 13, 2018) (cleaned up).

Count 10 fails in the first instance because it does not state the section of the

FEHA it relies on. *See Thomas v. Vulcan Materials Co*., No. 19-CV-06042-KAW, 2019 WL 6700107, at *4 (N.D. Cal. Dec. 9, 2019) (dismissing FEHA claim because "it is not clear on what facts the FEHA claim is based, or which specific sections of FEHA Plaintiff asserts were violated."). The Coaches also fail to allege that they belong to a protected class or that the Defendants engaged in any violative conduct *because* of the Coaches' membership in a protected class.

Instead, the Softball Coaches fall short by alleging only that Defendants' "conduct was unwelcome and was directed towards Coach Day, Young, and Gluckman ***based on their status as employees***, and specifically as coaches of the CLU Softball Players." (Am. Compl. ¶ 264 (emphasis added).) *See, e.g.*, *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1281 (E.D. Cal. 2012) (granting motion to dismiss hostile work environment claim because plaintiff failed to connect harassment to her alleged protected status "as required by section 12940(j)(1).").

The Softball Coaches' claims independently fail because they do not sufficiently, or specifically, allege the conduct upon which the claim is premised, referring only to "the above conduct" or the "aforementioned conduct". (Am. Compl. ¶¶ 264, 266.) Without clearly alleged facts, Defendants are not fairly on notice of the conduct that culminated in or contributed to an alleged hostile work environment and the FEHA claim must be dismissed. *See Thomas*, 2019 WL 6700107, at *4. For these reasons, the Softball Coaches' hostile work environment claim against all named Defendants must be dismissed.

**X. Coach Young's and Coach Gluckman's constructive termination claim (Count 11) must be dismissed for failure to state a claim.**

Coach Young and Coach Gluckman also bring a constructive termination claim in Count 11 against Defendant CLU. It is not clear whether Coach Young and Coach Gluckman intended to bring this claim under the FEHA or California Labor

Code. However, they fail to sufficiently plead claims under both statutes.

Like Coach Day, Coaches Young and Gluckman do not identify the specific section of the statute on which they base their claim, so they have failed to state claims. *See Thomas*, 2019 WL 6700107, at *4. The FEHA claim in Count 11 is also insufficiently pleaded because Plaintiffs do not allege facts sufficient to determine both the protected class and alleged violative conduct at issue, *id.*, or a causal link between the two. *See McKenna*, 894 F. Supp. 2d at 1281.

First, Coach Gluckman does not allege that he is a member of any statute-defined protected class; his claim fails there. While Coach Young avers that she is African-American, she also admits that "CLU did not know" her race when it took the actions about which she complaints. (Am. Compl. ¶ 274.) Coach Young therefore failed to allege a causal link between her protected status and the alleged constructive termination and her claim must be dismissed on that basis.

Moreover, as detailed in Section VIII above, to bring a claim under Section 1102.5 of the California Labor Code, a plaintiff must allege that they engaged in a protected activity, that they were subjected to adverse employment action, and that there was a causal connection between the two. *Edgerly v. City of Oakland,* 150 Cal. Rptr. 3d 425, 431 (Cal. App. 4th 2012*), as modified* (Dec. 13, 2012); *Lenk*, No. 15-CV-01148-NC, 2015 WL 7429498, at *8. Coaches Young and Gluckman allege that their "[constructive] termination was substantially motivated by both protected complaints and refusal to accept harassing treatment." (Am. Compl. ¶ 273.) However, not only does Count 11 not detail what "protected complaint" Coaches Young and Gluckman made, there is not a single allegation *anywhere* in the Amended Complaint that they made *any* complaint to or about CLU. Likewise, while the Amended Complaint avers that Section 1102.5 requires employers to refrain from retaliating against employees who refuse to participate in conduct that they reasonably believe violates state or federal law (*Id.* ¶ 272), Coaches Young and

Gluckman do not point to any such violations (real or perceived) in which *they* refused to participate. As a result of these deficiencies, the claim for constructive termination under the California Labor Code must be dismissed.

**XI. Coach Day's PAGA Claim (Count 12) fails to provide sufficient notice of the employees on whose behalf the claim is being asserted.**

In Count 12, Coach Day asserts a Private Attorney General Action ("PAGA") against CLU for purported violations of certain recordkeeping and payroll provisions of the California Labor Code. (Am. Compl. ¶¶ 278-83.) One of the primary purposes of PAGA is to support "understaffed state enforcement agencies" by permitting private plaintiffs aggrieved of labor code violations to bring representative actions that would otherwise belong to the state. *Khan v. Dunn-Edwards Corp.*, 19 Cal. App. 5th 804, 808 (Cal. App. 2018). A PAGA claim is proper only if the plaintiff proceeds "on behalf of himself or herself <u>*and*</u> other current and former employees." *Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129, 149(Cal. 2014) (emphasis added).

Before initiating a PAGA action, a plaintiff *must* comply with the administrative procedures set forth in Cal. Labor Code § 2699.3. *See Khan*, 19 Cal. App. 5th at 808. Among those pre-filing procedures is the provision of notice to the Labor and Workforce Development Agency ("the LWDA") that specifies (1) the alleged violations and (2) *on whose behalf* the aggrieved employee seeks to bring the PAGA claim. *Id.* The notice requirement "afford[s] . . . the [LWDA] the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations." *Id.* at 809. The failure to state with particularity on whose behalf an employee proposes to bring a PAGA claim is a defect that *requires* dismissal. *Id.* at 810. While a plaintiff does not necessarily need to provide the names of all other employees, they must at least allege sufficient detail to permit the employer to identify those allegedly aggrieved. *See Elias v. Spotify USA Inc., et al.*,

No. CV 20-1854-JFW (ASx), 2020 WL 11626649, at *4-5 (C.D. Cal. Dec. 16, 2020) (observing that, though plaintiff's LWDA notice letter did not overtly identify individuals, sufficient facts were alleged from which could identify aggrieved employees). Referring generically to an unidentified group of "other employees" does not suffice. *Sanchez v. Gruma Corp.*, No. 19-cv-02015-WHO, 2019 WL 2716539, at *3 (N.D. Cal. Jun. 28, 2019).

Coach Day's letter to the LWDA and the Amended Complaint provides no detail about the alleged aggrieved employees on whose behalf Coach Day purports to bring her PAGA claim. Taken together, the notice letter and Amended Complaint instruct only that Day, "current and former employees," (Ex. F to Platt Decl. at 1);[11] "other employees," (*id.* at 2-3); and "other aggrieved employees" (Am. Compl. ¶¶ 279-280) were allegedly subject to unlawful deductions and/or recordkeeping violations. Neither the notice letter nor the Amended Complaint meet the administrative - and jurisdictional - pre-filing requirement of providing adequate notice of the aggrieved employees, so the PAGA claim must be dismissed.

## XII. Plaintiffs lack statutory standing to bring a claim under California's Unfair Competition Law.

In Count 13, "all Plaintiffs" allege that they are entitled to certain equitable relief under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) (the "UCL"). (Am. Compl. ¶¶ 284-91.) But to have standing to bring a claim under the UCL, a plaintiff must establish an economic injury *and* show that that economic injury was caused by the alleged unfair business practice. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011). The "requirement that injury be economic renders standing under [the UCL] ***substantially narrower than federal standing*** . . . which

[11] Plaintiffs explicitly reference Coach Day's notice letter in the Amended Complaint, (Am. Compl. ¶ 281), allowing the Court to consider the letter "as part of the complaint." *Ritchie*, 342 F.3d at 908.

may be predicated on a broader range of injuries." *Id.* at 324 (emphasis added); *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 659 (N.D. Cal. 2020) ("[W]hether a UCL claim is actionable turns first on a plaintiff's standing to bring it.").

To satisfy the economic injury requirement, a plaintiff needs to show "a personal, individualized loss of money or property in any nontrivial amount." *Kwikset Corp.* at 325 (emphasis added). This may include "surrendering in a transaction more, or acquiring in a transaction less, than the plaintiff otherwise would have, having a present or future property interest diminished; and being required to enter into a transaction, costing money or property, that would have been unnecessary." *Popa v. Winn Law Grp., APC*, No. CV 17-6804 DSF (RAOx), 2017 WL 6016567, at *2 (C.D. Cal. Dec. 4, 2017). At the very least, a plaintiff must be able to "allege some specific, identifiable trifle of an injury." *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 886 (Cal. 2011) (quotation omitted) (emphasis added); *see also Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (granting motion to dismiss where alleged damages were "insufficient to confer standing under the UCL" because the claimed loss was "economically trivia").

Here, Plaintiffs collectively (not individually) argue they have "lost money and/or property in the form of tuition or compensation" as a result of CLU's alleged violation of "statutes and public policies." (Am. Compl. ¶¶ 290; 288.) This vague reference to an unspecified, collective amount of tuition or compensation does not clear even the low bar of pleading an "identifiable trifle of an injury." *Kwikset Corp.*, 246 P.3d at 886. Instead, this is precisely the type of "formulaic recitation of the elements of a UCL claim" that requires dismissal. *See Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2017 WL 6389775, at *13 (S.D. Cal. Dec. 14, 2017) (dismissing plaintiff's UCL claim for lack of standing where plaintiff made conclusory allegation of "loss of money or property."); *see also Shelton v. Ocwen*

*Loan Serv., LLC*, No. 18-cv-02467-AJB-WVG, 2019 WL 4747669, at *12 (S.D. Cal. Sept. 30, 2019) (granting motion to dismiss UCL claim for lack of standing and observing that "[s]imply stating in conclusory fashion that money has been lost is insufficient"). While Plaintiffs further allege some unidentified loss of "educational experiences," careers harmed, and damaged reputations (Am. Compl. ¶ 291), none of these are economic in nature and, therefore, wholly insufficient to evidence standing. *See Sepehry-Fard v. MB Fin. Servs.,* No. 13-CV-02784-BLF, 2015 WL 903364, at *7 (N.D. Cal. Mar. 2, 2015) (holding that allegations of humiliation, embarrassment, privacy loss, and impact on relationships and reputations are insufficient to garner standing even at the pleading stage). Because Plaintiffs fail to allege economic injury with the required specificity, their UCL claim fails for want of standing.

The UCL also requires that any alleged injury in fact is the result of "actual reliance" on the alleged fraudulent conduct; in other words, that such conduct was the "immediate cause" of the economic loss. *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 4th 2009). "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Id*. Here, Plaintiffs fail to allege any predicate misrepresentation that caused the loss. In addition, because Plaintiffs have failed to state a claim on Counts 2, 3, 4, 7, 9, and 10, and those counts must be construed as the predicates to the UCL claim, Count 13 also necessarily fails as a matter of law and can be dismissed on that ground as well. *Cooper v. Simpson*, 460 F. Supp. 3d 894, 917-18 (N.D. Cal. 2020) (dismissing UCL claims were predicate causes of action failed); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. Jul. 31, 2015) (same).

## XIII. Counts 1-7 and 13 are barred by California's Strategic Lawsuits Against Public Participation Statute.

In addition to failing as a matter of law as discussed above, Plaintiffs' claims for breach of contract (Count 1), slander (Count 2), libel (Count 3), false light (Count 4), IIED (Count 5), NIED (Count 6), negligence (Count 7), and violation of Business and Professions Code § 17200 (Count 13) are barred by California's Strategic Lawsuits Against Public Participation (also known as the "anti-SLAPP") statute, Cal. Civ. Proc. Code § 425.16. The anti-SLAPP statute provides a vehicle for a defendant to "pursue early dismissal of meritless lawsuits arising from conduct . . . [undertaken] in furtherance of the right of petition or free speech." *Sanchez v. Am. Media, Inc.*, No. CV 20-2924-DMG (PVCx), 2020 WL 8816343, at *4 (C.D. Cal. Dec. 29, 2020) (quotation omitted); *see also* Cal. Civ. Proc. Code § 425.16. The statute provides for a "special motion to strike" claims that are brought "to chill the valid exercise of the constitutional right[] of freedom of speech." *Id*. at § 425.16(a), (b)(1). The statute expressly mandates that its provisions "be construed broadly." *Id*. at § 425.16(a).

Resolution of an anti-SLAPP motion involves a two-step process. ***First***, the defendant must show that "the challenged action arises from protected activity," *i.e.* "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4); *Sanchez*, 2020 WL 8816343, at *4. Here, Defendants' at-issue conduct arose from "protected activity" because it was undertaken "in connection with a public issue or an issue of public interest."

***Second***, the plaintiff must "demonstrate a probability of prevailing," by showing the complaint is legally sufficient and supported by a *prima facie* showing of "facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (quoting *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002)). Here, as set forth in detail above, Plaintiffs' claims are legally insufficient.

**A. Defendants' at-issue conduct was protected because it was made in connection with an issue of public interest.**

The conduct giving rise to Plaintiffs' purported breach of contract, defamation, false light, IIED, NIED, negligence, and Business and Professions Code § 17200 claims is: (1) the February 5 Email to the CLU community addressing racism on campus (Am. Compl. ¶ 75); (2) the February 8 Meeting with the Softball Players regarding the racially-charged team event (*id*. at ¶ 87); (3) the February 10 Email to the CLU community addressing racism on campus (*id*. at ¶ 96); and (4) the February 13 Community Forum regarding racially-charged events (*id*. at. ¶ 114). This conduct – collectively referred to in this Section as the "Efforts to Address Racism" – is the exact type of activity "in connection with a public issue or an issue of public interest" that the anti-SLAPP statute is intended to protect. Cal. Civ. Proc. Code § 425.16(e)(4). A statement is made "in connection with" a public issue when it contributes to – that is, "participat[es] in or furthers – some public conversation on the issue." *FilmOn.com Inc. v. DoubleVerify Inc*., 439 P.3d 1156, 1166 (Cal. 2019)).

Public interest can be "evidenced by media coverage," *see, e.g., Sipple v. Found. For Nat. Progress*, 83 Cal. Rptr. 2d 677, 684 (Cal. App. 4th 1999) (holding statements in a magazine about a political consultant's alleged abuse of his former wives involved issues of public interest); this is true even where it is the conduct of a private actor that is at issue. *See, e.g., Church of Scientology v. Wollersheim*, 49 Cal. Rptr. 2d 620, 633 (Cal. App. 4th 1996) (finding a public issue in statements concerning a lawsuit against church that had been the subject of extensive media coverage). An issue of public interest can also be found where the underlying action/speech concerns a fundamental right, such as a constitutional protection, or a public controversy. *See id*. (finding important that the underlying speech concerned constitutional protection of religious practices); *Averill v. Superior Ct.*, 50 Cal. Rptr. 2d 62, 64 (Cal. App. 4th 1996), *as modified* (Mar. 14, 1996) (finding public issue

present in private statements by a homeowner to her employer about controversial placement of a shelter for battered women).

Plaintiffs' own allegations demonstrate that Efforts to Address Racism: (1) furthered an ongoing public conversation on the issue of racism (Am. Compl. ¶¶ 30-40); (2) garnered extensive media coverage (*Id.* ¶¶ 75-81, 96, 166-71, 190-95); and (3) concerned racial discrimination, the subject of important public discourse. The Efforts to Address Racism contributed to, and "further[ed] – some public conversation on the issue" of race, not just on CLU's campus or in the CLU community, but nationwide. *Sanchez*, 2020 WL 8816343, at *6. Accordingly, the conduct at issue here is protected speech. *See* Cal. Civ. Proc. Code § 425.16(e)(4).

**B. Plaintiffs' claims are legally insufficient.**

For part two of the anti-SLAPP analysis, courts apply the Rule 12(b)(6) motion to dismiss standard in assessing the legal sufficiency of the subject claims. *Planned Parenthood*, 890 F.3d at 834-35. Plaintiffs failed to state claims in Counts 1-7 and 13 of the Amended Complaint, as discussed above. As a result, Counts 1-7 and 13 must be dismissed under California's anti-SLAPP statute.

**XIV. Plaintiffs' punitive damages demand is unsupported.**

Plaintiffs demand "punitive damages" in connection with their slander, libel, false light, IIED, retaliation, and hostile work environment claims. These demands are not adequately pleaded and should be stricken. Punitive damages are available *only* "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Eastwood v. Sera Labs, Inc.*, No. No. 2:20-cv-06503-RGK (JDEx), 2021 WL 4439221, at *6 (C.D. Cal. June 23, 2021) (defamation and false light claims); *Swenson v. Amtrak*, No. No. 2:14–CV–02629–KJM–CMK, 2015 WL 6447493, at *5 (E.D. Cal. Oct. 23, 2015) (IIED claim); *Weinstein v. HBE Corp.*, No. 2:13–cv–04643–CAS(JCx), 2014 WL 5602510, at *10 (C.D. Cal. Nov. 3, 2014) (retaliation claim); *E.E.O.C. v. California Psychiatric*

*Transitions, Inc.*, 644 F. Supp. 2d 1249, 1283 (E.D. Cal. 2009) (hostile work environment claims); *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1104 (S.D. Cal. 2020) (constructive discharge).[12] California courts define malice as "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'" *Eastwood*, 2021 WL 4439221, at *6. Boilerplate allegations of malice, oppression, and/or fraud without attendant factual allegations are insufficient to withstand a motion to strike. *See Smith v. Superior Ct.*, 13 Cal. Rptr. 2d 133 (Cal. App. 4th 1992). Here, Plaintiffs state the elements of a demand for punitive damages (malice, oppression, fraud) (Am. Compl. ¶¶ 176, 203, 209, 218, 261, 268), but fail to tie those statement to any alleged factual support. Accordingly, should the Court decline to dismiss the Amended Complaint in its entirety, or any of these claims individually, at a minimum, Plaintiffs' demand for punitive damages should be stricken.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(5) and 12(b)(6) on the following grounds: (1) the Amended Complaint has not been validly or timely served; (2) Counts 1-7 and 9-13 fail to state a legally cognizable claim; and (3) Counts 1-7 and 9-13 violate California's anti-SLAPP statute. Alternatively, and in addition, Defendants respectfully request that the Court strike Plaintiff's demand for punitive damages.

---

[12] While Plaintiffs fail to seek punitive damages for their constructive termination claim in their "prayer for relief" section of their Amended Complaint, Plaintiffs state that they are seeking an award of punitive damages for this claim elsewhere in the Amended Complaint (*see* Am. Compl. ¶ 277) and therefore, in an abundance of caution, Defendants address the legal insufficiency of such a demand in this Memorandum.

Dated: January 28, 2022

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Henry A. Platt*
Henry A. Platt

*Attorney for Defendants California Lutheran University, Chris Kimball, Melissa Maxwell-Doherty, Jim McHugh, and Karin Grennan*