**JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**
Michael J. Saltz, Esq. SBN 189751
msaltz@jrsnd.com
Elana R. Levine, Esq. SBN 234155
lani@jrsnd.com
1880 Century Park East, Suite 900
Los Angeles, CA 90067
Telephone: (310) 446-9900
Facsimile: (310) 446-9909

Attorneys for Plaintiffs

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DEBBY DAY; DE ANN YOUNG; JASON GLUCKMAN; JANE DOES 1-24,

Plaintiffs,

v.

CALIFORNIA LUTHERAN UNIVERSITY; CHRIS KIMBALL; MELISSA MAXWELL-DOHERTY; JIM MCHUGH; KARIN GRENNAN; and ROES 1 through 200, inclusive,

Defendants.

Case No.: 8:21-cv-1286-JLS (DFMx)

**PLAINTIFFS DEBBY DAY, DE ANN YOUNG, JASON GLUCKMAN, AND JANE DOES 1-24s' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: July 8, 2022
Time: 10:30 a.m.
Courtroom: 8A

The Hon. Josephine L. Staton

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. LEGAL STANDARD ON A MOTION TO DISMISS ........ 2

B. DISMISSAL UNDER RULE 4(m) IS NOT APPROPRIATE ........ 3

1. Legal Standard. ........ 3

2. Good Cause Exists For the Mandatory Enlargement of the 90 Day Time Limitation and/or The Court to Exercise Discretion To Extend the Service Deadline. . 5

3. Defendants' Motion to Quash is Moot and Otherwise Does Not Present "Strong and Convincing Evidence" To Rebut The Testimony of A Registered Process Server. 7

C. THE DEFAMATION CAUSES OF ACTION ALL STATE PLAUSIBLE CLAIMS FOR RELIEF ........ 10

1. Legal Standard For Defamation Claims ........ 10

2. Defamation Factual Allegations ........ 13

3. The FAC Disposed of the Common Interest Privilege. ........ 18

4. The Common Interest Privilege Defense Is Not Available. ........ 19

5. Under The Circumstances, the Alleged Offending Statements Were Understood To Be "Of And Concerning" Plaintiffs ........ 20

6. The FAC Properly Alleges Group Libel. ........ 22

D. PLAINTIFFS PLEAD FACTS SUFFICIENT TO STATE A CAUSE OF ACTION FOR BREACH OF CONTRACT ........ 22

E. PLAINTIFFS HAVE SUFFICIENTLY PLEAD A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ........ 25

F. PLAINTIFFS PLEAD FACTS SUFFICIENT TO STATE CAUSES OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE ........ 27

G. PLAINTIFF DAY HAS PLED FACTS SUFFICIENT TO STATE A CAUSE OF ACTION FOR RETALIATION ........ 31

H. THE COACHES HAVE PLEAD SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR HOSTILE WORK ENVIRONMENT ........ 34

I. PLAINTIFFS YOUNG AND GLUCKMAN PLEAD SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR CONSTRUCTIVE TERMINATION ........ 36

J. THE PAGA CLAIM IS SUFFICIENTLY PLED ........ 37

K. PLAINTIFFS SUFFICIENTLY PLEAD A CAUSE OF ACTION UNDER BUSINESS AND PROFESSIONS CODE § 17200 ........ 39

L. DEFENDANTS ANTI-SLAPP MOTION SHOULD BE DENIED AS FRIVILOUS ........ 40

1. Defendants Failed To Meet Their Burden Under The First Prong. ........ 40

2. Plaintiffs Have Satisfied The Second Prong of the Anti-SLAPP Analysis. ........ 44

M. PLAINTIFFS' PUNITIVE DAMAGE PRAYER IS SUFFICIENT ........ 44

III. CONCLUSION ........ 45

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## TABLE OF AUTHORITIES

**Cases**

*Alszeh v. HBO*, 67 Cal.App.4th 1456 (1998) ........ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 2

*Baker v. Rodriguez*, No. SACV 11-138-JST (PJWx), 2012 U.S. Dist. LEXIS 5480 (C.D. Cal. Jan. 17, 2012) ........ 45

*Baral v. Schnitt*, 1 Cal.5th 376 (2016) ........ 43

*Bell Atl. Corp. v. Twombly*, 550 U.S. 54 (2007) ........ 2

*Bielma v. Bostic*, Case No.: 15cv1606-MMA (BLM), 2016 U.S. Dist. LEXIS 152, 2016 WL 29624 (S.D. Cal. Jan. 4, 2016) ........ 11, 22

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986) ........ 11, 22

*Brewer v. Second Baptist Church*, 32 Cal.2d 791 (1948) ........ 19

*Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) ........ 4

*Buendia v. Boulet*, No. 8:19-cv-01442-JLS-DFM, 2021 U.S. Dist. LEXIS 148832 (C.D. Cal. June 1, 2021): ........ 4, 7, 12

*Caceres v. Bank of Am., N.A.*, No. SACV 13-542-JLS (RNBx), 2013 U.S. Dist. LEXIS 184605 (C.D. Cal. Oct. 28, 2013) ........ 13

*Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal.App.2d 733 (1962). ........ 12

*Castleman v. Sagaser*, 216 Cal. App. 4th 481 (2013) ........ 41

*Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984) ........ 11

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ........ 41

*Corso v. Creighton University*, 731 F.2d 529, 533 (8th Cir. 1984) ........ 23

*Crowe v. County of San Diego*, 608 F.3d 406(9th Cir. 2010) ........ 12

*D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000) 21

*Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 U.S. Dist. LEXIS 142066, 2010 WL 6089077 (D. Or. Dec. 3, 2010), ........ 23

*DiGiorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560 (1963) ........ 11

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ........ 11

*Eastwood v. Sera Labs*, 2021 U.S. Dist. LEXIS 192346 .......... 44
*EEOC v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, (E.D. Cal. 2009) .. 44
*Efaw v. Williams*, 473 F.3d 1038 (9th Cir. 2007) .......... 5, 7
*Elias v. Spotify United States*, 2020 U.S. Dist. LEXIS 258833.......... 38
*Emde v. San Joaquin County Cent. Labor Council*, 23 Cal.2d 146 (1948).......... 19
*Ernest v. Univ. of Phoenix*, 2010 U.S. Dist. LEXIS 153860 (2010) .......... 28
*Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, (1986) .......... 13
*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 181 Cal.App.4th 1207 (2010)43
*Hailey v. California Physicians' Service*, 158 Cal.App.4th 452 (2007).......... 26
*Havensight Capital LLC v. Nike, Inc.*, 2014 U.S. Dist. LEXIS 196123 .......... 28
*Hawran v. Hixson*, 209 Cal.App.4th 256 (2012).......... 18, 20
*Hooker v. Parker-Hannifin Corp.*, 2012 U.S. Dist. LEXIS 49144 .......... 32
*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228 (2005).......... 26
*Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264 (2009).......... 41
*In re Sheehan*, 253 F.3d 507(9th Cir. 2001) ..........5
*Isuzu Motors Ltd., v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998).......... 21
*Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809 (2007).......... 23
*Khan v. Dunn-Edwards*, 19 Cal.App.5th 804 (2018) .......... 37, 38
*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011).......... 39
*Lemoge v. United States*, 587 F.3d 1188 (9th Cir. 2009..........5
*Lomonaco v. Soberlink, Inc.*, No. SACV 15-00015-JLS (RNBx), 2015 U.S. Dist. LEXIS 200140 (C.D. Cal. Aug. 25, 2015) .......... 10
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). .......... 40
*Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076 (S.D. Cal. 2020).......... 45
*Media v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 U.S. Dist. LEXIS 243264(C.D. Cal. May 1, 2021).......... 13

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

*Morehouse College, Inc. v. McGaha*, 627 S.E.2d 39 (2005) .......................................... 23

*Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858 (2009) ...................................................... 12

*Oluvic v. Azusa Pac. Univ*., 2019 U.S. Dist. LEXIS 26268 .......................................... 36

*Ornelos v. Am. Airlines Grp., Inc.*, No. CV 18-2031-R, 2018 U.S. Dist. LEXIS 97827, 2018 WL 2972455 (C.D. Cal. June 7, 2018) .............................................................. 20

*Pacini v. Nationstar Mortg., LLC*, C 12-04606 SI, 2013 U.S. Dist. LEXIS 84215, 2013 WL 2924441 (N.D. Cal. June 13, 2013) .................................................................... 13

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................................3

*Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal.5th 1057 (2017) ...................................... 43

*Park v. Board of Trustees of California State University*, 2 Cal.5th 1057 (2017) ......... 41

*Perkins v. City of Anaheim*, No. 8:19-cv-00315-JLS-JDE, 2021 U.S. Dist. LEXIS 166024 (C.D. Cal. Apr. 26, 2021) ............................................................................................ 26

*Peterson v. Sanghi*, No. 8:18-cv-02000-JLS-ADS, 2019 U.S. Dist. LEXIS 68431 (C.D. Cal. Feb. 14, 2019) ........................................................................................ passim

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir.) ............................................................................................................................... 41

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993) .................................. 27, 31

*Procopio v. Conrad Prebys Tr.*, No. 14CV1651 AJB KSC, 2015 U.S. Dist. LEXIS 103411, 2015 WL 4662407 (S.D. Cal. Aug. 6, 2015). ...................................................4

*Regents of University of California v. Sup. Ct.*, 4 Cal.5th 607 (2018) ..................... 28, 29

*Rendon v. Cty. of Orange*, No. 8:18-cv-01835-JLS-KES, 2020 U.S. Dist. LEXIS 84596 (C.D. Cal. Mar. 31, 2020) ..........................................................................................4

*S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288 (9th Cir. 2006) ..................................4

*Sanchez-Corea v. Bank of America* 38 Cal.3d 892 (1985) ............................................ 26

*SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955 (9th Cir. 2008) ..................................... 11

*Selleck v. Globe Int'l, Inc.*, 166 Cal.App.3d 1123 (1985) .............................................. 11

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). .................................................................3

*Summers v. McClanahan*, 140 Cal.App.4th 403 (2006) ....................................................9


**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

*Swenson v. Amtrak*, No. 2:14-CV-02629-KJM-CMK, 2015 U.S. Dist. LEXIS 144459 (E.D. Cal. Oct. 22, 2015), .......... 44
*Toranto v. Jaffurs*, 297 F.Supp.3d 1073, 1096 (S.D. Cal. 2018) .......... 13
*Towner v. County of Ventura*, 63 Cal.App.5th 761 (2021) .......... 42
*TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar. 23, 2020) .......... 40, 44
*Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381 (7th Cir.1998) .......... 5
*Trznadel v. Thomas M. Cooley Law Sch.*, No. 02-76, 2003 U.S. Dist. LEXIS 9660 (W.D. Mich. May 16, 2003) .......... 23
*Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238 (1994) .......... 36
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 9th Cir. 2003) .......... 40
*Walter v. W. Indus.*, No. SACV 13-1503 JLS (ANx), 2013 U.S. Dist. LEXIS 198465 (C.D. Cal. Dec. 10, 2013) .......... 31
*Washer v. Bank of Am.* 21 Cal.2d 822 (1943) .......... 12
*Weinstein v. HBE Corp.*, No. 2:13-cv-04643-CAS(JCx), 2014 U.S. Dist. LEXIS 156210 (C.D. Cal. Nov. 3, 2014) .......... 44
*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005) .......... 32
*Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179 (E.D. Cal. 2008) .......... 11, 12, 22
*Z.F. ex rel M.A.F. v. Ripon Unified Sch. Dist.*, No. 2:10-cv-00523-GEB—JFM, 2011 U.S. Dist. LEXIS 158747, 2011WL 356072(E.D. Cal. Feb. 2, 2011) .......... 22
*Zumbrun v. Univ. of S. Cal.*, 25 Cal.App.3d 1 (1972) .......... 23

**Statutes**

20 U.S.C. § 1232g .......... 42
Cal. Civ. Code § 44 .......... 10
Cal. Civ. Code § 45 .......... 10
Cal. Civ. Code § 45a .......... 10
Cal. Civ. Code § 47(c) .......... 20
Civil Code § 3294 .......... 44

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Fed R. Civ. P. 12(b)(5) ........ 4
Fed. R. Civ. P. 4(m) ........ 4
*Gov. Code* § 12940(h) ........ 32
*Government Code* § 12923(a) ........ 34
*Government Code* § 12940 ........ 36
*Government Code* § 12940(h) ........ 32
*Government Code* §12900, et seq. ........ 34
*Government Code* 12923(b) ........ 34
Lab. Code § 2699.5 ........ 39
Labor Code § 2699 ........ 38

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs initially filed this action on July 29, 2021 (Dkt. 1) and filed a First Amended Complaint ("FAC") on December 31, 2021. (Dkt 41). The FAC contains causes of action for: 1) Breach of Contract; 2) Slander; 3) Libel; 4) False Light; 5) Intentional Infliction of Emotional Distress; 6) Negligent Infliction of Emotional Distress; 7) Negligence; 8) Violation of Title IX[1]; 9) Retaliation; 10) Hostile Work Environment; 11) Constructive Termination; 12) Violation of Labor Code § 2699; 13) Violation of Business and Professions Code § 17200.

Plaintiffs' 82-page FAC contains more than sufficient allegations of underlying facts to give fair notice to Defendants to enable them to defend themselves effectively against the claims therein. Likewise, all of said claims plausibly suggest Plaintiffs' entitlement to relief regarding: 1) Defendants' fabricating and publishing a knowingly false and misleading narrative about a "Blackface" event that actually never occurred; 2) Defendants' Labor Code and contract violations; and 3) CLU's Title IX violations.

Defendants either intentionally and/or through their negligence, allowed the Softball Team and their Coaches to be publicly shamed and harassed, placed in fear for their safety, be the subject of unabated and unpunished racial slurs and hate incidents by other students in violation of CLU written policies they promised to enforce, and to otherwise suffer lifelong injury to their mental health and reputations. At one point, one of the leaders of the Softball Team informed Defendants in writing that the players were in need of help by mental health professionals as a result of Defendants' conduct. Defendants refused to respond. (FAC, ¶ 6).

Defendants have responded to Plaintiffs' FAC by filing a Motion to Dismiss ("MTD") based upon several theories. However, as stated below, Defendants' MTD should be denied as to each attacked claim, since Plaintiffs have properly alleged facts

---

[1] Other than service issues, Defendants do not attack the Title IX claim, and as such Defendants' Motion should be denied.

sufficient to establish plausible claims against Defendants, and the common interest privilege defense fails as a matter of law because the FAC expressly alleges that Defendants published their statements about Plaintiffs with malice.

Further, Defendants' request for Anti-SLAPP relief should be denied because Defendants cannot meet their first-prong burden, and because Plaintiffs' FAC is legally sufficient.

Finally, Defendants' motion to quash and motion to dismiss pursuant to Fed. R. Civ. Proc. § 4(m) should be denied because: good cause exists for the Court to exercise its discretion to extend the time for initial service of the original summons and complaint; service of the original summons and complaint within 48 hours of the original deadline was proper, the Defendants admit to being served the Amended Summons and FAC within less than six months of the filing of the original complaint, and Defendants have not claimed or submitted evidence that prejudice has been suffered resulting from any delay in service.

Thus, for the reasons stated herein, Plaintiffs respectfully request that Defendants' MTD be denied. To the extent that this Court believes that any defects exist in the FAC, Plaintiffs hereby respectfully ask for an opportunity to amend the FAC to address same.

## II. ARGUMENT

### A. LEGAL STANDARD ON A MOTION TO DISMISS

As stated by this Court in *Peterson v. Sanghi*, No. 8:18-cv-02000-JLS-ADS, 2019 U.S. Dist. LEXIS 68431, at *15-16 (C.D. Cal. Feb. 14, 2019) ("*Peterson*"): In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010. However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). The complaint must contain

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). *Id.*

**B. DISMISSAL UNDER RULE 4(m) IS NOT APPROPRIATE**

Defendants' motion pursuant to Fed. R. Civ. Proc. § 12(b)(5)(for defective/untimely service of process) seeks to dismiss this case on non-prejudicial technical issues of their own making based on their claim that the person that was served the summons and complaint for all Defendants was not authorized to accept service on their behalf. MTD pp. 13-14. As such, Defendants argue that there is no good cause for the enlargement of the 90-day service time limit, and that they should be entitled to a dismissal for untimely service under Fed. R. Civ. Proc. § 4(m). MTD pp. 14-16.

Contrary to Defendants' arguments, there is good cause, and the Court should otherwise exercise its discretion to find that the 90-Day time limit should be extended to otherwise allow for the fact that all Defendants have ultimately been served in this case, and that Defendants have failed to proffer evidence or argument that they have suffered any prejudice with regard to the timing of their service. To the extent this Court exercises its discretion to extend the timing of service, Defendants' arguments regarding the validity of service of the original complaint are moot. However, to the extent they are not moot, said arguments are not supported by "strong and convincing" evidence to overcome the sworn declaration of a registered process server.

**1. Legal Standard.**

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

As this Court wrote in *Rendon v. Cty. of Orange*, No. 8:18-cv-01835-JLS-KES, 2020 U.S. Dist. LEXIS 84596, at *5-6 (C.D. Cal. Mar. 31, 2020):

> Under Rule 12 of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for insufficient service of process. See Fed R. Civ. P. 12(b)(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004). Where a plaintiff is unable to satisfy its burden, "the district court has discretion to dismiss an action or to quash service." *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). **"If effective service can be made and there has been no prejudice to the defendant, a court will generally quash service rather than dismiss the action."** *Procopio v. Conrad Prebys Tr.*, No. 14CV1651 AJB KSC, 2015 U.S. Dist. LEXIS 103411, 2015 WL 4662407, at *4 (S.D. Cal. Aug. 6, 2015).

*Id.* Additionally, this Court wrote in *Rendon*:

> "Generally, a plaintiff can meet its burden of establishing the validity of service by providing the process server's return because 'the process server's return will provide a prima facie case as to the facts of service.'" *Cheng v. AIM Sports, Inc.*, No. CV 10-3814 PSG PLAX, 2011 U.S. Dist. LEXIS 11666, 2011 WL 320993, at *2 (C.D. Cal. Jan. 26, 2011). "In fact, a signed return of service 'can be overcome only by strong and convincing evidence' put forth by the complaining party." *Id.* (citing S*.E.C. v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007); then citing *Hong-Ming Lu v. Primax Wheel Corp.*, No. CV 04-4170, 2005 U.S. Dist. LEXIS 41751, 2005 WL 807048, at *4 (N.D. Cal. Apr. 7, 2005)).

*Id.* at *6. With regard to Rule 4(m), this Court wrote in *Buendia v. Boulet*, No. 8:19-cv-01442-JLS-DFM, 2021 U.S. Dist. LEXIS 148832, at *1-3 (C.D. Cal. June 1, 2021): If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m). *Id.*

"Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. The second is discretionary: if good cause is not established, the district court may extend time for service upon a

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

showing of excusable neglect." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (citing *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001)) (emphasis added). "In making extension decisions under Rule 4(m) a district court may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007) (citing *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir.1998)). Under Rule 4(m), "the court's discretion is broad." *In re Sheehan*, 253 F.3d at 513. *Id.*

**2. Good Cause Exists For the Mandatory Enlargement of the 90 Day Time Limitation and/or The Court to Exercise Discretion To Extend the Service Deadline.**

As stated in the previously filed Declaration of Michael J. Saltz, within just over a month from the initial filing of this matter, lead counsel for Plaintiffs was unexpectedly and traumatically withdrawn from work due to otherwise life-threatening medical issues affecting his family. Dkt. 28. Upon his return, Mr. Saltz and Ms. Levine requested that the attorney service attempt service of process on Defendants at CLU and inquire thereat if they would be willing to accept service on behalf of the individually named defendants. See Dkt. 28 ¶ 4; Levine Decl. ¶ 8.

To be certain, Defendants have: "a duty to avoid unnecessary expenses of serving the summons." Fed R. Civ. P. 4(d). Despite the fact that Defendants had advance notice of the filing of the lawsuit in August 2021 (See FAC ¶ 250; Levine Decl.¶ 14, Ex. 3), and Defendants had already hired counsel to defend against it, at no time did any Defense counsel reach out to any of Plaintiffs' counsel within 90-days of the original filing of this action to otherwise introduce themselves or attempt to comply with their duty under Rule 4(d) by offering to accept service on behalf of all of their clients, and otherwise relieve their individual clients of the burden of being tracked by process servers. Dkt. 28 ¶ 8; Levine Decl. ¶ 5.

Ronald Rezac ("Rezac"), a registered process server with approximately 40 years of experience, attempted service on all Defendants at CLU on day 92 from the date of filing. See Rezac Decl. ¶4; Dkt. 28 ¶ 4. During Rezac's attempt to serve all Defendants

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

at CLU, Defendant CLU physically presented Ms. Norma Meza ("Meza") – who neglected to tell this Court that she is the Executive Assistant to CLU's Registered Agent for Service of Process – to Rezac for the purpose of addressing the documents he was at CLU to serve. Rezac Decl. ¶ 6; Levine Decl. ¶ 12. According to Rezac, Meza stated that she was authorized to accept service of the subject summons and complaint on behalf of all Defendants and that she would make sure everyone receives their copy. Rezac Decl. ¶ 7. Based on such representation, Rezac served all Defendants pursuant to Fed. R. Civ. P. 4(e) and Fed. R. Civ. P. 4(h). *Id.*[2] To be certain, Rezac's company stood to make more money had Meza actually told Rezac that she was not authorized to accept service on behalf of all Defendants. Rezac Decl. ¶ 8; Levine Decl. ¶ 13, 16.

Such service gave actual notice of the Summons and Complaint to all Defendants, as demonstrated by Defense Counsel filing documents addressing and requesting relief on behalf of all Defendants within five days of said service. See Dkt. 22 and 23.

Thereafter, all counsel met and conferred regarding Defendants' desire to file a MTD and filed a Stipulation on November 18, 2021 as a result thereof. See Dkts. 29 and 30; Levine Decl. ¶ 18. Through additional meet and confer efforts between all counsel, it was agreed by stipulation that Plaintiffs would file and serve an amended complaint by a date certain, and that the parties would adhere to a briefing schedule regarding Defendants' anticipated MTD filed in response. Dkt. 39 and 40; Levine Decl. ¶ 18.

Plaintiffs timely filed their FAC on December 31, 2021, and served all Defendants shortly thereafter.[3] Thus, under all circumstances, regardless of whether Defendants

---

[2] In addition, Defendant Jim McHugh was also personally served on November 9, 2021 out of an abundance of caution, as Plaintiffs' counsel subsequently learned he was the only individually named defendant that was no longer working at CLU. McHugh Decl. ¶ 7; Levine Decl. ¶ 1.

[3] CLU was served through its registered agent for service of process Karen Davis on January 11, 2022 (Dkt. 53; Davis Decl. ¶ 9); Karin Grennan was served January 11, 2022 (Dkt. 54); Melissa Maxwell-Doherty was served on January 7, 2022 (Dkt. 55; Doherty

claim that there were issues with the original service attempts, all Defendants admit that they have since been served the amended summons and FAC within *less than six months* of the original filing of this lawsuit.

Finally, Defendants have not asserted, or put forth evidence establishing, that they have suffered any prejudice as a result of the 48-hour delay in service of the original summons and complaint, or of when the subsequent FAC was served less-than-six months after the filing of the original complaint. In contrast, as Defendants argue, Plaintiffs would suffer extreme prejudice should this Court dismiss this matter in that the statute of limitations on certain claims expired two weeks after the filing of the original complaint. See MTD p. 16.

In *Buendia v. Boulet*, No. 8:19-cv-01442-JLS-DFM, 2021 U.S. Dist. LEXIS 148832, at *1-3 (C.D. Cal. June 1, 2021), this Court found that an extension of time for service under Rule 4(m) was appropriate when the Defendant was eventually personally served within approximately six months of the lawsuit's commencement, during that time the parties had notice of the lawsuit and were able to gather and preserve evidence, and the Defendant failed to show he suffered prejudice by the delay in service. *Id.*

Here, the statute of limitations bar, lack of a showing of prejudice to the Defendants, actual notice of the lawsuit in time to preserve evidence, and the admitted eventual service of all Defendants within less than six months of the original filing are therefore all factors that weigh in favor of the Court finding good cause, and/or exercise its discretion, to extend the initial 90-Day service deadline. See *Efaw v. Williams*, 473 F.3d at 1040.

As such, Defendants' request for dismissal should be denied.

**3. Defendants' Motion to Quash is Moot and Otherwise Does Not Present "Strong and Convincing Evidence" To Rebut The Testimony of A Registered Process Server.**

---

Decl. ¶ 6); Jim McHugh was served on January 7, 2022 (Dkt. 56; McHugh Decl. ¶ 8); and Chris Kimball was served on January 11, 2022 (Dkt. 57; Kimball Decl. ¶ 8).

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

In order to further effectuate the relief requested under Rule 4(m), Defendants move to quash service of the original summons and complaint by stating Meza is not authorized to accept service on behalf of Defendants. MTD pp 13-14. To the extent the Court extends the time for service as requested above, this issue will then be made moot by the Defendants all admitting to being properly served the amended pleadings.

That said, it should be noted that: 1) Meza's declaration conveniently fails to disclose she is the Executive Assistant to CLU's agent for service of process; 2) Meza's declaration fails to state that she told the process server that she is not authorized to accept service; 3) Meza's declaration fails to deny that she told the process server that she would make sure the served documents got to the correct people; and 4) the moving papers fail to show that the served documents did not make it to Defendants and/or their attorneys.

According Rezac, Meza was presented to him as a person with ostensible authority to accept service on behalf of Defendants. See Rezac Decl. ¶ 7. Thus service upon Meza would be proper under California law. As to service of agents with ostensible authority, California courts have stated:

> Adopting a liberal and practical approach to service of process our Supreme Court held the plaintiff, by serving "a corporate agent with ostensible authority to receive process, effected valid service upon the defendants." The court noted, "[t]he case at bar demonstrates the desirability of liberal construction of the new statutes." In this case, the court explained, "[d]efendant corporation, having misled plaintiff, bears the responsibility for plaintiff's failure to serve an authorized corporate officer, and should not be permitted to strip itself of assets in order to avoid the payment of an uncontested judgment."
>
> The liberal and practical approach to service of process has been followed in subsequent Court of Appeal decisions. In *Gibble v. Car-Lene Research, Inc.* the court stated: "It is well settled that strict compliance with statutes governing service of process is not required. Rather, in deciding whether service was valid, the statutory provisions regarding service of process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant."

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

*Summers v. McClanahan*, 140 Cal.App.4th 403, 410-411 (2006). Likewise, with regard to service of an agent, California courts have stated:

> In *Doherty & Co. v. Goodman* the United States Supreme Court provided guidance for determining who is a proper agent for acceptance of service on behalf of a defendant. The court concluded a specific appointment is not required, but the principal-agent relationship must be close and enduring enough to make it highly probable the defendant will receive actual notice.
>
> The plaintiff in *Doherty & Co. v. Goodman* was a resident of Iowa who served process on the defendant securities dealer, a resident of New York, by delivering the summons and complaint to an employee of defendant in his Des Moines office. The employee's only specific authority was to sell securities for defendant. Defendant "never … consented that service of process upon this agent should constitute service upon himself." The Supreme Court nevertheless upheld the service under an Iowa law, which authorized service of process "'on any agent or clerk employed in' " the office of an individual or company doing business " 'in any county other than that in which the principal resides.' " The court rejected the defendant's due process challenge to the statute. It agreed with an Iowa Supreme Court opinion which upheld the statute against a constitutional attack because "'there is not only "reasonable probability" but practical moral certainty that the defendant will receive actual notice of the pendency of the action.'"

*Id.* at 412. Here, the evidence is undisputed that there existed a close relationship between CLU's agent for service of process (i.e., Karen Davis) and her Executive Assistant (i.e., Meza). In addition, Meza was the person that was presented by CLU to deal with a registered process server attempting service of process on CLU and its employees. Finally, Meza did, in fact, get said served documents immediately to Defendants and/or their attorneys, thus providing actual notice of the instant lawsuit. Such service therefore establishes service of process under Rule 4(e) and (h), a fact which has not been rebutted by "strong and convincing evidence."

Further, Defendants are not permitted to take advantage of any error purportedly committed by Meza in leading a registered process server to believe that she was authorized to accept service. To this point, Meza's evidence is not only potentially biased (see Levine Decl. ¶ 13), but it is not so "strong and convincing" that it would refute the

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

sworn testimony of a registered process server that was financially incentivized to not serve Meza on that day. Rezac Decl. ¶ 8; Levine Decl. ¶ 13, 16.

As such, and under all circumstances, Defendants' motion to quash and to obtain dismissal pursuant to Rule 4(m) should be denied.

**C. THE DEFAMATION CAUSES OF ACTION ALL STATE PLAUSIBLE CLAIMS FOR RELIEF**

Defendants move to dismiss Plaintiffs' Second, Third, and Fourth Causes of Action (for Slander, Libel, and False Light) on three bases: (1) That the statements in the February 5 and February 10 emails were protected by the common interest privilege; (2) That Plaintiffs fail to sufficiently allege that the statements in those emails were "of and concerning" the plaintiffs, since they are not identified by name in the emails; and (3) That Plaintiffs fail to sufficiently allege defamation on behalf of a small group, since they are not identified specifically. See MTD pp. 21-25. These arguments are unsupported by case law and otherwise ignore and/or misrepresent the myriad of allegations in the FAC that both state proper causes of action and eliminate the application of California's common interest privilege. As such, Defendants' arguments are without merit.

**1. Legal Standard For Defamation Claims**

As stated by this Court in *Lomonaco v. Soberlink, Inc.*, No. SACV 15-00015-JLS (RNBx), 2015 U.S. Dist. LEXIS 200140, at *19-20 (C.D. Cal. Aug. 25, 2015):

> Under California law, "[d]efamation is effected by either . . . (a) Libel [or] (b) Slander." Cal. Civ. Code § 44. "Libel is a false and unprivileged publication by writing . . . , which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "California law further defines libel *per se*, also called libel on its face, as '[a] libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact.'" *Piping Rock*, 946 F. Supp. 2d at 970 (citing Cal. Civ. Code § 45a). Thus, a [claimant] "may only prevail on a libel claim if the publication is (1) libelous on its face, *or* (2) if special damages have been proven." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001) (emphasis added). "The determination as to whether a publication is libelous on its face is one of law, and must be measured by the effect the publication would have on the mind of the average

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

> reader." *Id.* (internal quotation marks and citation omitted). "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning." *Selleck v. Globe Int'l, Inc.*, 166 Cal.App.3d 1123, 1131 (1985).

*Id.* As written by this Court in *Petersen, supra.* at 16-17:

> In defamation actions the First Amendment [] requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042, 232 Cal. Rptr. 542, 728 P.2d 1177 (1986). "In California, whether statements can be reasonably interpreted as referring to plaintiffs is a question of law for the court." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008) (citing *Alszeh v. HBO*, 67 Cal.App.4th 1456, 1461, 80 Cal.Rptr.2d 16 (1998)). "If there is no express reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *Id.* (citing *Blatty*, 42 Cal. 3d at 1046). "It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description **or circumstances tending to identify him**.'" *Church of Scientology of California v. Flynn*, 744 F.2d 694, 697 (9th Cir. 1984) (alterations in original) (quoting *DiGiorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560, 569-70, 30 Cal. Rptr. 350 (1963)).

*Id.* (emphasis added). With regard to "group libel," which is one of the issues at bar, this Court wrote in *Peterson, supra.* at 18:

> "[t]he group libel rule applies when a group member brings a defamation suit based on statements regarding the group" and "generally bars defamation actions to which it applies." *Id.* "However, there are exceptions where the group is small and its members are easily ascertainable, or the circumstances make it reasonable to conclude that the statement refers to the individual." *Bielma v. Bostic*, Case No.: 15cv1606-MMA (BLM), 2016 U.S. Dist. LEXIS 152, 2016 WL 29624, at *18 (S.D. Cal. Jan. 4, 2016) (citing *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1188 (E.D. Cal. 2008)). "The Supreme Court of California has stated that defamatory statements referring to a group exceeding twenty-five members preclude an individual plaintiff from showing the statements relate to that individual, unless the latter exception applies." *Id.* (citing *Blatty*, 42 Cal. 3d at 1046.)
>
> . . .
>
> As an initial matter, the "group libel rule" does not impose a separate requirement on Plaintiffs' claims. Plaintiffs must show that Defendants' statements identified Plaintiffs by "reasonable implication," which would

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

> suffice to show that "the circumstances make it reasonable to conclude" that the statements referred to them individually. *See, e.g.*, *Yow*, 550 F. Supp. 2d at 1189-90 (explaining group libel rule but analyzing only whether statements impliedly referred to plaintiff).

*Id.* at *18. In California, it is generally sufficient to state that the defamatory matter out of which the cause of action arose was published or spoken of and concerning the plaintiff. *Code Civ. Proc.* § 460; *Washer v. Bank of Am.* 21 Cal.2d 822, 829 (1943); *Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal.App.2d 733, 741 (1962). It is not necessary for the plaintiff to state any extrinsic facts in the complaint for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose. *Code Civ. Proc.* § 460.

Slander is a false and unprivileged oral, radio, or mechanical publication that "(1) charges any person with crime, or with having been indicted, convicted, or punished for crime; (2) imputes in him or her the present existence of an infectious, contagious, or loathsome disease; (3) tends directly to injure him or her in respect to his or her office, profession, trade or business, either by imputing to him or her general disqualification in those respects that the office or other occupation peculiarly requires, or by imputing something with reference to his or her office, profession, trade, or business that has a natural tendency to lessen its profits; (4) imputes to him or her impotence or a want of chastity; or (5) that, by natural consequence, causes actual damage." *Civ. Code* § 46.

With regard to Slander, this Court wrote in *Jaeyoung Nam v. Alpha Floors*, No. 2:16-cv-6810-JLS-JCGx, 2017 U.S. Dist. LEXIS 236151, at *19-20 (C.D. Cal. Jan. 4, 2017) that: "[s]lander is a species of defamation." *Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 867 (2009)…. "If a statement falls within [California Civil Code section 46], it is considered defamatory per se." *Crowe v. County of San Diego*, 608 F.3d 406, 442 (9th Cir. 2010). *Id.*

Likewise, with regard to pleading a slander cause of action, this Court noted in *Peterson, supra.* at 17 n.3: "slander may be alleged by asserting the substance of the defamatory statement." *Toranto v. Jaffurs*, 297 F.Supp.3d 1073, 1096 (S.D. Cal.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

2018) (finding that less particularity is required when a defendant has superior knowledge of the facts, "so long as the pleading gives notice of the issues sufficient to enable preparation of a defense"). *Id.*

As to a claim for False Light, this Court wrote in *Caceres v. Bank of Am., N.A.*, No. SACV 13-542-JLS (RNBx), 2013 U.S. Dist. LEXIS 184605, at *25-26 (C.D. Cal. Oct. 28, 2013):

> "Under California law, to state a claim for the tort of false light invasion of privacy plaintiff must plead that (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, and (2) the publicity was offensive to a reasonable person." *Pacini v. Nationstar Mortg., LLC*, C 12-04606 SI, 2013 U.S. Dist. LEXIS 84215, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013) (citing *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 238-39, 228 Cal. Rptr. 215, 721 P.2d 97 (1986)). In *Media v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 U.S. Dist. LEXIS 243264, at *24-25 (C.D. Cal. May 1, 2021), with regard to the pleading standard of a False Light claim, this Court wrote: To be actionable, a plaintiff must show that "the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed."

**2. Defamation Factual Allegations.**

Plaintiffs have alleged sufficient facts in the FAC alleges as follows:

At the conclusion of their “Hell Week,” the 24 members of the CLU Softball Team held a lip-sync competition as monitored and regulated by the three members of the coaching staff. FAC ¶¶ 65, 67. A group of 5 Softball Players dressed like men with facial hair makeup and male wigs and/or hats to make the girls look like boys and performed the opening montage of the hit national network television show “Fresh Prince of Bel Air.” ¶¶ 68, 69, 70, 71. Said routine was viewed by the coaching staff, including Plaintiff Young, who is African-American, and the routine was determined to be neither offensive, nor derogatory. FAC ¶¶ 70 & 72. As such, said routine was uploaded to the infrequently visited team Instagram page. FAC ¶ 72.

Dan Kuntz, who is identified in the FAC as “Kuntz” and is described as an agent for CLU (See FAC ¶ 233), met with Plaintiffs around January 26, 2020 and informed them that a CLU staff member complained that the Softball Team engaged in a

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

performance wearing Blackface makeup. FAC ¶ 73. Plaintiffs informed Kuntz and other CLU agents that no such Blackface event occurred and that no one wore makeup on their face to resemble a black person or to make their faces black. FAC ¶ 74. At this point, Defendants were on notice that no "Blackface" event occurred and that the report that they received from only a CLU staff member was factually false. The FAC confirms that Plaintiffs are not all white. Rather they are "ethnically, racially, and sexually diverse." FAC ¶ 74. As such, Plaintiffs informed Kuntz that they "would never do anything that would make anyone feel discriminated against, ridiculed, or not included because of ethnicity, race or sexual orientation." *Id.*

Despite being armed with this knowledge in January 2020, Defendants blasted the offending February 5, 2020 email to everyone in the CLU computer system stating that a "Blackface" racist event had been perpetrated by CLU students. FAC ¶ 75, Ex. 1. The email further stated: "Those who are responsible will be held accountable." *Id*. The FAC alleges that Defendants then provided the contents of said email, along with press-release statements, to various news publications. FAC ¶ 75.

The FAC alleges the sending of said email, and subsequent publication of its contents and related facts to various news publications, was designed to harass and inflict significant harm on Plaintiffs. This is because Defendants had no legitimate need to reference any specific racist incident therein, let alone a false claim that a 'Blackface' incident had been perpetrated by any CLU student, in order to communicate that CLU does not condone racism. FAC ¶ 76. Further, stating a "Blackface" event had been performed by students was a false statement because "no one associated with CLU's Women's Softball Team has engaged in, or allowed anyone to engage in, "Blackface" as the term is and was understood by the general public who saw said email, which is also the same understanding as the term is defined by [various dictionaries]; *to wit*, 'Blackface' is the actual wearing of **<u>dark facial makeup to give the appearance of a black person</u>**." FAC ¶ 77.

Though Defendant Kimball did not expressly identify Plaintiffs as being the

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

subjects of his "Blackface" statement in said February 5 email and subsequent media interviews, it was well known in the CLU community and elsewhere that Defendants were referring to Plaintiffs. This was confirmed when a CLU student posted on social media that said email was referring to the Softball Team and demanded that action be taken against them. FAC ¶ 78. In addition, certain Plaintiffs were contacted by the media, whom apparently knew exactly who to call. FAC ¶ 182.

The fact that the CLU community knew exactly to whom the "Blackface" statement was referring was also confirmed by the CLU Newspaper that published an article on the same day titled "Student-Athletes Involved in Racist Incidents." FAC ¶ 79. Said article states that Defendant Kimball and other CLU officials were interviewed about said email and provided statements to the newspaper about said email and other facts about the so-called "Blackface" incident." *Id.* The FAC expressly alleges that Defendants also directly repeated the contents of the February 5 email to the Ventura County Star in an article entitled: "Racial Social Media Posts by Cal Lutheran Students Denounced by School Officials." The story about the offending February 5th email then made national news on February 7, 2020 when it was published in USA Today in an article that stated: "In one video, students wearing what looked to be blackface lipsynched a song." Said articles state that Defendant Kimball and/or other CLU officials were interviewed about said email and provided statements to the media about said email and other facts about the so-called "Blackface" incident *after* Defendants were expressly informed that such an incident never occurred. FAC ¶ 80.

Plaintiffs further allege they wrote a letter and handed it to Defendants on February 6, 2020 that confirmed their denial of having participated in a "Blackface" event, and that they only had makeup on their faces to resemble "facial hair." FAC ¶¶ 82, 83.

To further demonstrate to the CLU community and the public knew exactly to whom the February 5 email referred, Defendants publicly canceled Plaintiffs' Texas road trip and scheduled away games, publicly placed all of the Softball Coaches on administrative leave and ordered them to have no contact with the Softball Players, and

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

forced the Softball Players, their parents, and the coaches to attend a meeting on campus inside the public sports complex for all of the CLU fairly small Student body to see that Plaintiffs were in meetings at CLU instead of in Texas. FAC ¶¶ 85-87.

Plaintiffs allege that, at said meeting, the Softball Players informed Defendants that the readers of said email and articles knew exactly to whom CLU was referring in its "Blackface" statements because the players were receiving harassment and threats from other students and were thus in fear for their safety. FAC ¶ 80. Additionally, Defendant Kimball confirmed he had previously viewed the pictures and videos of the subject performance said email was sent, and that he saw Softball Players wearing male beard stubble – not "Blackface." *Id.* Thus, Defendants knew at the time they published said email and press statements that none of the Softball Players had put makeup on their face in order to resemble or portray black people or black culture for any reason. *Id.*

Armed with this knowledge, Defendants sent out another blast email to the entire CLU Community and to the press confirming that a "Blackface" incident had occurred. FAC ¶ 94. Plaintiffs allege Defendants "inexplicably sent out said email despite being directly and personally informed that: 1) the entire campus knew the offending February 5th email was referring to the Softball Team when it mentioned the "Blackface" incident; 2) that publicly referring to the "Blackface" incident was hurtful to those that are associated with the Softball Team (including those nineteen (19) girls who did not engage in the subject lip-sync performance); and 3) that reference to the "Blackface" incident was so racially inflammatory that it compromised the safety of those involved with the CLU Softball program." FAC ¶¶ 95-96.

The February 10, 2020 email knowingly and/or intentionally contained maliciously false facts: 1) there were no "performances in which there were exaggerated characterizations of black people and culture." Thus, Defendants knew it was false to say that students were recorded engaging in such racially inflammatory behavior; 2) Defendants knew the video and pictures in question were not viewed by "many members" of the "campus community." The view count on Instagram of the subject

social media posting was extremely low, and the Black Student Union ("BSU") confirmed that they had not known about the alleged incident or viewed the content. 3) the email falsely states: "the University used the term as it is often used by historians – comedic performances of 'blackness' by whites in exaggerated costumes and makeup. Regardless of how one views this particular definition, it does not change the nature of the underlying conduct." However, the "Blackface" definition used by CLU does not exist. It is an intentional perversion of the definition of "Minstrelsy," as noted by the single historian Dale Cockrell. See FAC fn. 23. As such, Defendants had no good faith belief in said statements that were published in said February 10 email. FAC ¶¶ 97-102.

Defendants confirmed and acknowledged those that received both the February 5 and February 10 emails knew to whom said emails were referring. FAC ¶ 103. The February 10 email directly responded to the Softball Players previously reporting that they were receiving direct threats of violence as a result of people knowing to whom the emails were referencing. FAC ¶ 103. The February 10 email referenced these direct threats to the Softball Players by stating: "we recognize that people are sharing their feelings and opinions, which some may perceive as threats. There is a difference between critiques and threats." *Id.*

Defendant McHugh orally defamed Plaintiffs by stating with knowledge of its falsity to a mob that stormed the administration building that a "Blackface" incident had, in fact, occurred. FAC ¶ 108. Likewise, Defendant Christine Paul knowingly falsely implied that the "Blackface" incident occurred, and that Plaintiffs were facing discipline, despite publishing an email to Plaintiffs days earlier confirming the contrary. FAC ¶ 109.

Plaintiffs were orally defamed by innuendo on February 13, 2020, at a meeting in the Chapel, wherein it was disclosed that the subject emails were referencing the Softball Team and their coaches. FAC ¶ 114. At said meeting, Defendant Kimball stated with knowledge of its falsity that the Softball Team was being disciplined, which confirmed through innuendo that the members of the Softball Team had put makeup on their faces

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

to portray black people and/or black culture. FAC ¶ 114. Those that heard said statements knew that Defendants were referencing the members of the Softball Program as memorialized by the comments being directed to the members of the Softball program during said meeting and thereafter. FAC ¶¶ 114-117.

Defendants "have made numerous false statements regarding Plaintiffs, which have depicted Plaintiffs in a false light in the public eye. These statements include, but are not limited to, statements that made it seem that all of the Plaintiffs had engaged in, or otherwise allowed there to be, 'blackface' performances that were orchestrated and/or promoted and/or tolerated by Plaintiffs, and that the Softball Team had collectively applied paint to their faces in order to specifically create offensive comedic caricatures of African-Americans." FAC ¶ 205.

As a direct result of the defamatory, false and/or misleading statements made by Defendants regarding Plaintiffs, Plaintiffs were shunned by their peers, and otherwise retaliated against in a manner that caused them actual damage. FAC ¶¶ 110-133. Plaintiffs alleged that the readers and recipients of the defamatory, false and/or misleading statements understood the defamatory nature thereof. FAC ¶¶ 162, 182, 183, and 184.

**3. The FAC Disposed of the Common Interest Privilege.**

To preemptively address the common interest privilege defense, Plaintiffs truthfully alleged the following: Defendants knew or should have known that their statements were false, especially since Defendants had prior notice of the falsity of the statements before they were made. FAC ¶¶ 162, 165, 186 189; Defendants failed to use reasonable care and took no reasonable steps to determine whether their statements were true or false. FAC ¶¶ 161; The common interest privilege does not apply whenever a statement is given to the media. See *Hawran v. Hixson,* 209 Cal.App.4th 256, 287 (2012) (common interest privilege does not apply to press release regarding investigation.). FAC ¶¶ 163, 187; California law holds that the common interest privilege may be abused and the protection of the privilege lost by the publisher's lack of belief, or of reasonable

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

grounds for belief, in the truth of the defamatory matter; by excessive publication; by a publication of defamatory matter for an improper purpose; or if the defamation goes beyond the group interest. See *Brewer v. Second Baptist Church*, 32 Cal.2d 791, 797 (1948); also see *Emde v. San Joaquin County Cent. Labor Council*, 23 Cal.2d 146, 154–155 (1948). FAC ¶¶ 164, 188; CLU is not entitled as a matter of law to claim that their statements are subject to the common interest privilege because Defendant CLU claims that they intentionally disseminated such information to the general news media to discuss the matter with everyone – not just the CLU community. FAC ¶ 166, 190; CLU officials made numerous statements about the purported "Blackface" incident to the news media. FAC ¶¶ 167, 168, 169, 170, 171, 191, 192, 193, 194, 195; The common interest privilege does not apply to any of the oral statements made in or about the subject February 5 or February 10 emails, the February 8, 2020 meeting, the February 13, 2020 campus open forum meeting, and/or any other avenue or venue because Defendants knew the statements therein were not true when they were made. FAC ¶¶ 172, 173, 196, 197.

**4. The Common Interest Privilege Defense Is Not Available.**

The MTD argues that the common interest privilege defense applies because CLU has an interest in communicating with its students about racism. MTD pp. 23-24. As such, Defendants argue: "the allegedly 'defamatory' statements at issue in this lawsuit were 'communications among interested persons' subject to the common interest privilege as a matter of law." MTD p. 24.

The problem with Defendants' argument is that, although Defendants argue that statements to the media can be considered subject to the common interest privilege – a position with which Plaintiffs disagree – the MTD fails to address that the allegations in the FAC expressly allege that the subject statements were knowingly and/or recklessly false. See FAC ¶¶ 162, 165, 186 189. As such, Defendants fail to proffer any argument to overcome the fact that the FAC alleges the subject statements were made with malice and are therefore not subject to the common interest privilege as a matter of law.

In *Peterson, supra.* at 22, this Court wrote:

> California Civil Code Section 47(c) provides that "[a] privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47(c). "[S]tatements made with actual malice are not privileged under § 47(c)." *Ornelos v. Am. Airlines Grp., Inc.*, No. CV 18-2031-R, 2018 U.S. Dist. LEXIS 97827, 2018 WL 2972455, at *3 (C.D. Cal. June 7, 2018))). "Actual malice is established by 'showing that the publication was motivated by hatred or ill will towards the plaintiff **or by a showing the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights**.'" *Id. Peterson v. Sanghi*, No. 8:18-cv-02000-JLS-ADS, 2019 U.S. Dist. LEXIS 68431, at *22 (C.D. Cal. Feb. 14, 2019)(emphasis added).

*Id.* Here, Plaintiffs have alleged actual malice, and thus the Court need not decide whether the statements would otherwise be protected by the privilege. Plaintiffs' FAC alleges that Defendants lacked reasonable grounds for believing the defamatory statements to be true. See FAC ¶¶ 162, 165, 186, 189. Such allegations are more than sufficient to plead that Defendants did not have reasonable grounds for believing their statements to be true.

Because malice has been properly alleged, Plaintiffs need not address Defendants' unavailing attempt to distinguish *Hawran v. Hixson*, 209 Cal.App.4th 256, 287 (2012) regarding the fact that it holds press releases to the media do not enjoy common interest protection. See *Hawran v. Hixson*, 209 Cal.App.4th at 287-88.

The fact remains that Defendants' entire common interest privilege defense, which is asserted as to nearly every claim in the FAC, is both legally and factually without merit and should have never been the basis of a motion to dismiss the FAC.

**5. Under The Circumstances, the Alleged Offending Statements Were Understood To Be "Of And Concerning" Plaintiffs.**

Contrary to the allegations of the FAC, Defendants argue that the February 5 and 10 emails were not of and concerning Players. MTD p. 24-25. However, the FAC not only alleges that the recipients of said emails knew that they were of and concerning

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Plaintiffs, but the FAC put forward proof of near simultaneous social media posts by CLU students confirming that they knew said emails were "of and concerning" Plaintiffs. As such, Defendants' argument is without merit.

As stated above, Plaintiffs alleged that, although Defendant Kimball did not expressly identify the members of the Softball Team as being the subjects of his "Blackface" statements in said February 5th email and subsequent media interviews, it was well known in the CLU community and elsewhere that said email was referring to the Softball Team. This was confirmed by a CLU student who subsequently posted on social media that he understood said email was referring to Plaintiffs and demanded that action be taken against them. FAC ¶ 78. To the extent that the recipients of the February 5th email knew that the alleged "Blackface" incident was referring to Plaintiffs, Defendants are estopped from claiming no one knew that the "Blackface" incident was referring to them.

Additionally, Plaintiffs alleged their published scheduled games were publicly canceled and that they were made to attend meetings on campus with their parents in a public sports building in front of other students when they were supposed to be in Texas. FAC ¶¶ 85, 87. Plaintiffs also alleged that they were immediately contacted by the media after the February 5th email was sent, because even the media knew exactly whom the subject email was referencing. FAC ¶ 182.

"Looking at the statements in context, and considering the totality of the circumstances," including the fact that students published on social media on February 5, 2020 that they knew said email was referring to Plaintiffs, the Court should find that the defamatory statements in the FAC refer to Plaintiffs under the circumstances. *See Isuzu Motors Ltd., v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1045 (C.D. Cal. 1998); *see also D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1290 (C.D. Cal. 2000); *Z.F. ex rel M.A.F. v. Ripon Unified Sch. Dist.*, No. 2:10-cv-00523-GEB—JFM, 2011 U.S. Dist. LEXIS 158747, 2011WL 356072, *6

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

(E.D. Cal. Feb. 2, 2011); also see *Peterson v. Sanghi*, No. 8:18-cv-02000-JLS-ADS, 2019 U.S. Dist. LEXIS 68431, at *19-20 (C.D. Cal. Feb. 14, 2019).

**6. The FAC Properly Alleges Group Libel.**

With regard to "group libel," this Court wrote in *Peterson*:

> "[t]he group libel rule applies when a group member brings a defamation suit based on statements regarding the group" and "generally bars defamation actions to which it applies." *Id.* "However, there are exceptions where the group is small and its members are easily ascertainable, or the circumstances make it reasonable to conclude that the statement refers to the individual." *Bielma v. Bostic*, Case No.: 15cv1606-MMA (BLM), 2016 U.S. Dist. LEXIS 152, 2016 WL 29624, at *18 (S.D. Cal. Jan. 4, 2016) (citing *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1188 (E.D. Cal. 2008)). "The Supreme Court of California has stated that defamatory statements referring to a group exceeding twenty-five members preclude an individual plaintiff from showing the statements relate to that individual, unless the latter exception applies." *Id.* (citing *Blatty*, 42 Cal. 3d at 1046.)
>
> …
>
> As an initial matter, the "group libel rule" does not impose a separate requirement on Plaintiffs' claims. Plaintiffs must show that Defendants' statements identified Plaintiffs by "reasonable implication," which would suffice to show that "the circumstances make it reasonable to conclude" that the statements referred to them individually. *See, e.g., Yow*, 550 F. Supp. 2d at 1189-90 (explaining group libel rule but analyzing only whether statements impliedly referred to plaintiff).

*Peterson, supra.* at *18. Here, the statements pertain to 27 Plaintiffs: Three coaches are accused by implication and inuendo that they presided over a "Blackface" event and did nothing about it; and 24 players (five of which were in the group in question, and only one of which was thought to be in blackface). Thus, the "Group Libel" exception applies.

As such, Plaintiffs' have asserted facts to plausibly state their defamation causes of action. Therefore, Defendants' MTD should be denied.

**D. PLAINTIFFS PLEAD FACTS SUFFICIENT TO STATE A CAUSE OF ACTION FOR BREACH OF CONTRACT**

Defendants move to dismiss Plaintiffs' First Cause of Action for Breach of Contract, arguing that Plaintiffs failed to "plausibly allege" the existence of a contract

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

and breach thereof. MTD pp. 16-21. Defendants' position lacks merit since the subhect Student Handbook lists numerous promissory terms and obligations itemizing the contractual relationship between CLU and it students. That handbook contains specific promissory language, thus making it distinguishable from the cases cited by Defendants.

In California, the basic legal relationship between a student and a university is generally contractual in nature. *Zumbrun v. Univ. of S. Cal.*, 25 Cal.App.3d 1, 10 (1972). While some courts have been reluctant to apply contract law to general promises or expectations, courts have not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service and fails to deliver. Courts have "uniformly held" that a contract between an educational institution and a student "confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced." *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 826 (2007). (Internal citations omitted.)

Several jurisdictions have found that a student may bring a breach of contract action against an educational institution arising out of the institution's failure to follow disciplinary procedures set forth in a student handbook. *Trznadel v. Thomas M. Cooley Law Sch.*, No. 02-76, 2003 U.S. Dist. LEXIS 9660, at *27-28 (W.D. Mich. May 16, 2003) ("Under the law of most states . . . private institutions will be required to follow provisions of a student handbook that call for certain minimal process in connection with discipline generally on a contract theory."); *see, e.g.*, *Corso v. Creighton University*, 731 F.2d 529, 533 (8th Cir. 1984); *Morehouse College, Inc. v. McGaha*, 627 S.E.2d 39, 42, 277 Ga. App. 529 (2005).

In *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 U.S. Dist. LEXIS 142066, 2010 WL 6089077, at *17 (D. Or. Dec. 3, 2010), a district court case in the 9th circuit held that a student handbook potentially constituted a contract because it contained language indicating that it established a contract, which required the student to abide by the guidelines set forth therein. *Id*. The same is alleged here. FAC ¶ 140.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Additionally, Plaintiffs have alleged substantial promissory language obligating CLU. See FAC ¶¶ 118-123, 142-145. In response, Defendants claim that there is no language in these sections, or in the entire Handbook, containing promissory language on behalf of CLU. MTD p. 18. Defendants then attach the entire Handbook to the declaration of Henry Platt as Exhibit E to further demonstrate their point. However, said Exhibit E, directly contradicts Defendants' argument as to the contents of said Handbook. Exhibit E is, on its face, chalk-full of promissory language obligating CLU to take certain actions and to be bound to its students by its non-permissive promises therein.

By way of example, in section 17.0 regarding harassment and bullying, the handbook states: **"[n]o form of harassment will be tolerated** at [CLU]." Dkt. 58-7 p. 48. Likewise, multiple promises of mandatory action on behalf of CLU are set forth in a non-permissive manner in section 18.0 under the heading "Hate Incidents and Hate Crimes." The mandatory non-permissive contractual relationship states as follows:

> Any act that has the purpose or effect of unreasonably or substantially interfering with an individual's safety and security by creating a(n) intimidating, hostile, discriminatory, or offensive educational or working environment **will not be tolerated** by the University. **California Lutheran University will respond to hate incidents** …

Dkt. 58-7 p. 50 (emphasis added). Additionally, section 18.1 of the Handbook contains non-permissive language regarding Hate Crimes. Section 18.1 states: "the University **will not tolerate any form of hate crime**." Section 18.1a further states: "any false accusation **will likewise result in disciplinary action** up to and including the expulsion/dismissal from the University." *Id.* (emphasis added).

In the section regarding Sanctions for Hate Incidents (section 18.2 of the handbook), CLU promises that: "Where the alleged offender of a hate crime or hate

incident is a student, **the matter <u>will be handled</u> in a manner consistent with the Standards of Conduct**." Dkt. 58-7 p. 51 (emphasis added).[4]

All of these aforementioned sections are referenced in the FAC. See FAC ¶¶ 118-- 120, 138-142. It is also alleged that CLU breached these promises by allowing students to harass them on social media and otherwise publicly hurl at Plaintiffs racial slurs and veiled threats affecting their safety. FAC fn 14. As such, Plaintiffs have plead facts sufficient to constitute a plausible claim for breach of contract.

### E. PLAINTIFFS HAVE SUFFICIENTLY PLEAD A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants move to dismiss the Fifth Cause of Action for Intentional Infliction of Emotional Distress based on the arguments that: (1) Plaintiffs fail to allege "outrageous

---

[4] CLU has other non-permissive contractual promises and obligations in the handbook, including: 1) return policies regarding refunds for student textbooks (Dkt. 58-7 p. 9); 2) a textbook buyback policy (*id.*); 3) an established list of CLU's "Campus Safety responsibilities" (Dkt. 58-7, p. 11); 4) disability support services, including confidentiality and compliance with the ADA (Dkt. 58-7, p. 17); 5) the timing of the completion of facilities service requests (Dkt. 58-7, p. 18); 6) CLU's obligations to assure student government adheres to CLU's policies and practices in all of its operations, and the obligation of the Vice President for Student Affairs and Dean of Students to designate advisors that "shall play an active role in meetings, trainings, projects, events, programs, etc.," and "approve all student government expenditures." (Dkt. 58-7, p. 27); 7) language mandating "[t]he Standards of Conduct shall apply to conduct that occurs on [CLU] premises, at [CLU] sponsored activities, and to off-campus conduct that adversely affects [CLU] and/or the pursuit of its objectives" (Dkt. 58-7, p. 27). Here, CLU has promised that "the Vice President for Student Affairs/Dean of Students shall decide whether the Standards of Conduct shall be applied to conduct occurring off campus on a case-by-case basis." (Dkt. 58-7, p. 28); 8) in section 6.1, CLU promised: "California Lutheran University will maintain a policy of non-discrimination for students in compliance with all current and future federal regulations." (Dkt. 58-7, p. 41); 9) the sexual harassment policy regarding CLU's obligations regarding sexual harassment complaints (Dkt. 58-7, p. 49); and 10) the entire section 37.0 of the handbook imposing contractual obligations on CLU regarding sexual misconduct hearings. (Dkt. 58-7, pp. 61-79).

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

conduct" or "severe emotional suffering." (MTD pp. 26-28); and (2) the common interest privilege immunizes Defendants (MTD pp. 28-29).

Defendants' arguments fail because, as stated above: 1) the common interest privilege does not apply since malice has been sufficiently pled; 2) plaintiffs have alleged extreme and outrageous conduct that should never be tolerated by a decent society; and 3) extreme emotional distress has been properly alleged.

To plead a claim for intentional infliction of emotional distress, a plaintiff must plead facts establishing: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Conduct must be so "extreme as to exceed all bounds of that usually tolerated in a civilized society." *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1259 (2005) (Internal citations omitted).

This Court has held that to prevail on an Intentional Infliction of Emotional Distress Claim, Plaintiffs must prove that Defendants engaged in outrageous conduct with the intent to cause harm, and that Plaintiffs suffered severe emotional distress as a result. *Perkins v. City of Anaheim*, No. 8:19-cv-00315-JLS-JDE, 2021 U.S. Dist. LEXIS 166024, at *57 (C.D. Cal. Apr. 26, 2021)(Internal citations omitted.) The California Supreme Court has held that evidence of "…severe headache, insomnia, tension, and anxiety was sufficient to support a claim for intentional inflict of emotional distress. See *Sanchez-Corea v. Bank of America*, 38 Cal.3d 892, 909 (1985). There appears to be no set standard regarding the extent of emotional distress sufficient to support a claim for intentional infliction of emotional distress. See, e.g. *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452, 477 (2007).

As alleged in the FAC, Defendants engaged in a protracted campaign to publicly malign the Softball Team and its coaches, all for an improper purpose. FAC ¶ 124-128.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

The FAC alleges that Defendants called Plaintiffs into meetings on campus in front of other students and other public forums to subject them to public scorn for something Defendants knew Plaintiffs did not do. FAC ¶ 85-92. This conduct goes beyond "mere indignities" or "insults," and constitutes reckless disregard of the probability of causing Plaintiffs to suffer severe emotional distress. FAC ¶ 85-92.

The FAC alleges that the Softball Team[5] experienced emotional distress sufficient to state a claim. The FAC specifically includes representative statements from members of the Softball team detailing the severe distress caused by the fallout from the false "Blackface" accusations, including, but not limited to: "constant anxiety"; "panic"; insomnia; loneliness; "emotionally weak"; "emotionally unstable"; "nausea"; "unable to focus"; "fear"; "emotionally drained"; "emotional"; mental trauma"; "crippling anxiety"; "intense anxiety"; "night terrors"; "deep sadness"; lack of motivation," FAC ¶ 127. The FAC alleges that members of the Softball Team asked Defendants for treatment for their PTSD from mental health professionals, which requests were denied. FAC ¶ 126-27. The FAC also alleges that most of the Softball Players stated that they are now on medication for their depression, anxiety, and PTSD, and that some otherwise submitted themselves to the care of medical professionals as a direct result of Defendants' conduct. FAC ¶ 128.

**F. PLAINTIFFS PLEAD FACTS SUFFICIENT TO STATE CAUSES OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE**

---

[5] Defendants cite the California Supreme Court's decision in *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 989 (1993) for the proposition that each Plaintiff must separately plead emotional distress symptoms. However, *Potter* is a case regarding general standing, holding that: "recovery for fear of cancer damages based solely upon a plaintiff's knowledge that his or her risk of cancer has been significantly increased by a toxic exposure, without requiring any further showing of the actual likelihood of the feared cancer due to the exposure, provides no protection against unreasonable claims based upon wholly speculative fears." *Id* at 989-990.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Defendants move to dismiss Plaintiffs' Sixth and Seventh Causes of Action for Negligent Infliction of Emotional Distress and Negligence, basing their arguments only upon a failure to allege a duty of care. See MTD pp. 29-30.

Defendants sidestep the ultimate issues herein by merely citing to case law regarding no duty of care for universities in the context of avoiding emotionally harming students in the deprivation of lost educational opportunities for students with learning disabilities – issues that are not present here. See MTD pp. 29-30, citing *Rogers v. W. Univ. Health Sciences*, No. CV 16—7681-MWF (AGRx) 2017 U.S. Dist. LEXIS 233016 (C.D. Cal. Jan. 17, 2017); *Ernest v. Univ. of Phoenix*, 2010 U.S. Dist. LEXIS 153860, *1 (2010). Defendants' reliance on *Rogers and Ernest* is misplaced. In both cases, the Court found that there was no general duty of care to provide Plaintiffs with educational accommodations for "learning disabilities," which are not at issue here. *Id*.

Defendants further argue that Plaintiffs fail to allege a breach of a duty, citing *Havensight Capital LLC v. Nike, Inc*., 2014 U.S. Dist. LEXIS 196123. In *Havensight* at *5, the court held that a negligence claim based on the allegation that Defendant "could have done a more thorough search of the web…" was insufficient. Defendants ignore the notice pleading standard of Fed. R. Civ. Proc. Rule 8, and ironically cite to FAC ¶ 220, 222, 227, 229 – starting at *page 63* of the FAC - for the proposition that there are "insufficient facts" to plead any negligence under any theory. MTD p. 30.

Here, CLU's breach of their legal duty arose from its special relationship with its students. In *Regents of University of California v. Sup. Ct.*, 4 Cal.5th 607 (2018) ("*Regents*"), the California Supreme Court found that the relationship between universities and students is a special one that gives rise to tort liability if the University fails to protect the students from harm:

> Colleges provide academic courses in exchange for a fee, but a college is far more to its students than a business. Residential colleges provide living spaces, but they are more than mere landlords. Along with educational services, colleges provide students social, athletic, and cultural opportunities.

> Regardless of the campus layout, colleges provide a discrete community for their students. For many students, college is the first time they have lived away from home. Although college students may no longer be minors under the law, they may still be learning how to navigate the world as adults. They are dependent on their college communities to provide structure, guidance, and a safe learning environment.
>
> …
>
> Colleges, in turn, have superior control over the environment and the ability to protect students. Colleges impose a variety of rules and restrictions, both in the classroom and across campus, to maintain a safe and orderly environment. They often employ resident advisers, mental health counselors, and campus police. They can monitor and discipline students when necessary. "While its primary function is to foster intellectual development through an academic curriculum, the institution is involved in all aspects of student life. Through its providing of food, housing, security, and a range of extracurricular activities the modern university provides a setting in which every aspect of student life is, to some degree, university guided." Finally, in a broader sense, college administrators and educators "have the power to influence [students'] values, their consciousness, their relationships, and their behaviors.
>
> The college-student relationship thus fits within the paradigm of a special relationship. Students are comparatively vulnerable and dependent on their colleges for a safe environment. Colleges have a superior ability to provide that safety with respect to activities they sponsor or facilities they control. Moreover, this relationship is bounded by the student's enrollment status. Colleges do not have a special relationship with the world at large, but only with their enrolled students. The population is limited, as is the relationship's duration."

*Regents*, 4 Cal.5th at 624-25 (internal citations omitted). The *Regents* Court further explained that the special relationship between colleges and students gives rise to tort liability when a college fails to protect its students from harm:

> [T]here is generally no duty to protect others from the conduct of third parties. The "special relationship" doctrine is an exception to this general rule. Accordingly, as a consequence of the special relationship recognized here, colleges generally owe a duty to use reasonable care to protect their students

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

> from foreseeable acts of violence in the classroom or during curricular activities." (citations omitted).

*Id.* at 627. Moreover, the decision to find liability for negligence within this special relationship turns on whether the risk to Plaintiffs was foreseeable:

> "The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care … is whether the injury in question was foreseeable. In examining foreseeability, the court's task … is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed …" *Id.* at 629.

*Id.* at 629. Finally, *Regents* held that the application of tort liability in the context of a special relationship comes from the closeness of the connection between the defendant's conduct and the injury suffered:

> "Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be deemed foreseeable when circumstances put a school on notice that a student is at risk to commit violence against other students, the school's failure to take appropriate steps to warn or protect foreseeable victims can be causally connected to injuries the victims suffer as a result of that violence."

*Id.* at 629 (Internal citations omitted). The allegations in the FAC are sufficient to state a claim for breach of these legal duties arising out of the special relationship between CLU and Plaintiffs. First, the risk to Plaintiffs was foreseeable. Here it is alleged that CLU created the harm to the students. See, e.g. FAC ¶ 76. It unlawfully (see *infra*. FERPA discussion), publicly disclosed the situation, and in such a manner that everyone knew who they were talking about. See, e.g. FAC ¶ 194-196. Not only was this harm foreseeable, but it is alleged that after Defendants were informed that they were causing harm, CLU wantonly and more egregiously continued to engage in such conduct. See FAC ¶ 197. It is alleged that CLU acknowledged the physical threats and promised extra

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

security (See FAC ¶ 112 regarding CLU Security failing to prevent a burglary of Plaintiffs' locker room), and that the Thousand Oaks Police Department determined on its own that the risk of harm was so patently foreseeable that they deployed police officers to guard Plaintiffs during practices. FAC ¶ 111.

Plaintiffs have more than adequately plead their negligence claims based upon a special relationship borne out of California Law between CLU and the Students. Defendants MTD ignores this precedent in an effort to avoid liability.

To the extent that Defendants argue that the negligence claims are substantively insufficient, this is incorrect and contrary to this Court's prior opinions. This Court has previously found that: "[w]here a plaintiff can demonstrate a physical injury caused by the defendant's negligence, anxiety specifically due to a reasonable fear of a future harm attributable to the injury may also constitute a proper element of damages." *Walter v. W. Indus.*, No. SACV 13-1503 JLS (ANx), 2013 U.S. Dist. LEXIS 198465, at *6-7 (C.D. Cal. Dec. 10, 2013) citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 981 (1993) (citations omitted).

Anxiety about future harm has been more than sufficiently alleged here. As such, Defendants' MTD should be denied.

### G. PLAINTIFF DAY HAS PLED FACTS SUFFICIENT TO STATE A CAUSE OF ACTION FOR RETALIATION

Defendants move to dismiss Plaintiff Day's Ninth Cause of Action for Retaliation based on a misreading of the cause of action, and an avoidance of a citation to *Government Code* §12940(h). Defendants start from the faulty premise that there is no "causal nexus" between Plaintiff Day's Title IX report and CLU's response to the racially-charged false "Blackface" accusations. See MTD p. 32.

However, such retaliatory conduct is actionable. As, this Court has noted: "[i]n order to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

and the employer's action." *Hooker v. Parker-Hannifin Corp*., 2012 U.S. Dist. LEXIS 49144, *6-7 citing *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005) (internal citations omitted). Additionally, with respect to retaliation under FEHA, it is an unlawful employment practice for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden… *or* because the person has filed a complaint, testified, or assisted in any proceeding" under FEHA. See *Cal. Gov. Code* § 12940(h).[6]

The Ninth Cause of Action is premised upon retaliation based upon race and gender. Plaintiff Day has alleged she has been a victim of retaliation since questioning the potentially unlawful Title IX practices at CLU, in addition to other NCAA violations, to CLU's agents including, but not limited to: Kuntz (her direct supervisor, CLU's athletic director), Defendant McHugh and Defendant Kimball.[7] (retaliation based on gender). FAC ¶ 53, 233, 243. The Retaliation Defendants were dismissive of Coach Day's questioning and ultimately publicly punished Coach Day by putting her on administrative leave and banning her from having contact with her players while falsely accusing the Softball Team of engaging in a "Blackface" incident, and thereby accusing Coach Day of mismanagement of her Softball program by allowing such a "Blackface" incident to occur, and then refusing to clear her name or employment file when it was ultimately determined that no such "Blackface" incident occurred as promulgated by CLU (retaliation based on race). FAC ¶ 243. Thereafter, CLU excluded Coach Day from department meetings, and continues to this day to exclude Coach Day from said meetings. *Id*.

Plaintiffs have alleged that CLU's conduct was in direct retaliation to Coach Day's

---

[6]*Government Code* § 12940(h) does not require Plaintiff to file a lawsuit, but as explained below, Plaintiff Day has done so and has been further retaliated against for doing so.

[7] These individuals were/are responsible employees who had the ability to respond to Coach Day's report. FAC ¶ 233.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

NCAA and Title IX complaints. *Id*. Plaintiff Day had a reasonable belief that Defendants were violating state and federal laws, and questioned those violations. *Id*. Plaintiffs have alleged that Defendants retaliated against Coach Day by harassing and threatening to terminate her because she opposed the discriminatory practices. FAC ¶ 244. Plaintiffs have alleged that, following Coach Day's questions, Defendants engaged in conduct that materially and adversely affected the terms and conditions of Coach Day's work environment. FAC ¶ 246.

Plaintiffs have alleged that Coach Day's questions were, in part, a motivating reason for Defendants to fabricate a false narrative regarding the "Blackface" incident, and/or a motivating reason for the Retaliation Defendants to not handle the "Blackface" in a more private, responsible and professional manner. FAC ¶ 243.

Contrary to Defendants' assertions in their Motion, Plaintiffs have alleged that the decision to retaliate against Coach Day and to create a false narrative regarding the Softball Team was in close nexus to Coach Day's questioning of Defendants' potentially unlawful Title IX practices and within less than two weeks after the publishing of the Van Dermyden Law Corporation summary of its facially less-than-thorough investigation was published regarding a limited amount of Coach Day's prior Ttitle IX complaints. FAC ¶ 246, 254.

Plaintiffs have also alleged that the Defendants, within days of filing this lawsuit, retaliated against Coach Day by making knowingly false and misleading statements to the news media concerning Coach Day in order to publicly malign her and cause her embarrassment. FAC ¶ 249-251, 257, 258. As such, there is the retaliatory conduct of punishing Coach Day *right after* she reported the potential Title IX inequities to this Court. FAC, ¶ 243. Further, there is the retaliatory conduct of publicly punishing Coach Day by falsely accusing the Softball Team of engaging in a "Blackface" incident, and thereby openly accusing Coach Day of mismanagement of her Softball program by allowing such a racist "Blackface" incident to occur at CLU by publicly placing Coach Day on administrative leave after the incident, and then refusing to clear her name or

employment file when it was ultimately determined that no such "Blackface" incident occurred as promulgated by CLU. *Id.* Finally there was the retaliatory conduct of excluding Coach Day from department meetings in direct response to Coach Day's reports of potential NCAA and Title IX violations. *Id*.

Because Plaintiff Day has established that Defendants knew of the protected activity and there was close temporal proximity between the protected activity and the retaliation (See MTD p. 33), Defendants' Motion to Dismiss must be denied.

### H. THE COACHES HAVE PLEAD SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR HOSTILE WORK ENVIRONMENT

Defendants move to dismiss the Tenth Cause of Action for Hostile Work Environment on two bases: (1) That Plaintiffs fail to allege the specific provision of FEHA on which they rely for their FAC; and (2) That Plaintiffs fail to allege that the coaches were members of a protected class (i.e. race[8] or gender). See MTD p. 33.

Defendants' argument again is in bad faith. Plaintiffs' Tenth Cause of Action is premised largely upon a violation of *Government Code* 12923(b),[9] which states, "A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." This is part of FEHA, which is codified from *Government Code* §§12900 through 12996. *Government Code* § 12923(a) states: The purpose of these laws is to provide *all* Californians with an equal opportunity to succeed in the workplace and should be applied accordingly by the courts. The Legislature hereby declares that harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or

[8] These arguments are made in bad faith as Plaintiffs have alleged that Coach Young is African-American, and Plaintiffs have alleged that they discriminated against her based on a false racial event nonetheless.

[9] See FAC, ¶ 265.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

intrudes upon its victim, so as to disrupt the victim's *emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."* (Emphasis added.)

The Softball Coaches have alleged sufficient facts to constitute a cause of action for hostile work environment. Plaintiffs have alleged that Defendants caused a hostile work environment for the coaches and caused the coaches to suffer damages resulting from being directly and/or indirectly publicly ridiculed in front of students and peers, being publicly placed on administrative leave, being made to feel anxious from the threats of physical harm being made to members of the CLU Softball Program, and Defendants refusing to provide any additional security to Plaintiffs during practice for over a week. See FAC, ¶ 130. These hostile work environment claims all arose out of the false "Blackface" event, which is a racially charged event.[10] FAC ¶ 129.

Plaintiffs have alleged that the aforementioned conduct (including conduct directed at Coaches Day, Young, and Gluckman) caused the Coaches to perceive their work environment as intimidating, hostile, abusive or offensive, and created a hostile work environment based on their perceived race and/or ethnicity and/or in retaliation for exercising a lawful right. See FAC, ¶ 266. Plaintiffs also allege that complaints and/or information about much of the harassing conduct were made to Defendants CLU, Kimball, Doherty, McHugh, and Roes 161-170 (Collectively "Hostile Work Environment Defendants"). However, Defendants failed to conduct a prompt, timely, and thorough investigation into the allegations. After the complaints, the harassment continued in similar forms and resulted in new forms of harassment and discrimination.

---

[10] The premise of this entire case is the concept that the individual Defendants, who are all-white members of CLU's administration (See e.g., FAC ¶¶ 87, 113), punished Young (a black woman) for openly challenging Defendants' use and application of the racial term "Blackface." Likewise, the all-white CLU individual Defendants punished Day and Gluckman for agreeing with and supporting Young regarding CLU's incorrect use and application of the term "Blackface," and otherwise challenging that the all-white CLU Defendants would know better than a black woman what "Blackface" means.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

See FAC, ¶ 267.

Accordingly, the Coaches have stated a claim for Hostile Work Environment.

## I. PLAINTIFFS YOUNG AND GLUCKMAN PLEAD SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR CONSTRUCTIVE TERMINATION

Defendants move to dismiss the Eleventh Cause of Action for Constructive Termination of Plaintiffs Young and Gluckman, arguing that there is no protected class or causal link between the constructive termination and protected status. See MTD p. 35. This argument is misguided.

To establish constructive discharge under California law, an employee must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Oluvic v. Azusa Pac. Univ.*, 2019 U.S. Dist. LEXIS 26268, *14, citing *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994), 876 P.2d 1022, 32 Cal.Rptr.2d 223. California Law adds a requirement of fundamental public policy. A plaintiff must prove that the dismissal violated policy that is: (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Id.* at 1256. A fundamental public policy against harassment in the workplace is embodied in *Government Code* § 12940.

Notably, Defendants finally admit that Plaintiffs have alleged that Plaintiff Young is African-American - though they conveniently ignored this allegation for purposes of attacking the Hostile Work Environment cause of action. See MTD p. 35.

In any event, the allegations in the FAC are sufficient to state a claim for constructive termination under California Law. Plaintiffs have alleged that Defendants knowingly created an intolerable work environment that ultimately compelled them to resign. FAC ¶¶ 272-275. Coaches Young Gluckman have alleged that they were constructively terminated at the end of the 2020 Softball Season after being publicly

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

defamed, harassed, and embarrassed by CLU and its agents at the school, within the community, and on a national level related to their part in a racist event that simply did not happen. FAC ¶ 274. Coach Young and Gluckman were publicly placed on administrative leave regarding said fabricated racist event, despite the fact that CLU was in possession of evidence that no such event took place under said Coaches' supervision. *Id*. Coach Young and Gluckman were placed on administrative leave on or about February 8, 2020, which is the same day Defendant Kimball was recorded saying that the pictures of the Softball Team show that few players in question only had makeup on their faces resembling male facial hair stubble, and that there was no racial intent to their performances. *Id*. Despite this admission, CLU wrongfully placed Coach Young and Gluckman on administrative leave for public relations purposes and attempted to make them patsies for the false narrative CLU was attempting to push regarding the "Blackface" incident. *Id*. The FAC alleges that, but for this conduct, Coaches Young and Gluckman would more than likely still be at CLU. FAC ¶ 275. Thus, Plaintiffs' sufficiently plead a claim for constructive termination under California Law.

**J. THE PAGA CLAIM IS SUFFICIENTLY PLED**

Defendants argue that Coach Day did not comply with the statutory prerequisites for filing a claim under the Private Attorney General Act ("PAGA"), stating the notice to the LWDA (Platt Decl., Ex. F, Dkt 58-8) provides "no detail" about aggrieved employees. See MTD p. 37. No other challenges to this claim have been made in Defendants' MTD. Defendants' argument is unsupported by the facts and the case law cited by Defendants.

In *Khan v. Dunn-Edwards*, 19 Cal.App.5th 804 (2018), a case cited by Defendants, the Court did not permit the PAGA claim to proceed because the Plaintiff gave the LWDA notice of PAGA claims applicable only to himself. See *Id.* at 809-10. The *Khan* Court explained the administrative exhaustion requirement as follows:

> "Before bringing a PAGA claim, a plaintiff must comply with administrative procedures outlined in section 2699.3, requiring notice to the [LWDA] … The evident purpose of the notice requirement is to afford the relevant state agency, the [LWDA], the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations. Notice to the employer serves the purpose of allowing the employer to submit a response to the agency (see Lab. Code, § 2699.3, subd. (a)(1)(B)), again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation. [. . .]
>
> Because his notice expressly applied only to him, it failed to give the Labor and Workforce Development Agency an adequate opportunity to decide whether to allocate resources to investigate Khan's representative action. Because Khan referred only to himself, the agency may have determined that no investigation was warranted.
>
> Additionally, the notice failed to provide Dunn-Edwards with an adequate opportunity to respond to the agency since the notice suggested only an individual violation.

*Id.* at 809-10 (2018). Defendants misquote *Khan*, stating that "the failure to state with particularity on whose behalf an employee proposes to bring a PAGA claim is a defect that requires dismissal." See MTD p. 36, citing *Khan* at 810. *Khan* says no such thing. Instead, what the *Khan* Court stated at page 810 is that a notice referring to "employees" and "employees' wage statements" was sufficient, and a notice with two aggrieved employees was sufficient because, in both cases, the notices sufficiently suggested claims on behalf of multiple employees. See *Id.* at 810.

The Parties are in agreement that *Elias v. Spotify United States*, 2020 U.S. Dist. LEXIS 258833, *14 stands for the proposition that a plaintiff need not name the aggrieved employees. However, Defendants ask that this Court ignore the actual contents of *Elias*. In *Elias*, the Court held that adequate notice was provided when the letter contained sufficient information by which to identify the aggrieved group, *to wit*, identifying the statutes and wage orders allegedly violated and the relevant facts relating to the aggrieved employees to provide both the LWDA and the employer with adequate

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

notice of the violations pursuant to the mandates of Labor Code § 2699. *Id*.

Similarly here, Plaintiff Day has adequately exhausted her administrative remedies by sending a letter on behalf of herself and other aggrieved employees for violation of Labor Code sections 221-224, 226, and 2802, all of which are actionable under PAGA. Lab. Code § 2699.5. See Dkt. 58-8 Ex. F. The letter states both the legal and factual basis for the PAGA claims, which are not limited to Plaintiff Day. The basic premise of the claim is that that CLU placed donations to the University in the pre-tax portion of Plaintiff's and other employees' pay stubs, in violation of both state and federal tax mandates, and in violation of Labor sections 221-224. Regardless of whether Plaintiff and other employees authorized such an ill-advised withholding, any such pre-tax charge is prohibited. *Id*. Defendant CLU has access to its own employment records and is easily able to identify both the violation and the aggrieved employees. As such, Plaintiff Day has properly pled a sufficient PAGA claim.

### K. PLAINTIFFS SUFFICIENTLY PLEAD A CAUSE OF ACTION UNDER BUSINESS AND PROFESSIONS CODE § 17200

Defendants move to dismiss Plaintiff's Thirteenth Cause of Action for Violation of *Business & Professions Code* § 17200 on the basis that Plaintiffs have not alleged a sufficient economic injury to confer standing. In support of their argument, Defendants cite cases such as *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1049 (holding no economic standing for Plaintiff for charges for texts sent by Defendants when Plaintiff paid for an unlimited text messaging plan).

While Defendants cite *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011), Defendants fail to provide the Court with a full cite from the case as to the definition of "injury in fact." In *Kwikset*, the Court restated the rule that a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property. The *Kwikset* Court held that there are "innumerable ways in which economic injury from

unfair competition may be shown." *Id.* at 323. At the pleading stage[11], general factual allegations of injury resulting from the defendant's conduct may suffice, because on "a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 327, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs have alleged facts sufficient to state an economic injury. The FAC alleges that the members of the Softball Team were students at California Lutheran. FAC ¶¶ 11-12. This relationship was contractual in nature, as the students paid significant tuition and expected to receive certain benefits under the bargain in exchange for the fees they paid. FAC at ¶ 290. As for the coaches, they have pled economic loss in the form of compensation and donations. *Id.*

**L. DEFENDANTS ANTI-SLAPP MOTION SHOULD BE DENIED AS FRIVILOUS**

Defendants have filed an Anti-SLAPP motion as to the following claims: Breach of Contract (Count 1), Slander (Count 2), Libel (Count 3), False Light (Count 4), Intentional Infliction of Emotional Distress (Count 5), Negligent Infliction of Emotional Distress (Count 6), Negligence (7), and violation of Business and Professions Code § 17200 (Count 13) based solely on the sufficiency of the pleadings in the FAC. However, Defendants' Anti-SLAPP Motion is frivolous, as the injurious activity that formulates each count does not arise from *valid* constitutional activity. Further, as set forth above, all of the claims are legally sufficient.

**1. Defendants Failed To Meet Their Burden Under The First Prong.**

As stated by this Court in *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar. 23, 2020):

[11] Defendants' MTD contains misplaced cites to *Kwikset* that do not apply to the pleading stage. See e.g., MTD p. 38, citing *Kwikset* for the proposition that a Plaintiff needs to show a "personal, individual loss." However, *Kwikset* states that, "If a party has alleged ***or proven*** a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged *or proven* injury in fact. *Kwikset Corp. v. Superior Court*, 51 Cal.4th at 325.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

> "A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must "make an initial prima facie showing that the plaintiff's suit arises from an act [by the defendant] in furtherance of the defendant's rights of petition or free speech." *Id.* (citation omitted). While California's anti-SLAPP Statute must be read broadly, the California Supreme Court has recognized that the "'arising from' requirement is not always easily met.'"
>
> …
>
> "[T]he mere fact [that a claim] was filed after protected activity took place does not mean it arose from that activity." *Id.*; *see also City of Cotati v. Cashman*, 29 Cal. 4th 69, 76-77, 124 Cal. Rptr. 2d 519, 52 P.3d 695 (2002). Instead, the Court's focus is on "the principal [sic] thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims." *Castleman v. Sagaser*, 216 Cal. App. 4th 481, 490-91, 156 Cal. Rptr. 3d 492 (2013) (citing *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264, 1272, 99 Cal. Rptr. 3d 805 (2009)).
>
> …
>
> "Anti-SLAPP motions are hybrids of motions to dismiss and motions for summary judgment." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 836 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446, 203 L. Ed. 2d 681 (2019) (Gould, J., concurring). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Id.* at 834.

*Id.* at *8-10. For purposes of establishing the first prong of the Anti-SLAPP analysis, a claim arises from protected activity when that activity underlies or forms the basis for the claim. *Park v. Board of Trustees of California State University*, 2 Cal.5th 1057, 1062 (2017) (finding no Anti-SLAPP protection).

Defendants first fail to satisfy their burden as to the breach of contract claim. The breach of contract claim does not arise out of protected speech or activity on behalf of CLU. Rather, the injurious acts in the breach of contract claim is CLU's refusal to adhere

to their contractual obligations to take action to protect its students from harm and properly investigate and discipline those that caused Plaintiffs to suffer harassment, threats of violence, and other racially motivated hate incidents. FAC ¶¶ 142-150.

Second, as to the remaining claims regarding the Softball Players, Defendants' conduct is alleged to be unlawful on its face. As such, Defendants are not entitled to Anti-SLAPP protection as a matter of law.

Even if the acts alleged in the complaint are done in furtherance of the constitutional rights of free speech or petition for redress of grievances in connection with a public issue, if those acts are themselves illegal, Defendants are not entitled to Anti-SLAPP protection because the Plaintiffs' lawsuit must be brought primarily to chill a *valid* exercise of defendant's constitutional rights. *Towner v. County of Ventura*, 63 Cal.App.5th 761, 772 (2021).

Here, the Family Educational Rights and Privacy Act ("FERPA") prohibits Defendants from engaging in speech that discloses a student's personally identifiable information or records, including any potential investigation and discipline, without the express consent from the student or their parent (if the student is a minor). See 20 U.S.C. § 1232g. None of FERPA's exceptions apply in this case. See 20 U.S.C. 1232g(a)(5)(A), (b), (h), (i), & (j).

Although it is true that Defendants are generally free to issue statements regarding the topic of racism, the FAC alleges that Defendants are legally prohibited from making any statements about the subject "Blackface" event, as to do so would be a FERPA violation under the circumstances at issue. FAC ¶¶ 159, 186. To be certain, the FAC alleges that recipients of said "Blackface" statements knew exactly to whom they referred. FAC ¶¶ 78, 150. Further, any mention of or reference to said alleged incident discloses the School's investigations, findings and disciplinary decisions as set forth in the records of said students. FAC ¶ 159, 186. See 20 USC § 1232g. As such, all of Defendants' comments that mention or refer to the term "Blackface" in this case constitutes a FERPA violation and is therefore not a *valid* exercise of Defendants'

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

constitutional rights. Therefore, Defendants cannot meet the first prong of the Anti-SLAPP analysis as to the Softball Players as a matter of law.

Third, Defendants cannot satisfy their burden as to the Coaches, as the claims against them arise out of the retaliation, hostile work environment and constructive termination conduct: not protected activity that is essentially evidence of such wrongful conduct.

Specifically, in *Park v. Board of Trustees of California State University,* 2 Cal.5th 1057, 1062 (2017), the California Supreme Court stated:

> In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity. Prelitigation communications or prior litigation may provide evidentiary support for the complaint without being a basis of liability. An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity itself.

*Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal.5th 1057, 1065 (2017); citing *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1215. In this case, all of Defendants' alleged public statements as they pertain to the Coaches are set forth as the evidence of liability for the actual conduct of retaliation, creating a hostile work environment, and constructive termination.

Finally, Defendants have failed to meet their first prong obligations with regard to the non-protected activity alleged in each claim, which otherwise must be disregarded by this Court. As stated by the California Supreme Court:

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, **the unprotected activity is disregarded at this stage**."

*Baral v. Schnitt*, 1 Cal.5th 376, 396, 205 (2016). Here, every cause of action is based, either in part or in whole, on acts that are not protected activity (e.g., punitive meeting attendance, denial of mental health help, breach of contract provisions, failure to protect,

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

canceling road trip, public shaming, retaliation, hostile work environment, constructive termination, administrative leave, etc.). As such, the Anti-SLAPP fails as a matter of law as to those claims and otherwise does not apply to the entirety of any claim.

Thus, for the foregoing reasons, Defendants Anti-SLAPP motion should be denied for Defendants failure to satisfy their first prong obligations.

**2. Plaintiffs Have Satisfied The Second Prong of the Anti-SLAPP Analysis.**

In *TP Link United States Corp. v. Careful Shopper LLC,* No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *10 (C.D. Cal. Mar. 23, 2020), this Court stated: "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.

Here, Defendants have only attacked the legal sufficiency as to certain of Plaintiffs' claims. However, as stated above, Plaintiffs have alleged plausible claims, and the FAC is therefore legally sufficient. As such, Defendants' Anti-SLAPP motion should be denied as frivolous, and Plaintiffs should be allowed to seek remuneration for having to otherwise address the Anti-SLAPP in addition to Defendants' other requested relief.

**M. PLAINTIFFS' PUNITIVE DAMAGE PRAYER IS SUFFICIENT**

Defendants move to dismiss Plaintiffs' prayers for punitive damages on the basis that Plaintiffs have insufficiently alleged "malice, fraud, or oppression" as required by Civil Code § 3294. MTD p. 42. Defendants arguments lack merit.

The cases cited in Defendants' MTD pertain to an entirely different issue. In *Swenson v. Amtrak*, No. 2:14-CV-02629-KJM-CMK, 2015 U.S. Dist. LEXIS 144459, at *17 (E.D. Cal. Oct. 22, 2015), the Court decided that punitive damages were not available because it was a breach of contract case. All of Defendants' other authorities are inapposite because those cases decided other types of motions, rather than testing the legal sufficiency of allegations. e.g., *Eastwood v. Sera Labs*, 2021 U.S. Dist. LEXIS 192346 (deciding a motion for summary judgment); *Weinstein v. HBE Corp*., No. 2:13-cv-04643-CAS(JCx), 2014 U.S. Dist. LEXIS 156210, at *28 (C.D. Cal. Nov. 3, 2014)

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

(motion for summary judgment); *EEOC v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1286 (E.D. Cal. 2009) (motion for summary adjudication); *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1083 (S.D. Cal. 2020) (motion for summary judgment).

Contrary to the citations set forth by Defendants, malice for punitive damages can be alleged generally. Specifically, this Court has previously ruled that: "Under Rule 9(b), this is sufficient, as 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" See *Baker v. Rodriguez*, No. SACV 11-138-JST (PJWx), 2012 U.S. Dist. LEXIS 5480, at *23-24 (C.D. Cal. Jan. 17, 2012)(finding it premature to strike or dismiss punitive damages in the pleading stage on the basis that Plaintiff is not entitled to such an award.)

Throughout the FAC, Plaintiffs allege that Defendants acted with intent to cause injury to Plaintiffs, and to create cruel and unjust hardship for them. The FAC alleges countless times throughout that Defendants' conduct was willful and malicious. See, e.g., FAC at ¶¶ 1-5, 76, 95, 97, 98, 160-61, 164-68, 198, 207, 218, 260-61. As an aside, it is shocking to the extreme that any university would act in the manner that is alleged herein, or otherwise seek to damage its own students for such little gain. But that is exactly what Defendants did, so here we are.

Thus, a request for punitive damages has been sufficiently pled.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. To the extent the Court finds any defect with claims in the FAC, Plaintiffs respectfully request leave to amend to address same.

Dated: March 30, 2022

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**

/s/ Michael J. Saltz
Michael J. Saltz, Esq.
Attorneys for Plaintiffs