Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                                         Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|        V.R. Vallery        |         N/A        |
|:--------------------------:|:------------------:|
| Deputy Clerk               | Court Reporter     |

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

              Not Present                                            Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING IN PART AND
                              DENYING IN PART MOTION TO DISMISS FIRST
                              AMENDED COMPLAINT (Doc. 58)**

  Before the Court is a Motion to Dismiss First Amended Complaint filed by Defendants California Lutheran University, Chris Kimball, Melissa Maxwell-Doherty, Jim McHugh, and Karin Grennan.  (Mot., Doc. 58; Mem., Doc. 58-1.)  Plaintiffs opposed, and Defendants replied.  (Opp., Doc. 68; Reply, Doc. 69.)  After oral argument and review of the pleadings and the parties' briefs, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

**I.    BACKGROUND**

  On December 31, 2021, Plaintiffs filed a First Amended Complaint ("FAC") against Defendants.  (FAC, Doc. 41.)  Named Plaintiffs are three coaches of the softball team at California Lutheran University ("CLU"), and the 24 Jane Doe Plaintiffs[1] are

---

[1] The Court recently ordered that Plaintiffs use their actual names (Order, Doc. 76), and Plaintiffs filed a Second Amended Complaint ("SAC") that identifies Plaintiffs Jane Does 1-24 in the FAC by name (Doc. 78).  Because these papers were filed before the Court's Order and the filing of the SAC, the Court will continue to reference Plaintiffs as they are referenced in the papers.  The FAC and the SAC are otherwise identical, and the Court issued an order deferring Defendants' obligation to plead, move, or otherwise respond to the SAC until after the Court's ruling on the instant Rule 12 motion (Doc. 83).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                        Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

female athletes who were members of the CLU softball team during the 2019-2020 academic year (the "Softball Team").  (*Id.* ¶¶ 1-13, 68-71.)

In their FAC, Plaintiffs allege that in January 2020, the Softball Team "held a team-bonding lip-sync event with makeup and costumes."  (*Id.* ¶ 4.)  Jane Does 1-5 decided to perform *The Fresh Prince of Bel-Air* theme song and "dress like 'dudes' in a 'Boy Band' with the style of Hip-Hop clothing worn by 'Boy Bands.'"  (*Id.* ¶ 68.)  They also "decided to add hats or wigs to hide their feminine hairstyles, and makeup to portray facial hair to make their faces appear more masculine."  (*Id.* ¶ 68.)  Two of the girls wore "dirty-blond 'Napoleon Dynamite' wigs."  (*Id.* ¶ 71.)  The lip-sync routines were observed by members of the Softball Team, as well as by Plaintiff Coaches Day, Gluckman, and Young.  (*Id.* ¶ 70.)  Plaintiffs note that Does 1-5 took part in the lip-sync routine and Does 6-24 did not.  (*Id.* ¶¶ 11-12.)  The Softball Team later "posted pictures and videos of said routine to their Team Instagram page."  (*Id.* ¶ 72.)

Plaintiffs allege that Defendants Chris Kimball, then the President of CLU and Melissa Maxwell-Doherty, then CLU's Vice President of Mission and Identity, "viewed said pictures and confirmed with the Softball Team, their coaches, and their parents that said Softball Team members:  a) were under the supervision of an African-American Softball coach; b) had makeup on their faces to resemble men's facial hair in the form of beard stubble and goatees; and c) were not engaged in any racially motivated activities."  (*Id.* ¶ 5.)  However, Plaintiffs note that "[d]espite such confirmation, Defendants Kimball and Doherty publicly proclaimed to the entire Ventura County community and national press that:  a) said conduct constituted 'Blackface'; b) Plaintiffs intentionally participated in and/or allowed 'comedic performances of 'blackness' by whites in exaggerated costumes and makeup'; c) CLU intended to 'call attention' to the event to the entire Ventura County community – not just the CLU community; and d) '[t]hose who are responsible will be held accountable.'"  (*Id.*)  Plaintiffs further allege that "Defendants Kimball and Doherty in particular, allowed the Softball Team and their Coaches to be publicly shamed and harassed, placed in fear for their safety, be the subject of unabated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                              Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

racial slurs by other students in violation of CLU written policy, and to otherwise suffer lifelong injury to their mental health and reputations."  (*Id.* ¶ 6.)

In the FAC, Plaintiffs detail the alleged harassment they received.  For example, Plaintiffs allege that CLU sent two emails in February 2020 (on February 5 and February 10) to the CLU community that caused a tense environment on campus.  (*See*, *e.g.*, FAC ¶ 106, Doc. 41; FAC Ex. 1 (February 5, 2020 email), Doc. 41-1; FAC Ex. 3 (February 10, 2020 email), Doc. 41-3.)  The emails described, among other things, the alleged racist incidents occurring on campus, and used the phrase "Blackface" in apparent reference to one of the incidents that occurred on campus.  (*See*, *e.g.*, FAC Ex. 1 (February 5, 2020 email), Doc. 41-1; FAC Ex. 3 (February 10, 2020 email), Doc. 41-3.)  Plaintiffs contend that the February 10 email "inflamed racial passions and anger on the CLU campus to such a degree that the [Black Student Union] organized an unauthorized campus 'walk-out,' whereat they demanded the expulsion of the entire Softball Team for being racists." (FAC ¶ 106, Doc. 41.)  Plaintiffs allege that "[t]he toxic, volatile, and substantially racially-charged environment on campus Defendants created had become so pervasive and dangerous that the members of the Softball program were made to fear for their own personal safety and well-being."  (*Id.* ¶ 111.)

Due to the atmosphere on campus, in February 2020, "the Softball Team filed an Internal Student Grievance Complaint against several students and Defendant Kimball with the CLU administration."  (*Id.* ¶ 123.)  The Softball Team noted that there were several violations of the CLU Student Handbook.  (*Id.* ¶¶ 117-122.)  As an example, Plaintiffs note that one student, a student senator, wrote the following message on social media:  "@regals softball @callutheran O-M-[Statue of God]. Will you acknowledge those affected. yt voices with instagram accounts ARE NOT 'being silenced.'"  (*Id.* ¶ 115.)  Plaintiffs allege that the message constitutes a hate crime under Section 18.0 of the CLU Student Handbook as "yt" is purportedly a slang word for "whitey"—an allegedly "derogatory term for Caucasians."  (*Id.* ¶ 116.)  "CLU opened an investigation into said Internal Student Grievance Complaints approximately a month later in mid-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                     Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

March 2020."  (*Id.* ¶ 123.)  Plaintiffs allege that "CLU waited until late into the following fall semester to inform Plaintiffs that CLU closed said investigation finding no violations of the Handbook."  (*Id.*)

Plaintiff Day, who headed the CLU Softball Program, alleges that CLU falsely accused the Softball Team of engaging in a Blackface event because she questioned "the potentially unlawful Title IX practices at CLU, in addition to other NCAA violations." (*Id.* ¶ 243.)  Specifically, Plaintiff Day notes that in or around February 2019, she noticed that the Softball Team was scheduled for only one day per week with CLU's strength and conditioning coaches whereas another sports team had more days.  (*Id.* ¶ 42.)  According to Coach Day, this scheduling "was a potential violation . . . of the NCAA Division III Bylaws."  (*Id.* ¶ 43.)  Plaintiff Day alleges she reported the potential violations to Defendant Jim McHugh, the Associate Vice President of CLU, who disagreed with Plaintiff Day's allegations.  (*Id.* ¶ 45-46.)  She alleges that in retaliation, Defendant McHugh denied the Softball Team "access to strength training during their off-season in the fall."  (*Id.* ¶ 51.)  Plaintiff Day also alleges that she met with an individual named Kuntz regarding, among other things, CLU's disparate treatment of the Softball Team compared to CLU's baseball program for men.  (*Id.* ¶ 53.)

As a result of Defendants' conduct, Plaintiffs bring the following claims: (1) breach of contract based on Defendants' breach of the CLU Student Handbook; (2) slander; (3) libel; (4) false light; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligence; (8) violation of Title IX; (9) retaliation; (10) hostile work environment; (11) constructive termination; (12) a Private Attorney General Action; and (13) violation of Business and Professions Code § 17200. (*Id.* ¶¶ 137-291.)

Prior to filing the instant FAC, Plaintiffs filed their original complaint asserting the above claims on July 27, 2021.  (Compl., Doc. 1.)  Therefore, under Federal Rule of Civil Procedure 4(m), Plaintiffs were required to serve the complaint on Defendants by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

October 27, 2021.  *See* Fed. R. Civ. P. 4(m) (providing, among other things, that a
plaintiff must serve the defendant within ninety days of filing the complaint).  However,
there were no indications on the docket that Defendants were timely served.
Accordingly, on October 29, 2021, this Court issued an order to show cause regarding
dismissal for lack of prosecution.  (OSC, Doc. 20.)  As an alternative to a written
response, the Court noted that it would consider proof of service of the complaint as an
appropriate response.  (*Id.* at 1.)

        In response to the Court's OSC, Plaintiffs' counsel filed proofs of service and a
declaration attesting that the process server "completed service of process of all
defendants on day 92."  (Proofs of Service, Docs. 24-27; Declaration of Michael J. Saltz
¶ 4, Doc. 28.)  As an explanation for the untimely service, Mr. Saltz, Plaintiffs' attorney,
attested that his office attempted to locate the residential addresses for the individual
defendants and before receiving notice that he had incorrect addresses, he took a
temporary leave of absence due to family medical issues.  (Declaration of Michael J.
Saltz ¶¶ 3-4, Doc. 28.)  Mr. Saltz attested that he "returned to work three weeks into
October" and instructed the process server "to attempt service upon all defendants at
California Lutheran University within the 90 day period."  (*Id.* ¶ 4.)  Plaintiffs' counsel
requested that "the process server ask whomever they find at California Lutheran
University that is authorized to accept service if they would also be authorized to accept
service for the individual Defendants, as all of said individual Defendants are or were
employees of California Lutheran University."  (Declaration of Elana R. Levine ¶ 8, Doc.
68-1.)  The process server attested that service was completed "on day 92."  (Michael J.
Saltz ¶¶ 3-4, Doc. 28.)

        However, the process server left the summons and complaints for all the named
defendants (including defendants named in their individual capacity) with Ms. Norma
Meza, a secretary at CLU—a person not authorized to receive service on behalf of
Defendants.  (*See*, *e.g.*, Declaration of Melissa Maxwell-Doherty ¶¶ 4-5, Doc. 58-12.)
Ms. Meza was the executive assistant to Defendant CLU's registered agent for service of

**CIVIL MINUTES – GENERAL**                                            **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                              Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

process.  (Declaration of Elana R. Levine ¶ 15, Doc. 68-1.)  According to the process
server, Ms. Meza represented that she was authorized to accept service on behalf of all
Defendants and that "she would make sure that she would give them to the proper
people."  (Declaration of Ronald R. Rezac ¶¶ 6-7, Doc. 68-5.)  Ms. Meza, on the other
hand, contends that she made no such representations.  (*See* Declaration of Norma Meza,
Doc. 58-13.)  On or around October 29, 2021, Plaintiffs' counsel learned that CLU no
longer employed Jim McHugh.  (Declaration of Elana R. Levine ¶ 17, Doc. 68-1.)
Accordingly, Plaintiffs' counsel "subsequently effectuated personal service of the
original summons and complaint upon Mr. McHugh at an additional expense on
November 9, 2021 at a different address."  (*Id.*)  Defendants note that "Mr. McHugh is
now the *only* Defendant who has been personally served with the summons and
Complaint, albeit ineffectively late in light of applicable deadlines."  (Mem. at 10, Doc.
58-1.)

On December 31, 2021, Plaintiffs filed the instant FAC against Defendants.
(FAC, Doc. 41.)  The parties do not dispute that Plaintiffs properly effectuated service of
the FAC upon all Defendants.

## II.    <u>LEGAL STANDARD</u>

### A.    **Rule 12(b)(5)**

"Before a federal court may exercise personal jurisdiction over a defendant, the
procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l,
Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Under Federal Rule of Civil
Procedure 12(b)(5), a party may move to dismiss for insufficient service of process.  Fed.
R. Civ. P. 12(b)(5).  "Once service is challenged, plaintiffs bear the burden of
establishing that service was valid."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir.
2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

### B.      Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III.    <u>DISCUSSION</u>

Defendants seek to dismiss Plaintiffs' FAC on various grounds. The Court addresses those grounds below.

---

**CIVIL MINUTES – GENERAL**                                             7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

### A.  Whether Plaintiffs' FAC Should Be Dismissed for Untimely Service

Defendants argue that Plaintiffs' FAC should be dismissed as to Defendants CLU, Kimball, Maxwell-Doherty, McHugh for lack of proper service.  Rule 4(m) requires that a plaintiff serve a defendant "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  Rule 4(m), however, provides two avenues for relief.  "The first is mandatory:  the district court must extend time for service upon a showing of good cause."  *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).  "The second is discretionary:  if good cause is not established, the district court may extend time for service upon a showing of excusable neglect."  *Id.*  As to the second avenue, "[d]istrict courts have broad discretion to extend time for service under Rule 4(m)."  *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).  "In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service."  *Id.*; *see also Lemoge*, 587 F.3d at 1191-98 (analyzing the excusable neglect standard in the context of a Rule 60(b)(1) challenge to a district court's denial to extend time to serve the complaint and noting that courts should consider "at least four factors:  (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith" (internal quotation marks omitted)).

Here, the Court finds that an extension is appropriate.  As an initial matter, the Court notes that service was not timely or properly effectuated on Defendants.  Nor do Plaintiffs' filings demonstrate good cause for failing to effectuate service.  While the Court is cognizant that Mr. Saltz had to take a leave of absence due to his wife's health diagnosis, Plaintiffs do not explain why no one else from Mr. Saltz's office, such as his co-counsel in this matter, could timely effectuate service.

Nonetheless, the Court concludes that an extension of time to serve the complaint is the most equitable outcome.  Defendants have not demonstrated, let alone argued, that they suffered any prejudice from an extension.  (*See* Mem. at 14-15, Doc. 58-1); *see also*

---

**CIVIL MINUTES – GENERAL**                                      **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

*Lemoge*, 587 F.3d at 1196 ("Prejudice requires greater harm than simply that relief would delay resolution of the case.").  Indeed, there are no arguments that an extension has resulted in the loss of evidence.  *Cf. Efaw*, 473 F.3d at 1040 (concluding that a seven-year delay in service prejudiced the defendant because "the memories of all witnesses faded," "the only other eyewitness to the incident[ ] died," and "[n]either party deposed [the eyewitness] before his death").  In contrast, the prejudice suffered by Plaintiffs by a dismissal of their Complaint would be significant including because several of Plaintiffs' claims would be time-barred—a fact both parties acknowledge.  (Opp. at 7, Doc. 68; Reply at 9, Doc. 69.)  Moreover, there is no evidence that Plaintiffs "acted with anything less than good faith," as the evidence illustrates that the errors "resulted from negligence and carelessness, not from deviousness or willfulness."  *Lemoge*, 587 F.3d at 1197.

Accordingly, the Court rejects Defendants' request that this Court dismiss Plaintiffs' complaint for failure to effectuate timely service.[2]

**B.     Breach of Contract Claim (First Cause of Action)**

Defendants argue that the Softball Team has failed to state a breach of contract claim against CLU.  (Mem. at 17-21, Doc. 58-1.)  "California courts have characterized the relationship between students and universities—including the terms of that relationship described in student handbooks—as essentially contractual, but have cautioned that contract law should not [necessarily] be strictly applied."  *Karimi v. Golden Gate Sch. of L.*, 361 F. Supp. 3d 956, 974 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020) (internal quotation marks omitted).  For example, California courts "have been reluctant to apply contract law to general promises or expectations."  *Id.* (internal quotation marks omitted).  Moreover, courts have also been reluctant to apply

---

[2] Defendants argue that Plaintiffs' defamation claims (Second through Fourth Causes of Action) should be dismissed because if Plaintiffs were to refile their Complaint, the defamation claims would be barred.  (Mem. at 16, Doc. 58-1.)  As the Court rejected Defendants' request that the Complaint be barred on service grounds, the Court rejects Defendants' argument here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

contract law to a "universities' academic and disciplinary decisions." *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 824-25 (2007).  This is because of the "lack of a satisfactory standard of care by which to evaluate these decisions." *Id.* at 826.  However, courts have "not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction" recognizing that an objective standard can be applied in such instances. *Id.*  To state a claim for breach of contract, the Softball Team must show: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011).

Here, the Court finds that Plaintiffs have not plausibly alleged a breach of contract claim against CLU.  As an initial matter, the Court acknowledges that certain promises in a Handbook can form the basis of a breach of contract claim.  In their FAC, Plaintiffs note that "the 2019-2020 Student Handbook … is one of the primary documents that spells out the contractual relationship" between CLU and the Softball Players.  (FAC ¶ 139, Doc. 41.)  Indeed, the Handbook provides that "upon admission, readmission, or continued enrollment with California Lutheran University," students are bound by the policies in the handbook.  (Mot. Ex. E (2019-2020 Student Handbook), Doc. 58-7.)  Moreover, Plaintiffs allege that they entered into the contract with CLU when they enrolled at CLU and paid tuition to CLU.  (*See*, *e.g.*, FAC ¶ 141, Doc. 41.)

However, Plaintiffs have not sufficiently alleged facts to show that CLU breached any specific promises contained in the Handbook.  Plaintiffs allege that CLU breached the Handbook "by engaging in harassing behavior in violation of the terms of the Handbook, and otherwise letting others violate the Handbook with regard to conduct directed at the Softball Team." (FAC ¶ 147, Doc. 41.)  The Handbook defines "Harassment" as certain "unwelcome behavior" directed at a student because of their membership in a protected group.  (Mot. Ex. E (2019-2020 Student Handbook) at 47-48,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                     Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

Doc. 58-7.)  The Handbook further provides that "no form of harassment will be tolerated at California Lutheran University," and that upon receiving a report of harassment, certain university officials are "obligated to take action in order to provide a safe nondiscriminatory environment for all."  (*Id.* at 48.)  Plaintiffs seem to argue that CLU's response to the Softball Team incident (e.g., sending the two February 2020 emails) constituted harassment under the Handbook.  (*See*, *e.g.*, FAC ¶¶ 75, 147, Doc. 41.)  To the extent that the Handbook language can be construed as sufficiently definite to constitute a contractual promise, Plaintiffs have alleged no facts in the FAC to show that the CLU's response to the Softball Team incident was harassment as defined in the Handbook.

Plaintiffs also argue that CLU breached the Handbook by "letting others violate the Handbook with regard to conduct directed at the Softball Team."  (*Id.* ¶ 147.)  Specifically, Plaintiffs allege that CLU breached the Handbook by "permitting hate crimes and harassment on campus; permitting cyberbullying; . . . and failing to timely investigate complaints."  (*Id.* ¶ 149.)  However, assuming without deciding that Plaintiffs have even identified a "Hate Crime" as that is defined in the Handbook, the Handbook provides that "[w]here the alleged offender of a hate crime or hate incident is a student, the matter will be handled in a manner consistent with the Standards of Conduct."  (Mot. Ex. E (2019-2020 Student Handbook) at 51, Doc. 58-7.)  The Standards of Conduct itself provide that "staff members in Student Conduct, in conjunction with the faculty, administrators, and students who serve on the University Hearing Board, are committed" to, among other things, resolving "conduct cases with fundamental fairness and in a timely, and socially just manner that balances the needs of both the individual and the Cal Lutheran community."  (*Id.* at 34.)  The Standards further provide that violations "may result in disciplinary actions and sanctions," as Plaintiffs themselves note in their FAC. (*Id.* at 35; FAC ¶ 144, Doc. 41.)  Plaintiffs recognize that CLU did investigate the student's actions. (FAC ¶143, Doc. 41.)  Moreover, Plaintiffs fail to adequately allege how CLU's decision to not discipline another student, which is permitted by the Standards of Conduct, establishes a breach of contract.  Indeed, this is an area where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

Courts should tread lightly in deciding whether to apply traditional contract law to disciplinary decisions.

Lastly, Plaintiffs allege that Defendants breached the Handbook by "de facto punishing DOES 1-24 without affording them the right to due process." (*Id.* ¶ 150.) However, Plaintiffs cite to no language in the Handbook to support their claim, and therefore it is insufficiently pleaded.

Accordingly, the Breach of Contract claim (First Cause of Action) is DISMISSED with leave to amend.

C.     Slander and Libel Claims (Second and Third Causes of Action)

Defendants next argue that Plaintiffs have failed to state a slander or libel claim under California law. (Mem. at 21-25, Doc. 58-1.)  Defamation is an injury to one's reputation by either a writing (libel) or a spoken communication (slander). *See, e.g.*, *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003).  To allege defamation, a plaintiff must show "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal quotation marks omitted).  Plaintiffs base their slander claim on alleged "false oral statements" made during the February 8 Meeting and the February 13 Community Forum (FAC ¶¶ 154-57, Doc. 41), and their libel claim on the February 5 Email, the February 10 Email, and the "various statements made to news media sources" (*Id.* ¶ 157).  Defendants argue that Plaintiffs' defamation claims fail as "the common interest privilege requires dismissal of both the libel and slander claims and, further, the Softball Players libel claim must be dismissed because the February 5 Email and the February 10 Email were not 'of and concerning' the Softball Players." (Mem. at 21, Doc. 58-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                              Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

As an initial matter, the Court rejects Defendants' arguments that no third party could reasonably view the February 5 and February 10 emails as "'of and concerning' the Softball Players." (*Id.*) To be sure, "[i]f there is no express reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). However, Plaintiffs have sufficiently alleged facts, at this stage, to show a third-party could have reasonably understood the emails to refer to the Softball Team. For example, the February 5 and February 10 emails referred to the "Blackface" incident—an incident that occurred (and was posted on social media) within close temporal proximity to the date the emails were sent. A third party could reasonably infer that the emails referred to the Softball Team—especially by February 10, when the incident had grown in notoriety across campus. Indeed, Plaintiffs note, for example, that "a CLU student governing body confirmed on social media that" the "February 5 email was referring to the CLU Softball Team." (FAC ¶ 78, Doc. 41.)

The Court also rejects Defendants' claim that the common interest privilege requires dismissal of Plaintiffs' defamation claims. Under California law, Civil Code Section 47(c) "extends a conditional privilege against defamation to communications made *without malice* on subjects of mutual interest." *Bierbower v. FHP, Inc.*, 70 Cal. App. 4th 1, 3 (1999); Cal. Civ. Code § 47(c) (the privilege applies to "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.") For purposes of assessing whether the common interest privilege applies, "malice has been defined as a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1204 (1994). Here, Plaintiffs allege that the statements were made with malice because, among other things, "CLU and its agents perpetuated a false 'blackface' event, and otherwise completely mishandled said event in part to retaliate against Coach Day for reporting the potential Title IX violation." (FAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM          Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

¶ 214, Doc. 41.) Plaintiffs have pleaded sufficient facts to support a reasonable inference that at least some of the statements at issue were offered in bad faith and with some awareness that they were not truthful. For example, Defendant Kimball wrote in his February 5, 2020 email to CLU students that "two racist incidents … occurred in the last week," and "blackface and the N-word evoke white supremacy, anti-blackness and remind us that a violent, racist past is still with us today." (*Id.* ¶ 170; FAC Ex. 1 (February 5, 2020 email), Doc. 41-1.) In a February 7, 2020 meeting with the Softball Team and their parents and coaches, however, Defendant Kimball stated that he understood the Softball Team's claims that they were *not* racist and told them: "Just saying, in my heart, I believe that." (FAC ¶ 173, Doc. 41.) Yet in his February 10, 2020 email, Defendant Kimball characterized the same conduct as "performances in which there were exaggerated characterizations of black people and culture" and defended CLU's use of the term "blackface" to refer to the performances. (*Id.* ¶¶ 96-98; FAC Ex. 3 (February 10, 2020 email), Doc. 41-3.) Taking these allegations as true and drawing reasonable inferences in Plaintiffs' favor, that Defendant Kimball knowingly misattributed reprehensible conduct to the Softball Team in his statements to the CLU community is plausible.[3]

For these reasons, the Court finds that at this stage Plaintiffs' Slander (Second Cause of Action) and Libel (Third Cause of Action) claims survive.

### D. False Light Claim (Fourth Cause of Action)

Defendants argue that Plaintiffs' False Light Claim fails for the same reasons as the Slander and Libel claims. "When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it

---

[3] Additionally, the Court notes that Defendants did *not* move to dismiss the defamation claims on the ground that they contain no provably false statement of fact; nor did they move to dismiss Plaintiff Day's Title IX claim, which alleges that the purpose of these allegedly defamatory communications was retaliatory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 (1999). As the Court finds that Plaintiffs' Slander and Libel claims survive the pleading stage, the Court denies Defendants' request to dismiss the False Light Claim (Fourth Cause of Action).

**E.    Intentional Infliction of Emotional Distress Claim (Fifth Cause of Action)**

Defendants argue that Plaintiffs' intentional infliction of emotional distress claim fails because "the Softball Players have not, and cannot, show that Defendants engaged in 'outrageous conduct' or that any Plaintiffs experienced 'severe emotional suffering' as a result." (*Id.* at 25.) "To plead a claim for intentional infliction of emotional distress, a plaintiff must plead facts to establish 1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; 2) suffering of severe or extreme emotional distress by the plaintiff; and 3) [that] the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct." *Wassman v. City of Dana Point*, 2018 WL 5906346, at *6 (C.D. Cal. July 2, 2018) (Staton, J.) (internal quotation marks omitted). "To be outrageous, conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted). As to the requirement that the plaintiff show severe emotional distress, the California Supreme Court has set a "high bar," requiring "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993)). Generally, "discomfort, worry, anxiety, upset stomach, concern, and agitation" will not comprise severe emotional distress. *Hughes*, 46 Cal. 4th at 1051.

Here, Plaintiffs fail to state an intentional infliction of emotional distress claim in several respects. First, the purportedly outrageous conduct by Defendants that Plaintiffs allege is not "so extreme as to exceed all bounds of that usually tolerated in a civilized

---

**CIVIL MINUTES – GENERAL**                                              **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

community."  Plaintiffs allege that Defendants engaged in outrageous conduct because
they falsely accused "the Softball Team of engaging in 'Blackface,' and publicly
confirming to the entire CLU community that the Softball team had engaged in such
conduct" causing "them severe emotional distress."  (FAC ¶ 214, Doc. 41.)  As support,
Plaintiffs point to the February 5 Kimball email, February 8 meeting, February 10 email,
and the February 13 Community Forum as acts of outrageous conduct.  (*Id.* ¶¶ 212, 214.)
Regardless of their effect, these actions do not constitute conduct "so extreme as to
exceed all bounds of that usually tolerated in a civilized community."  *Wassman*, 2018
WL 5906346, at *6.

Second, Plaintiffs' allegations of the Softball Team's collective emotional distress
lack specificity and are impermissibly overbroad.  Plaintiffs present several "impact
statements" from different members of the Softball Team alleging various types of
distress, including "[c]onstant anxiety", "panic," "lonel[iness]", a feeling of being
"targeted", being "sick to [one's] stomach", "loss of appetite," insomnia, loss of focus,
and "cry[ing]."  (FAC ¶ 127 n.26, Doc. 41.)  Plaintiffs do not allege that any individual
person suffered *all* of the listed conditions.  Some of the impact statements allege distress
that does not rise to the requisite severity.  For example, one of the statements mentions a
feeling of nausea that "turned to anxiety" that persisted "for days," along with an inability
to focus and "fear of my future at work and future career."  (*Id.*)  Such distress is not "of
such substantial quality or enduring quality that no reasonable person in civilized society
should be expected to endure it."  Plaintiffs also allege, overbroadly, that "a majority of
Plaintiffs … vomited, cried uncontrollably, lost sleep, lost weight, have been unable to
focus on their studies, and have been made to feel isolated," (*Id.* ¶ 128), and that "most of
the Softball Players have stated that they are now on medication for their depression,
anxiety, and PTSD, and that some otherwise submitted themselves to the care of medical
professions[.]"  (*Id.*)  Even if the Court accepts Plaintiffs' allegations as true, it appears
that at least some members of the Softball Team did *not* suffer severe emotional distress.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                              Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

The Softball Team cannot claim severe emotional distress collectively, and less
distressed Plaintiffs cannot state a claim based on their teammates' more acute
conditions.[4]  Such allegations of collective severe emotional distress among Softball
Team members are improper "shotgun pleading" of the sort that "overwhelm[s]
defendants with an unclear mass of allegations and make it difficult or impossible for
[them] to make informed responses."  *Prostitis v. Riverside Superior Fam. L. Ct.*, 2020
WL 3843727, at *2 (C.D. Cal. Apr. 15, 2020), *report and recommendation adopted*, 2020
WL 6450288 (C.D. Cal. Nov. 3, 2020) (citation and quotation marks omitted).  As
currently pleaded, Plaintiffs' allegations do not provide sufficient clarity about how many
and which members of the Softball Team suffered from conditions rising to severe
emotional distress.  General, overbroad allegations of this sort cannot provide a defendant
with adequate notice of their potential liability.

Accordingly, Plaintiffs' Intentional Infliction of Emotional Distress (Fifth Cause
of Action) claim is DISMISSED with leave to amend.

F.     **Negligent Infliction of Emotional Distress and Negligence Claims (Sixth
       and Seventh Causes of Action)**

Defendants seek to dismiss Plaintiffs' negligence-based claims on the theory that
Plaintiffs have failed to allege that CLU owed them a duty of care let alone a breach of
that duty.  (Mem. at 29, Doc. 58-1.)  The California Supreme Court has held that
"postsecondary schools *do* have a special relationship with students while they are
engaged in activities that are part of the school's curriculum or closely related to its

---

[4] The Court notes that Plaintiffs' SAC attributes each impact statement to a named
member of the Softball Team.  (SAC ¶ 127 n.26, Doc. 78.)  Matching each impact statement with
a now-named individual Plaintiff is insufficient to remedy the Court's concerns with the Softball
Team's claim of collective distress, however.  Even if each statement is attributed to a particular
named Plaintiff, it remains the case that at least some members of the Softball Team did not
suffer extreme emotional distress, so the collective claim is deficient for the reasons outlined in
this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

delivery of educational services." *Regents of Univ. of California v. Superior Ct.*, 4 Cal.
5th 607, 625 (2018). The California Supreme Court recognized that "[s]tudents are
comparatively vulnerable and dependent on their colleges for a safe environment" and
that "[c]olleges have a superior ability to provide that safety with respect to activities they
sponsor or facilities they control." *Id.* at 626. However, the California Supreme Court
has noted that this special relationship extends only "to activities that are tied to the
school's curriculum but not to student behavior over which the university has no
significant degree of control." *Id.* at 669.

Here, Plaintiffs have not alleged a breach of that duty of care. In the FAC,
Plaintiffs allege that CLU owed them a duty of care "to act as a normal and prudent
university, and to otherwise not engage in conduct that they know, or with reasonable
care should know, will cause their students undue harm and severe emotional distress."
(FAC ¶ 228, Doc. 41.) However, Plaintiffs do not plead the conduct that supposedly
breached that duty of care. Plaintiffs merely alleged that CLU breached the duty "by
engaging in the aforementioned conduct." (*Id.* ¶ 229.) Given the length of the complaint
and its hundreds of allegations, the Court treats this allegation as another instance of
"shotgun pleading." Plaintiffs are required to identify specifically the conduct they claim
amounts to a breach of the duty of care.

Accordingly, the Sixth Cause of Action and the Seventh Cause of Action are
DISMISSED with leave to amend.

### G.    Plaintiff Day's Retaliation Claim (Ninth Cause of Action)

Plaintiff Day alleges that Defendants retaliated against her for "questioning the
potentially unlawful Title IX practices at CLU, in addition to other NCAA violations" in
violation of Section 1102.5 of the California Labor Code and California's Fair
Employment and Housing Act ("FEHA"). (FAC ¶ 243.) Section 1102.5 of the
California Labor Code "provides whistleblower protections to employees who disclose
wrongdoing to authorities" and specifically violations of a local, state, or federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                                  Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

regulation.  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022).
Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise
discriminate against any person because the person has opposed any practices forbidden
under this part or because the person has filed a complaint, testified, or assisted in any
proceeding under this part."  Cal. Gov. Code § 12940(h).  To establish a prima facie case
of retaliation under both sections, a plaintiff must allege that "(1) he or she engaged in a
'protected activity,' (2) the employer subjected the employee to an adverse employment
action, and (3) a causal link existed between the protected activity and the employer's
action."  *See*, *e.g.*, *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1020 (2009)
(FEHA); *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468 (2013) (Cal.
Lab. Code § 1102.5).

        The scope of what constitutes a protected activity under these statutes is different,
however.  On one hand, Section 1102.5 requires that a plaintiff show that she reported a
violation of a local, state, or federal rule or regulation.  Cal. Lab. Code § 1102.5.  It is a
whistleblower statute, and as part of a prima facie claim for Section 1102.5 retaliation, a
plaintiff must show that "the employer fired [her] for reporting [her] 'reasonably based
suspicions' of illegal activity."  *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 87 (1998).
FEHA, on the other hand, provides a cause of action for, among other things, "retaliation
for opposing discriminatory practices against employers and employment agencies."
*Krantz v. Bloomberg L.P.*, 2021 WL 8821422, at *3 (C.D. Cal. Dec. 1, 2021).  No
reasonable suspicion of actual illegality is necessary under FEHA.

        As to Section 1102.5, the Court finds that Plaintiff Day has failed to state a
retaliation claim under Section 1102.5.  Here, the allegations are inconsistent or, at the
very least, confusing.  On one hand, Plaintiff Day alleges that she reported that certain
activities violated NCAA bylaws, though not necessarily Title IX.  (*See*, *e.g.*, FAC ¶ 49
("Coach Day submitted a document to CLU Human Resources dated August 22, 2019
entitled 'CLU Strength and Conditioning Concerns.'  Said document outlined that: CLU
was potentially in violation of NCAA Division III rules with regard to how CLU has

_____

**CIVIL MINUTES – GENERAL**                                                    **19**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                         Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

been providing strength and conditioning training to CLU athletes, and that Coach Day felt like she was being targeted for retaliation for raising these concerns.'"); *id.* ¶ 52 ("Coach Day never said that the Softball Team was denied access to strength and conditioning based on *gender*, but rather based on favoritism of certain athletic programs over others rather than need, and in a manner than violated NCAA bylaws – not necessarily Title IX."), Doc. 41)  On the other hand, the complaint elsewhere refers broadly to "Coach Day's reports of potential NCAA and Title IX violations."  (*See, e.g.*, *id.* ¶ 243)  Violations of NCAA bylaws do not necessarily establish violations of a local, state, or federal law or regulation.  Generously read, the complaint indicates that Plaintiff Day had *some* concern about gender disparities, but does not allege that she had a reasonable suspicion that CLU had violated Title IX.  Without more as to how the alleged violations amount to a local, state, or federal violation, Plaintiff Day's Section 1102.5 claim fails.

     As to FEHA, however, the Court finds that Plaintiff Day's retaliation claim is sufficiently pleaded.  Plaintiff Day alleges that she reported to CLU discriminatory practices as to the treatment of the Softball Team as compared to other programs on campus, and that the disparate treatment *may* have been based on gender.  (*See* FAC ¶¶ 49-64, Doc. 41.)  As pleaded, Plaintiff Day's actions can be interpreted as opposing discriminatory practices, even if she did not report any illegal activity.  Plaintiff Day further alleges that CLU thereafter began excluding her from certain meetings and programs.  (*See, e.g.*, *id.* ¶ 243.)  The Court finds that the FEHA retaliation claim is therefore adequately pleaded, and that Defendants' arguments regarding the necessary causal link are fact-based and therefore better addressed at a later stage of the litigation.

### H.   Plaintiffs Day, Young, and Gluckman's Hostile Work Environment Claim (based on violations of the FEHA) (Tenth Cause of Action)

     "[T]he FEHA makes the employer strictly liable for harassment by a supervisor." *Zhu v. Spirent*, 2015 WL 13915192, at *13 (C.D. Cal. Feb. 11, 2015) (Staton, J.) (internal quotation marks omitted).  "To state a claim for harassment, a plaintiff must demonstrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM                          Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

that (1) plaintiff is a member of a protected group, (2) plaintiff was subjected to
harassment because he belonged to this group, and (3) the alleged harassment was so
severe that it created a hostile work environment." *Id.* Plaintiffs allege that "the
aforementioned conduct (including conduct directed at Plaintiffs Day, Young, and
Gluckman) caused Plaintiffs Day, Young, and Gluckman to perceive their work
environment as intimidating, hostile, abusive or offensive and created a hostile work
environment based on their perceived race and/or ethnicity and/or in retaliation for
exercising a lawful right." (FAC ¶ 266, Doc. 41.) Plaintiffs' conclusory allegations are
insufficient to state a hostile work environment claim under the FEHA. As an initial
matter, Plaintiffs do not allege, with any specificity, the purported wrongful conduct that
"caused Coaches Day, Young, and Gluckman to perceive their work environment" as
hostile. (*Id.*) Nor do Plaintiffs adequately allege, beyond conclusory allegations, that any
purported wrongful conducted occurred because Plaintiffs Day, Young, and Gluckman
were members of a protected group as defined under the FEHA or were exercising a right
protected by FEHA.

        Accordingly, the Hostile Work Environment Claim (Tenth Cause of Action) is
DISMISSED with leave to amend.

**I.      Plaintiffs Young and Gluckman's Constructive Termination Claim
         (based on violation of the FEHA) (Eleventh Cause of Action)**

        To sufficiently allege a constructive termination claim in violation of FEHA, a
plaintiff, must show, among other things, that the wrongful conduct occurred *because of*"
that plaintiff's protected status under FEHA or because they were exercising a right
protected by FEHA. Cal. Gov. Code § 12940(a); *Arteaga v. Brink's, Inc.*, 163 Cal. App.
4th 327, 344 (2008) ("The FEHA addresses discrimination . . . . [It] is not a shield against
harsh treatment at the workplace."). Here, Plaintiffs attempt to allege a constructive
termination claim in violation of public policy based on the FEHA. (FAC ¶ 273, Doc.
41.) Plaintiffs allege that Plaintiffs Young and Gluckman were constructively terminated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                     Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

due to Defendants' alleged misconduct; however, Plaintiffs do not allege that the misconduct occurred because Plaintiffs Young and Gluckman purportedly belonged to a protected group under FEHA or because they opposed any practices prohibited under FEHA.  *See City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1159, (1998) ("[W]hen the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action.").

Therefore, the Eleventh Cause of Action is DISMISSED with leave to amend.

**J.       Plaintiffs' Private Attorney General Action Claim (Twelfth Cause of Action)**

The Court declines to consider Defendant's arguments as to Plaintiff's PAGA claims until Plaintiffs have sufficiently alleged subject-matter jurisdiction over the claims.  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (internal quotation marks omitted); *see also Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together.").

Here, there is nothing in the FAC illustrating that CLU's alleged failure "to accurately specify the gross wages earned by Coach Day and other aggrieved employees

**CIVIL MINUTES – GENERAL**                                      **22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                                Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

by improperly recording donations to the university from pre-tax categories of the pay stubs" arises out of a common nucleus of operative fact with either the Title IX claim or the claims based on the Softball Team incident. *Trustees of Constr. Indus. & Laborers Health & Welfare Tr.*, 333 F.3d at 925.[5]  Accordingly, the Court ORDERS Plaintiffs to show cause, in writing, within five (5) days of this Order's issuance why the Court should not decline supplemental jurisdiction over the PAGA claim.

### K.    Plaintiffs' UCL Claim (Thirteenth Cause of Action)

Defendants also argue that the UCL claim fails as Plaintiffs have not sufficiently alleged standing, and because the predicate claims upon which the UCL claim is based are insufficiently pleaded.  (Mem. at 38-39, Doc. 58-1.)  "[S]tatutory standing under the UCL requires a plaintiff to demonstrate he suffered 'some form of *economic injury*' resulting from the defendant's unfair business practice."  *Cavka v. SoulCycle Inc.*, 2017 WL 2906034, at *5 (C.D. Cal. Jan. 30, 2017) (Staton, J.)  Moreover, where the predicate claim upon which the UCL claim relies fails, so too does the UCL claim.  *Razavi v. Caliber Home Loans, Inc.*, 2018 WL 7348848, at *4 (C.D. Cal. Dec. 18, 2018) (Staton, J.)

Here, Plaintiffs allege two forms of economic injury: lost tuition and lost compensation.  (FAC ¶ 290, Doc. 41.)  Presumably, it is Softball Team Plaintiffs who claim lost tuition and Plaintiffs Day, Young, and Gluckman who claim lost compensation.  Because the Court has concluded that the Softball Team Plaintiffs' breach of contract claim and the Coach Plaintiffs' hostile work environment and constructive termination claims are inadequately pleaded, the UCL claims of all Softball Team Plaintiffs and Plaintiffs Young and Gluckman are DISMISSED with leave to amend, as these plaintiffs have stated no viable predicate claim.  The Court declines to dismiss

---

[5] Indeed, the only reason the Court is maintaining jurisdiction over the Softball Team incident claims is based on the potential overlap with Coach Day's claim of retaliation for reporting the alleged Title IX violation.

**CIVIL MINUTES – GENERAL**                                                    **23**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title: Debby Day et al v. California Lutheran University et al

Plaintiff Day's UCL claim given that the Court found her FEHA retaliation claim sufficiently pleaded.

> L.     **Whether Causes of Action One through Seven and Thirteen are Barred by California's Strategic Lawsuits Against Public Participation (anti-SLAPP) Statute**

Next, Defendants request that this Court dismiss Causes of Action One through Seven and Thirteen based on California's anti-SLAPP statute. A court considering whether claims are barred by the "anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). "First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's right of petition or free speech." *Id.* (internal quotation marks omitted). Under the anti-SLAPP statute, free speech includes "'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest,' and 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Id.* Generally, if a defendant makes an initial prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* But "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," as here, a court considers instead "whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

Addressing the first part of the analysis, Defendants argue that the challenged causes of action rest on allegations that arise from protected activity. (Mem. at 41, Doc. 58-1.) As support, Defendants note that the challenged causes of action are based on the following activities as alleged in the FAC: "1) the February 5 Email to the CLU community addressing racism on campus ([FAC] ¶ 75); (2) the February 8 Meeting with

---

**CIVIL MINUTES – GENERAL**                                        **24**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                     Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

the Softball Players regarding the racially-charged team event (*id*. at ¶ 87); (3) the
February 10 Email to the CLU community addressing racism on campus (*id*. at ¶ 96); and
(4) the February 13 Community Forum regarding racially-charged events (*id*. at. ¶ 114)."
(*Id.*)  Defendants allege that the activity alleged underlying the challenged causes of
action "is the exact type of activity 'in connection with a public issue or an issue of
public interest' that the anti-SLAPP statute is intended to protect."  (*Id.* (citing Cal. Civ.
Proc. Code § 425.16(e)(4)).

Here, the Court finds that Defendants have sufficiently made a prima facie
showing that the activities at issue are protected conduct.  As alleged in the FAC, the
activities at issue here concerned an allegedly racist incident in connection with an
athletic team at CLU.  (*See, e.g.*, FAC ¶ 75, Doc. 41.)  The community forum, emails,
and meeting with the Softball Team arguably constitute "conduct" that furthered public
conversation regarding the allegedly racist incidents.  *See FilmOn.com Inc. v.
DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019) ("[A] statement is made 'in connection
with' a public issue when it contributes to – that is, 'participat[es]' in or furthers – some
public conversation on the issue.").  And that the activities concerned a matter of public
interest is evidenced by the widespread attention paid to the incident by CLU's student
community and the public media.  (*See, e.g.*, FAC ¶¶ 79-81, Doc. 41.)  Accordingly, the
Court concludes that Defendants have made a "threshold" showing that the allegations
underlying the challenged claims are based on protected activity.  *See also Skidmore v.
Regents of Univ. of California*, 2021 WL 843195, at *1 (N.D. Cal. Mar. 5, 2021) (finding
that Defendants have made a prima facie showing that the "Individual Defendants' three
statements to campus community members that condemned [plaintiff's] comments"
regarding treatment of bears in China qualified as protected activity).

As to the second part of the analysis, Defendants argue that Plaintiffs cannot meet
their burden because the challenged claims are legally insufficient.  (Mem. at 42, Doc.
58-1.)  The Court denies Defendants' anti-SLAPP motion insofar as the Court has already
found Plaintiffs' defamation claims and Plaintiff Day's UCL claim legally sufficient.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                              Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

However, the Court has dismissed Plaintiffs' breach of contract claim (First Cause of Action), intentional infliction of emotional distress claim (Fifth Cause of Action), negligent infliction of emotional distress claim (Sixth Cause of Action), and negligence claim (Seventh Cause of Action) on grounds that Plaintiffs have failed to state a claim.

"[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  Although this is not Plaintiffs' initial complaint, the Court has determined that some of their claims are legally sufficient and dismissed others with leave to amend.  The purpose of the anti-SLAPP statute would still be served if Plaintiffs eliminate meritless claims or plead them adequately.  *See id.* If, after amendment, the complaint still contains legally insufficient claims, Defendants continue to have anti-SLAPP remedies available to them.  Accordingly, the Court will defer its final ruling on Defendants' anti-SLAPP request until after Plaintiffs have amended their complaint in light of this Order.

**M.     Plaintiffs' Demand for Punitive Damages**

Finally, Defendants argue that Plaintiffs' demand for punitive damages is unsupported as they are only available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  (Mem. at 42 (internal quotation marks omitted), Doc. 58-1.)  The Court finds Defendants' arguments premature at this stage and declines to strike the punitive damages claim from the complaint, especially in light of the Court's finding that the FEHA retaliation claim is sufficiently pleaded.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                    Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

## IV.    <u>CONCLUSION</u>

For the above reasons, Defendants' Motion is GRANTED IN PART, as follows:

- First Cause of Action (Breach of Contract) is DISMISSED with leave to amend.

- Fifth Cause of Action (Intentional Infliction of Emotional Distress) is DISMISSED with leave to amend.

- Sixth Cause of Action (Negligent Infliction of Emotional Distress) is DISMISSED with leave to amend.

- Seventh Cause of Action (Negligence) is DISMISSED with leave to amend.

- Tenth Cause of Action (Hostile Work Environment) is DISMISSED with leave to amend.

- Eleventh Cause of Action (Constructive Termination) is DISMISSED with leave to amend.

Other than as stated above, Defendants' Motion is DENIED.  Plaintiffs are GRANTED LEAVE TO AMEND the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.  Plaintiffs should carefully review the Court's specific instructions for leave to amend throughout this Order, based on the specific claim at issue.  Plaintiffs may not add claims or new defendants to their pleading.  Any amended complaint shall be filed within **fourteen (14) days** of the date of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:21-cv-01286-JLS-DFM                          Date: August 29, 2022
Title:  Debby Day et al v. California Lutheran University et al

this Order.  Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

In addition, Plaintiffs are ORDERED to show cause, in writing, why this Court should not dismiss the PAGA claim for lack of supplemental jurisdiction.  Plaintiffs shall submit their response within **five (5) days** of this Order's issuance.

Initials of Deputy Clerk: vrv