1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    WESTERN DIVISION

4                        - - -

5      HONORABLE JOSEPHINE L. STATON, DISTRICT JUDGE PRESIDING

6

7      DEBBY DAY, et al.,              )

8                                      )

9           Plaintiffs,               )

10                                     )

11                                     )

12                                     )

13           vs.                       ) No. CV 21-01286-JLS

14                                     )

15                                     )

16                                     )

17     CALIFORNIA LUTHERAN             )

18     UNIVERSITY, et al.,             )

19                                     )

20           Defendants.               )

21     _____

22

23

24

25          REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS



*DEFENDANT'S MOTION TO DISMISS*


LOS ANGELES, CALIFORNIA


FRIDAY, JULY 8, 2022


_____


MARIA R. BUSTILLOS

OFFICIAL COURT REPORTER

C.S.R. 12254

UNITED STATES COURTHOUSE

350 WEST 1ST STREET

SUITE 4455

LOS ANGELES, CALIFORNIA 90012

(213) 894-2739

1                    **A P P E A R A N C E S**

2

3

4      **ON BEHALF OF THE PLAINTIFFS,**
       **DEBBY DAY, et al.:**
5                                   JACOBSON RUSSELL SALTZ
                                    NASSIM and DE LA TORRE, LLP
6                                   BY:  MICHAEL J. SALTZ, ESQ.
                                    1880 CENTURY PARK EAST
                                    SUITE 900
7                                   LOS ANGELES, CA 90067
                                    (310)446-9900
8

9                                   JACOBSON RUSSELL SALTZ
                                    NASSIM and DE LA TORRE, LLP
10                                  BY:  ELANA R. LEVINE, ESQ.
                                    1880 CENTURY PARK EAST
11                                  SUITE 900
                                    LOS ANGELES, CA 90067
12                                  (310)446-9900

13

14     **ON BEHALF OF THE DEFENDANTS,**
       **CALIFORNIA LUTHERAN**
15     **UNIVERSITY, et al.:**        SAUL EWING ARNSTEIN /AND
                                    LEHR, LLP
                                    BY:  HENRY A. PLATT, ESQ.
16                                  1919 PENNSYLVANIA AVENUE NW
                                    SUITE 550
17                                  WASHINGTON, DC 20006
                                    (202)342-3447
18

19                                  SAUL EWING ARNSTEIN and
                                    LEHR, LLP
20                                  BY:  JOSHUA W.B. RICHARDS,
                                    ESQ.
21                                  3800 CENTRE SQUARE WEST
                                    1500 MARKET STREET
22                                  PHILADELPHIA, PA 19102
                                    (215)973-7737
23

24

25

1

<u>**I N D E X**</u>

2

3                                                                <u>PAGE</u>

4    DEFENDANT'S MOTION TO DISMISS :                              5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JULY 8, 2022

 2                              -oOo-

 3                 (COURT IN SESSION AT 11:00 A.M.)

 4          THE COURTROOM DEPUTY:  Calling item number one,

 5   SACV 21-01286-JLS:  Debby Day, et al. v. California Lutheran

 6   University, et al.

 7              Counsel, please state your appearances, starting

 8   with the plaintiff.

 9          MR. SALTZ:  Good morning, Your Honor.

10   Michael Saltz on behalf of named plaintiffs.

11          MS. LEVINE:  Good morning, Your Honor.

12   Elana Levine on behalf of the plaintiffs.

13          MR. PLATT:  Good morning, Your Honor.

14   Henry Platt on behalf of defendants.

15          MR. RICHARDS:  And Josh Richards on behalf of

16   defendants.

17          THE COURT:  All right.  Good morning to all of you.

18   We're here on the defendant's motion to dismiss.  And so I'm

19   going to raise a preliminary question, first of all -- one

20   that was not briefed, but that I would like to have

21   answered -- and that is, supplemental jurisdiction:  You have

22   the Title 9 federal claim, and then you have all of the state

23   claims.  The only relationship that I can see between the two

24   is -- is essentially one sentence in the Title 9 claim

25   relating to retaliation because they mishandled the -- what
```

```
 1    has been called the "blackface" incident.  Other than that, I
 2    don't really see where all of those state claims based on
 3    everything that happened with the incident itself, certainly
 4    don't see where the PAGA wage claim has -- arises out of the
 5    same Article III case in controversy.  So let's start there
 6    with the plaintiffs.
 7              MR. SALTZ:  Thank you, Your Honor.
 8              As -- as far as the Title IX goes, you are correct
 9    that that is a substantial basis with regard to the
10    retaliation.  It is alleged that the Title IX complaint,
11    along with the NCAA complaint, was investigated by
12    Cal Lutheran University.  They came up with a report that
13    didn't address all of the Title IX issues, and then within a
14    two-week period, if that, the school decided to make an issue
15    of this so-called blackface incident and otherwise use it we
16    believe as a retaliation against Ms. Day.  And in doing so --
17              THE COURT:  Did this incident take place before or
18    after the -- the complaints, whether they be the NCAA
19    complaints, the Title IX complaint, however you frame it?
20    Before or after?
21              MR. PLATT:  So the chronology is that Ms. Day had
22    reported the Title IX violations and the NCAA violations
23    prior to the blackface incident.  So the last Title IX report
24    was with the director of Athletics,
25    Dan Kuntz -- and that was in December of 2019.  And then in
```

```
 1   January of 2020, is when the Title IX investigation report
 2   came out, and then within two weeks of that, the school
 3   decided to make an issue of the so-called blackface incident
 4   and put Debby Day on administrative leave as a result of that
 5   incident.  And it's alleged that there's a nexus between the
 6   two.
 7              THE COURT:  So the -- so the -- but the
 8   complaint -- but the incident itself, the Instagram posting,
 9   et cetera, happened after the complaint, right?
10              MR. PLATT:  Yeah after the Title IX complaint and
11   after the Title IX investigation, within two weeks of it.  So
12   it -- it --
13              THE COURT:  Well, it also was presumably within two
14   weeks of the incident itself.
15              MR. PLATT:  Correct.  It was almost contemporaneous
16   posting on Instagram from the event.  My understanding it was
17   posted either that day or the next morning.
18              THE COURT:  Okay.  So that is the basis for the
19   overlap, correct?
20              MR. PLATT:  Correct.  That -- so we believe that
21   there was an ulterior motive with regard to how they handled
22   this, and that was alleged in the complaint with regard to
23   the fact that the volleyball team had to engage in the not
24   similar conduct -- the exact same conduct where they posted
25   pictures of -- of -- on Instagram of their girls engaging in
```

1    their hell week and lip sync contest, and they had beards;

2    they had wigs.  And one group dressed as the Jackson five and

3    performed the Jackson five with wigs, and there was no

4    mention of it.  And then there was even an incident where

5    president Chris Kimball posted a picture of an administrator

6    dressed as Bob Marley, who actually did put makeup on his

7    face and had dreadlocks and a -- a cropped marijuana

8    cigarette.  And he put that up on his Instagram page, saying,

9    isn't it great that we have Bob Marley in our administration.

10   So when you have this conduct that is alleged to have been

11   not considered blackface, and then you have this -- the

12   blackface incident I guess we'll call it, because there's

13   many incidents -- so the blackface incident where the school

14   mistakenly believes that a blackface incident occurred, and

15   they come and they asked everybody about it, and they look at

16   the pictures, and they verify no one had makeup over their

17   whole face.  No one was there with their faces covered all in

18   makeup.  There were two girls in -- in question that had

19   Napoleon Dynamite wigs.  One had a goatee makeup, and the

20   other one had a George Michael beard.  And they saw the

21   pictures.  They interviewed everybody.  They determined that

22   everyone, all the coaches, all the players said there was no

23   blackface event.  Here are the pictures, here are the videos.

24   And then they think everything is fine until this

25   February 5th e-mail comes out, saying that the student

1    athletes engaged in a blackface.  So the -- the nexus is why?

2    And in this particular instance, it's alleged that they were

3    trying to come up with something to otherwise get rid of

4    Coach W. Day.  It was alleged in there that president Kimball

5    did not like her.  It was alleged that McHugh did not like

6    her, and that they wanted to get rid of her, and this was an

7    opportunity to get rid of a coach who had been there

8    successfully for 18 years at that point.  So that is the

9    nexus that draws the Title IX complaint, the retaliation,

10   the -- and how the players all get sucked into this event,

11   for lack of a better word.

12            THE COURT:  All right.  So tell me about your PAGA

13   claim.

14            MR. PLATT:  Well, Your Honor, I'm going to leave

15   the employment issues to Ms. Levine.  She's far more

16   knowledgeable with regard to PAGA than I having done over 200

17   of them.  So she can answer your PAGA claims if you would

18   like her to.

19            THE COURT:  All right.  I'm just asking for

20   purposes of supplemental jurisdiction, how does this arise

21   out of the same case in controversy under 1367?

22            MR. PLATT:  The issue goes with the fact that we're

23   duty-bound to bring all the causes of action that they have

24   with regard to the PAGA claims.  So it gets lumped into the

25   fact that to the extent that Ms. Day or Coach Day has these

1    claims against Cal Lutheran University.  It all goes into the

2    same complaint to the extent that she's duty-bound to bring

3    all her claims in one.

4         THE COURT:  All right.  Let me -- let me turn to

5    the Defense and ask the same preliminary questions.

6         MR. RICHARDS:  Your Honor, we didn't challenge

7    supplemental jurisdiction in this case in large measure,

8    because it is certainly more convenient and efficient for the

9    parties to litigate these claims together, inasmuch as they

10   involve the same parties in overlapping conduct.  I'm not

11   prepared to take a position on the issue today.  Certainly

12   the Court has an obligation to satisfy itself and has subject

13   matter jurisdiction.  The plaintiffs have an obligation to

14   bring claims that have independent subject matter

15   jurisdiction, and that's not an issue that we are contesting

16   or we're taking a position on.

17        THE COURT:  All right.  It might be something that

18   either I sua sponte look at or seek briefing on, but for now,

19   let's go on and address the -- and particularly, as to the

20   PAGA claim, any -- any particular issue there?

21        MR. RICHARDS:  The PAGA claim -- sorry, go ahead.

22        MR. PLATT:  No, I was just going to ask if -- I

23   didn't know it was addressed to you.

24        THE COURT:  Sorry.  You can't tell where I'm

25   looking on Zoom.  I don't turn from one side to the other

1   back and forth.  So, Mr. Richards....

2         MR. RICHARDS:  Your Honor, we believe the PAGA

3   claim to be insufficiently pleaded.  We do believe that it

4   is, you know, one of the claims that's just sort of thrown in

5   here with the kitchen sink.  And to that extent, we certainly

6   believe it's appropriate for a dismissal.  Whether the Court

7   believes it's more appropriately done on the merits or

8   without prejudice, I'm certainly happy to brief that.

9         THE COURT:  All right.  Then let me have the

10  Defense turn to its motion.  And anything that you think you

11  want to highlight from your papers, this is your opportunity

12  to do so.

13        MR. RICHARDS:  Thank you.  And mindful of the

14  Court's time and calendar, I'm just going to try and hit six

15  individual points.  I'm not going to try to cover certainly

16  all of the arguments that we raise in our brief.  I do think

17  this matter was thoroughly briefed.  And I will try not to

18  repeat what we said there.

19        I think the clearest -- the clearest issue before

20  the Court is the 4(m) issue.  There is no debate in this case

21  that service was not attempted in the first 90 days.  And

22  that makes this case very different from almost all the cases

23  that the plaintiffs cite in their briefs.  So the problem is

24  that plaintiffs have two independent grounds that they lose

25  on.  And it's their burden on both.  They were late in

 1    serving, and they did not request an enlargement of time

 2    during the time period of service.  They could not have shown

 3    good cause if they had requested it, but they didn't.  And

 4    they still haven't requested enlargement of time.  The

 5    Court's standing order I think is very clear on this point

 6    that there is an expectation not just under Rule 4 but under

 7    practice guidelines, and there's no reason this complaint

 8    couldn't have been severed a week after it was filed, but it

 9    wasn't.  And it still hasn't been effectively served.  That's

10    the second problem.  It's clear, I think beyond debate, that

11    Ms. Meza whom plaintiffs purport to have served, did not have

12    authority to accept service on behalf of any defendant.  She

13    was the administrative assistant to a VP who was the

14    registered agent of service.  We have filed affidavits -- and

15    again, all of these issues of fact are plaintiff's burden.

16    We have filed affidavits from the three individual defendants

17    who were sued in their individual capacities, saying that

18    Ms. Meza did not have authority to accept service.

19          Now, what the plaintiffs say is, well, our service

20    was told by Ms. Meza that she would accept service on behalf

21    of everybody.  That's disputed very clearly by Ms. Meza.  So,

22    again, we have a question of fact, plaintiff's burden.  And

23    so we can look at all of the surrounding circumstances here.

24          THE COURT:  Do I need to have some sort of

25    evidentiary hearing?

1          MR. RICHARDS:  That may be necessary if the Court

2     doesn't think it can resolve it on the papers, but I don't

3     think the Court needs to have an evidentiary hearing, in

4     part, because I think the Court can determine these things

5     based on the affidavits and a question of plausibility.  And

6     I also think the Court doesn't need to reach this issue,

7     because everything was late; however, if we look at -- and in

8     particular, the *Summers* case, it is absolutely clear that

9     actual notice isn't the standard here.  If actual notice were

10    the standard, both California courts and the Ninth Circuit

11    have held, that it would completely vitiate the rule, and the

12    exception of you must serve someone with authority to accept

13    service, would be completely swallowed by anyone who's

14    calculated to give actual notice.  That's not what the rule

15    says, and that's not what the standard is.  And if you look

16    at both,

17    *Summers v. McClanahan* which we cited in our brief and *Wei v.*

18    *State of Hawaii* in the Ninth Circuit.  The *Wei* case is very

19    clear that merely because a plaintiff may lose a cause of

20    action to the statute of limitations, does not mean that

21    Rule 4 doesn't apply.  And, in fact, the Ninth Circuit has

22    squarely held here that Congress took that into

23    consideration.  It has already done that balancing by

24    promulgating Rule 4(j), and that is not a reason, absent

25    service, to allow a case to continue.  The purpose of the

1    rule is to encourage to require counsel to be diligent.  And

2    in this case, counsel was not diligent.  As a result, the

3    proper remedy here is to dismiss the case without prejudice.

4          As to claims that will be time-barred upon

5    dismissal, and in particular the defamation claim, that

6    dismissal should be with prejudice.  And respectfully,

7    Your Honor, I don't think this is an issue, unlike an

8    extension of the 90-day time period, around the time of the

9    90-day time period, which is in the Court's discretion.

10         THE COURT:  So are you talking about -- so when

11   they cite *Lemoge v. United States*, in those cases -- in their

12   brief with regard to making extension decisions under

13   Rule 4(m), the Court should consider factors like statute of

14   limitations, prejudice, actual notice, eventual service, are

15   those relevant considerations for the Court?

16         MR. RICHARDS:  Not anymore.  Those would have been

17   relevant considerations if they had asked for an enlargement

18   within the 90-day period and they had shown good cause, but

19   they didn't.  And they still haven't.

20         THE COURT:  And so you think the case law is clear

21   that the enlargement request needs to be requested in the

22   context of extending the 90 days, not after the 90 days.

23         MR. RICHARDS:  Correct.  And that's not what we

24   had -- and, Your Honor, you know, you decided in the *Buendia*

25   case that because multiple attempts had been made before the

1    extension -- before the end of the 90-day period, that in

2    that particular case -- and in light of the difficulty of

3    serving an incarcerated defendant, good cause was present.

4    That's not the case we have here.  We also don't have a case

5    where plaintiff's counsel asked for a waiver of service and

6    it was denied, either strategically or for whatever reason.

7    There was literally no effort made whatsoever to serve this

8    complaint until after the Court issued a

9    to show cause order, and after the show to cause order was

10   issued, what happened was the process server went to the

11   university, asked Ms. Meza if she would accept service.  She

12   said she wasn't authorized to do it.  You should come back

13   the next day and serve the person who was; meanwhile -- for

14   the University, not for the individuals.  I mean, that's a

15   whole extra level removed.  And the process server instead of

16   doing that, simply said no, it has to be served today, and

17   left.  This is not a case where there's excusable neglect,

18   good cause or anything of the sort.  This is a case where

19   plaintiff's counsel realized that they were out of time; told

20   their process server it had to be served that day

21   immediately, and didn't effect proper service.  Respectfully,

22   Your Honor, I don't think this is a discretionary decision by

23   the Court at this point.  I think this is a mandatory

24   dismissal without prejudice.

25              THE COURT:  All right.  Thank you.  Let me turn

1    back to plaintiff.

2           MR. SALTZ:  Thank you, Your Honor.  With regard to

3    services, a couple preliminary issues:  First of all, the

4    enlargement can be done after the 90 days, and that is

5    because it's -- it's subject to the Court's absolute

6    discretion.  The Court has broad discretion.  We cited case

7    law that says that the Court has broad discretion under Rule

8    4(m) and that was the *Troxell v. Fetters* of North America,

9    Inc. case at 160 F.3d 381.  In that regard, the Court had

10   sent out a -- an order saying that the 90 days had expired,

11   please file your proofs of service or show good cause why it

12   is that you need -- that you didn't file your proof of

13   service.  And in response to this Court's order within the

14   time frame as identified within the Court's order, the proofs

15   of service were filed.

16          Now, with regard to this requesting a waiver, we

17   pointed out in our papers that counsel did not identify

18   themselves as being counsel having been hired for the

19   purposes of the case.  In fact, it was immediately after the

20   documents were served that counsel had made their appearance

21   on November 2nd of 2021, and they literally said that they

22   were making an appearance on behalf of Cal Luth., and that

23   was -- we filed the proofs of service on November 3rd.  So

24   they filed their appearance before we even filed our proofs

25   of service.  So we know for a fact that they got the

1   documents.  And in this particular instance, we have

2   identified that this is during COVID.  So there are

3   extraordinary circumstances that we are all having to deal

4   with, not the least of which is being on this Zoom.  Prior to

5   COVID, we did not have the Zoom hearings, and they were --

6            THE COURT:  Oh, I'm having these now because of

7   convenience to the lawyers, and I'm stopping as of this week.

8   I've had tons -- hundreds of -- nothing has stopped.  Cases

9   get served, and they have been.  What was the date -- what

10  was the time frame here?

11           MR. SALTZ:  Well, the time frame was as we put into

12  the declaration that -- after my wife's breast cancer

13  surgery -- that I had come back to the office, and provided

14  the documents within the 90-day period to our attorney

15  service.  What we didn't know is that our attorney service

16  wasn't going to the ones to do it.  Our attorney service

17  contracted with a more local attorney service in Ventura

18  county.  So there was a delay there.  And then they gave it

19  to an attorney service that we have never used before.  This

20  particular process server we later learned has been a process

21  server for nearly 40 years -- I think over 40 years -- and

22  when we asked him about the circumstances of service, he said

23  that when he was there to serve a document, it was the

24  receptionist who brought out Ms. Meza with -- saying that

25  this is the person to talk to about service.  Ms. Meza came

1   out, and he said that she was very accommodating and offered
2   to accept service.  Our instructions to the process server
3   were to try to serve Cal Lutheran University at Cal Lutheran
4   University.  To the extent that the individuals were working
5   at Cal Lutheran University, find them and serve them at
6   Cal Lutheran, if not, go to their homes and serve them.  The
7   only reason why he served Ms. Meza for the individuals was
8   because she represented that she would make sure that they
9   would get them and that she was authorized to accept them on
10  their behalf in order to have -- as conveniences to the
11  individuals.  Ms. Meza still works at
12  Cal Lutheran University and has incentive in order to go
13  along with the party lie now to claim oh, no, I didn't tell
14  him I was able to accept service.  The fact of the matter is,
15  if she wasn't able to accept service, she shouldn't have been
16  presented as the one there to speak to a process server.  The
17  message should have been, our agent for service of proces
18  isn't here right now.  She will be back at this time or on
19  this day.  Please come back on that day.  And as we explained
20  in our papers, our process server was financially
21  incentivized to come back on a different day, because he gets
22  paid per attempt.  To the extent that he decided to just
23  drop, serve everything on a person who says, I can't accept
24  service, and this person has over 40 years of experience, and
25  he's a licensed registered process server.  So there's a

1   presumption with regard to his testimony.  Under the law,

2   it -- if the -- the argument just does not make sense.  And

3   it's very convenient that it is being made.  And it -- if so,

4   that they can take advantage of a statute of limitations

5   argument.

6          In California, there is a statute that -- that a

7   party cannot take advantage of their own -- if Ms. Meza was

8   not abundantly clear, that is, her providing a registered

9   process server misleading information that she had the

10  ability to accept service on behalf of these defendants --

11  and apparently, she did have the ability, because she made

12  sure that these documents got to the right people, and they

13  filed a notice of appearance immediately after and before the

14  proofs of service were even filed with the Court.

15         That being said, there was compliance with the

16  Court's order with regard to the proofs of service being

17  filed.  The Court did not pursue any further sanctions.  Then

18  in meet-and-confer efforts with regard to the proposed motion

19  to dismiss on the merits the first original complaint, there

20  were certain deficiencies that counsel had brought up to

21  plaintiff's counsel.  And we propose that we file a first

22  amended complaint.  That first amended complaint was then

23  subsequently served on each of the individual defendants, and

24  they are not claiming that there are any issues with this

25  service of the new summons and new complaint on each of the

1    defendants.  What they're claiming is, is that this one issue

2    with regard to these defects in service, whether that gave

3    them certain -- provided jurisdiction with regard.  So we

4    have this unique set of facts, and as a result of that,

5    that's why we pointed out under

6    Rule 4(m), the Court has broad discretion in order to

7    determine that an enlargement is appropriate and that the

8    parties are -- are hereby properly before the Court, based

9    upon the subsequent service to which they all agree that they

10   were served the amended summons and the amended complaint.

11   In that regard --

12          THE COURT:  So let me ask:  Why wasn't -- why

13   weren't they served in the first 90 days?  Why was no service

14   attempted?

15          MR. SALTZ:  Well, that's misleading, Your Honor.

16   Before we found out that my wife was sick, I had reached out

17   to prior counsel, Natasha Baker, and had spoke with her,

18   asking if she was going to be involved and to accept service.

19   Natasha Baker informed us that her firm would not be involved

20   in the litigation.  We did not know who the firm was that

21   would be involved with the litigation.  After that, it was my

22   responsibility to go ahead and put out service, and I was

23   gone for an extended period of time.

24          THE COURT:  Why was it just your responsibility?

25   You have co-counsel.  Service is not, you know, partner-level

1  material.  It can be done by any -- it can be supervised or

2  arranged by any competent attorney.  Why would you --

3          MR. SALTZ:  Because it's up to me, Your Honor, in

4  order to assign it, and I didn't assign it.  That's what I

5  was saying.  And when I came back was within the 90 days, it

6  was submitted to our attorney service with instructions to

7  serve it.  We didn't know that when we gave it to our

8  attorney service within that 90-day period that they were

9  going to subcontract out to an attorney service that we had

10  never heard of before, and that that attorney service didn't

11  get the memo that we needed it within the earlier period.  He

12  missed it by two days, 48 hours with regard to his attempted

13  service.  And, again, in that regard, we -- we explained that

14  there were extenuating circumstances, and there were attempts

15  within that time period.

16          THE COURT:  All right.

17          MR. SALTZ:  And -- and when we received the Court's

18  order, we immediately complied by filing the proofs of

19  service that we had, which was one of the items that said

20  this would cure the order.  It wasn't until much later that

21  we were informed that they were going to challenge that

22  service.  They didn't tell us until our meet-and-confer

23  efforts -- till much later on that they believed that service

24  was an issue, and that they wanted to preserve their argument

25  for service in the motion to dismiss.  This meet-and-confer

1    didn't happen until December.  So it wasn't until December

2    that we were fully apprised that they intended to say that

3    Ms. Meza didn't have authority, which is -- again, doesn't

4    make sense if she stated she did have authority, then that

5    makes sense the registered process server would give her all

6    of the complaints and summonses for each of the defendants.

7    If she didn't say she had authority, then the process server

8    had expressed instructions to go and serve the individual

9    defendants --

10          THE COURT:  Now you're repeating what you said

11   before.  So I've heard that.

12          MR. SALTZ:  All right.

13          THE COURT:  Let me turn to the Defense counsel.  So

14   how is it when the 90 days comes up, I issue an order that

15   says, you know, show good cause.  You know, file something to

16   show good cause as to why you haven't served -- filed a proof

17   of service, and a valid response to this is filing of a proof

18   of service.  You're telling me that the order that I issue

19   is -- that's no good?  I have to -- I have to look into the

20   good cause within the 90 days, and if they file something

21   thereafter, I don't have discretion to decide anything after

22   that 90 days?

23          MR. RICHARDS:  Well, Your Honor, I would say there

24   are two questions packed up into that.  I certainly think

25   that the Court has discretion to accept good cause shown as

1    the reason for not having served it so far.  And I think the

2    Court's order is proper in that regard.  And I'd suspect the

3    Ninth Circuit might agree that prompt effective service after

4    the Court issues that 90-day notice, would not be an abuse of

5    discretion.  I think under these circumstances, the Court has

6    to look at it very different.  Number one, there is no good

7    cause, and I don't think that's up for debate.

8           Number two, effective service wasn't made in this

9    case at any time thereafter.  And I think it's worth raising

10   that we've cited cases in our brief that show that an amended

11   complaints service doesn't cure the underlying Rule 4

12   problem.  And so, no, I don't think in this case, the Court

13   has the discretion under these circumstances to allow service

14   to remain intact; but even if the Court does have such

15   discretion, I think when the Court reads both, the *Wei* case

16   and the *Summers* case, is what you have to conclude is that if

17   an exception were made in a case with these facts, then the

18   rule is completely swallowed.  And there's no purpose to

19   having the rule in the first place or respectfully, to having

20   the expectation of counsel to serve a complaint promptly.

21          THE COURT:  All right.  I'm not sure this is that

22   case.  I mean, typically when I issue an order that says,

23   show -- either show good cause or in response, promptly serve

24   it and file your proof of service.  And then they file a

25   proof of service, and there's a dispute later on as to

1    whether or not it was legitimate, I'm not sure that that is

2    the case where nothing was done and there was no cure -- I'll

3    take a look again at the cases that you've cited.  It is

4    after 11:30 now.  I have other matters.  So I'm just going to

5    take this under submission.  I may address the jurisdictional

6    arguments that -- or the jurisdictional questions that I had

7    or ask you to address them in supplemental briefing.  And,

8    obviously, this doesn't even go to the merits of the -- the

9    substantive merits of the motion, but I leave that to counsel

10   as to what they want to address at oral argument, unless I

11   have particular questions.  So with that, the matter will be

12   under submission, and the Court's ruling will be posted on

13   the docket.

14               MR. PLATT:  Thank you, Your Honor.

15               MR. SALTZ:  Thank you, Your Honor.

16               THE COURT:  Thank you.

17               MS. LEVINE:  Thank you, Your Honor.

18               THE COURTROOM DEPUTY:  This Court is now in recess.

19                   (Whereupon, proceeding adjourned.)

20                       - - -

21

22

23

24

25

**C E R T I F I C A T E**

UNITED STATES OF AMERICA          :

              vs.                 :   No. CV 21-01286-JLS

CALIFORNIA LUTHERAN UNIVERSITY    :

I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

/S/_____          //____

MARIA R. BUSTILLOS                   DATE
OFFICIAL REPORTER

**/**

/AND [1] - 3:14
/S [1] - 25:22

**1**

11:00 [1] - 5:3
11:30 [1] - 24:4
12254 [1] - 2:13
1367 [1] - 9:21
1500 [1] - 3:21
160 [1] - 16:9
18 [1] - 9:8
1880 [2] - 3:6, 3:10
19102 [1] - 3:22
1919 [1] - 3:16
1ST [1] - 2:15

**2**

200 [1] - 9:16
20006 [1] - 3:17
2019 [1] - 6:25
202)342-3447 [1] -
  3:17
2020 [1] - 7:1
2021 [1] - 16:21
2022 [2] - 2:6, 5:1
21-01286-JLS [3] -
  1:13, 5:5, 25:6
213 [1] - 2:18
215)973-7737 [1] -
  3:22
28 [1] - 25:13
2nd [1] - 16:21

**3**

310)446-9900 [2] - 3:7,
  3:12
350 [1] - 2:15
3800 [1] - 3:21
381 [1] - 16:9
3rd [1] - 16:23

**4**

4 [3] - 12:6, 13:21,
  23:11
4(j [1] - 13:24
4(m [4] - 11:20, 14:13,
  16:8, 20:6
40 [3] - 17:21, 18:24
4455 [1] - 2:16
48 [1] - 21:12

**5**

5 [1] - 4:4
550 [1] - 3:16

5th [1] - 8:25

**7**

753 [1] - 25:12

**8**

8 [2] - 2:6, 5:1
894-2739 [1] - 2:18

**9**

9 [2] - 5:22, 5:24
90 [10] - 11:21, 14:22,
  16:4, 16:10, 20:13,
  21:5, 22:14, 22:20,
  22:22
90-day [7] - 14:8, 14:9,
  14:18, 15:1, 17:14,
  21:8, 23:4
900 [2] - 3:6, 3:11
90012 [1] - 2:17
90067 [1] - 3:7, 3:11

**A**

A.M [1] - 5:3
ability [2] - 19:10,
  19:11
able [2] - 18:14, 18:15
ABOVE [1] - 25:15
ABOVE-ENTITLED [1]
  - 25:15
absent [1] - 13:24
absolute [1] - 16:5
absolutely [1] - 13:8
abundantly [1] - 19:8
abuse [1] - 23:4
accept [13] - 12:12,
  12:18, 12:20, 13:12,
  15:11, 18:2, 18:9,
  18:14, 18:15, 18:23,
  19:10, 20:18, 22:25
accommodating [1] -
  18:1
action [2] - 9:23,
  13:20
actual [4] - 13:9,
  13:14, 14:14
address [5] - 6:13,
  10:19, 24:5, 24:7,
  24:10
addressed [1] - 10:23
adjourned [1] - 24:19
administration [1] -
  8:9
administrative [2] -
  7:4, 12:13
administrator [1] - 8:5
advantage [2] - 19:4,
  19:7
affidavits [3] - 12:14,

12:16, 13:5
agent [2] - 12:14,
  18:17
agree [2] - 20:9, 23:3
ahead [2] - 10:21,
  20:22
al [6] - 1:7, 1:18, 3:4,
  3:15, 5:5, 5:6
alleged [7] - 6:10, 7:5,
  7:22, 8:10, 9:2, 9:4,
  9:5
allow [2] - 13:25,
  23:13
almost [2] - 7:15,
  11:22
amended [5] - 19:22,
  20:10, 23:10
America [1] - 16:8
AMERICA [1] - 25:5
AND [3] - 25:10,
  25:13, 25:15
AND/OR [1] - 25:19
ANGELES [5] - 2:4,
  2:17, 3:7, 3:11, 5:1
answer [1] - 9:17
answered [1] - 5:21
ANY [1] - 25:18
appearance [4] -
  16:20, 16:22, 16:24,
  19:13
appearances [1] - 5:7
apply [1] - 13:21
apprised [1] - 22:2
appropriate [2] - 11:6,
  20:7
appropriately [1] -
  11:7
ARE [1] - 25:19
argument [4] - 19:2,
  19:5, 21:24, 24:10
arguments [2] - 11:16,
  24:6
arise [1] - 9:20
arises [1] - 6:4
ARNSTEIN [2] - 3:14,
  3:19
arranged [1] - 21:2
Article [1] - 6:5
assign [2] - 21:4
assistant [1] - 12:13
AT [1] - 5:3
athletes [1] - 9:1
Athletics [1] - 6:24
attempt [1] - 18:22
attempted [3] - 11:21,
  20:14, 21:12
attempts [2] - 14:25,
  21:14
attorney [10] - 17:14,
  17:15, 17:16, 17:17,
  17:19, 21:2, 21:6,
  21:8, 21:9, 21:10
authority [6] - 12:12,
  12:18, 13:12, 22:3,
  22:4, 22:7

authorized [2] - 15:12,
  18:9
AVENUE [1] - 3:16

**B**

Baker [2] - 20:17,
  20:19
balancing [1] - 13:23
barred [1] - 14:4
based [3] - 6:2, 13:5,
  20:8
basis [2] - 6:9, 7:18
beard [1] - 8:20
beards [1] - 8:1
behalf [9] - 5:10, 5:12,
  5:14, 5:15, 12:12,
  12:20, 16:22, 18:10,
  19:10
BEHALF [2] - 3:4, 3:10
believes [2] - 8:14,
  11:7
better [1] - 9:11
between [2] - 5:23, 7:5
beyond [1] - 12:10
blackface [10] - 6:1,
  6:15, 6:23, 7:3, 8:11,
  8:12, 8:13, 8:14,
  8:23, 9:1
Bob [2] - 8:6, 8:9
bound [2] - 9:23, 10:2
breast [1] - 17:12
brief [5] - 11:8, 11:16,
  13:17, 14:12, 23:10
briefed [2] - 5:20,
  11:17
briefing [2] - 10:18,
  24:7
briefs [1] - 11:23
bring [3] - 9:23, 10:2,
  10:14
broad [3] - 16:6, 16:7,
  20:6
brought [2] - 17:24,
  19:20
Buendia [1] - 14:24
burden [3] - 11:25,
  12:15, 12:22
BUSTILLOS [3] - 2:11,
  25:10, 25:23
BY [4] - 3:5, 3:10,
  3:15, 3:20

**C**

C.S.R [1] - 2:13
CA [2] - 3:7, 3:11
Cal [8] - 6:12, 10:1,
  16:22, 18:3, 18:5,
  18:6, 18:12
calculated [1] - 13:14
calendar [1] - 11:14
CALIFORNIA [8] - 1:2,
  1:17, 2:4, 2:17, 3:14,

5:1, 25:7, 25:12
California [3] - 5:5,
  13:10, 19:6
cancer [1] - 17:12
cannot [1] - 19:7
capacities [1] - 12:17
case [27] - 6:5, 9:21,
  10:7, 11:20, 11:22,
  13:8, 13:18, 13:25,
  14:2, 14:3, 14:20,
  14:25, 15:2, 15:4,
  15:17, 15:18, 16:6,
  16:9, 16:19, 23:9,
  23:12, 23:15, 23:16,
  23:17, 23:22, 24:2
cases [5] - 11:22,
  14:11, 17:8, 23:10,
  24:3
causes [1] - 9:23
CENTRAL [2] - 1:2,
  25:11
CENTRE [1] - 3:21
CENTURY [2] - 3:6,
  3:10
certain [2] - 19:20,
  20:3
certainly [7] - 6:3,
  10:8, 10:11, 11:5,
  11:8, 11:15, 22:24
CERTIFY [1] - 25:12
cetera [1] - 7:9
challenge [2] - 10:6,
  21:21
CHARGED [1] - 25:18
Chris [1] - 8:5
chronology [1] - 6:21
cigarette [1] - 8:8
Circuit [4] - 13:10,
  13:18, 13:21, 23:3
CIRCUIT [1] - 25:18
circumstances [6] -
  12:23, 17:3, 17:22,
  21:14, 23:5, 23:13
cite [2] - 11:23, 14:11
cited [4] - 13:17, 16:6,
  23:10, 24:3
claim [9] - 5:22, 5:24,
  6:4, 9:13, 10:20,
  10:21, 11:3, 14:5,
  18:13
claiming [2] - 19:24,
  20:1
claims [10] - 5:23, 6:2,
  9:17, 9:24, 10:1,
  10:3, 10:9, 10:14,
  11:4, 14:4
clear [6] - 12:5, 12:10,
  13:8, 13:19, 14:20,
  19:8
clearest [1] - 11:19
clearly [1] - 12:21
co [1] - 20:25
co-counsel [1] - 20:25
Coach [2] - 9:4, 9:25
coach [1] - 9:7
coaches [1] - 8:22

**CODE** [1] - 25:13
**competent** [1] - 21:2
**complaint** [17] - 6:10, 6:11, 6:19, 7:8, 7:9, 7:10, 7:22, 9:9, 10:2, 12:7, 15:8, 19:19, 19:22, 19:25, 20:10, 23:20
**complaints** [4] - 6:18, 6:19, 22:6, 23:11
**completely** [3] - 13:11, 13:13, 23:18
**compliance** [1] - 19:15
**complied** [1] - 21:18
**conclude** [1] - 23:16
**conduct** [4] - 7:24, 8:10, 10:10
**confer** [2] - 19:18, 21:22, 21:25
**CONFERENCE** [2] - 25:17, 25:20
**CONFORMANCE** [2] - 25:16, 25:19
**Congress** [1] - 13:22
**consider** [1] - 14:13
**consideration** [1] - 13:23
**considerations** [2] - 14:15, 14:17
**considered** [1] - 8:11
**contemporaneous** [1] - 7:15
**contest** [1] - 8:1
**contesting** [1] - 10:15
**context** [1] - 14:22
**continue** [1] - 13:25
**contracted** [1] - 17:17
**controversy** [2] - 6:5, 9:21
**convenience** [1] - 17:7
**conveniences** [1] - 18:10
**convenient** [2] - 10:8, 19:3
**CORRECT** [1] - 25:14
**correct** [5] - 6:8, 7:15, 7:19, 7:20, 14:23
**counsel** [15] - 5:7, 14:1, 14:2, 15:5, 15:19, 16:17, 16:18, 16:20, 19:20, 19:21, 20:17, 20:25, 22:13, 23:20, 24:9
**county** [1] - 17:18
**couple** [1] - 16:3
**COURT** [28] - 1:1, 2:12, 5:3, 5:17, 6:17, 7:7, 7:13, 7:18, 9:12, 9:19, 10:4, 10:17, 10:24, 11:9, 12:24, 14:10, 14:20, 15:25, 17:6, 20:12, 20:24, 21:16, 22:10, 22:13, 23:21, 24:16, 25:10,

25:11
**Court** [25] - 10:12, 11:6, 11:20, 13:1, 13:3, 13:4, 13:6, 14:13, 14:15, 15:8, 15:23, 16:6, 16:7, 16:9, 19:14, 19:17, 20:6, 20:8, 22:25, 23:4, 23:5, 23:12, 23:14, 23:15, 24:18
**Court's** [10] - 11:14, 12:5, 14:9, 16:5, 16:13, 16:14, 19:16, 21:17, 23:2, 24:12
**COURTHOUSE** [1] - 2:14
**COURTROOM** [2] - 5:4, 24:18
**courts** [1] - 13:10
**cover** [1] - 11:15
**covered** [1] - 8:17
**COVID** [2] - 17:2, 17:5
**cropped** [1] - 8:7
**cure** [3] - 21:20, 23:11, 24:2
**CV** [2] - 1:13, 25:6

**D**

**Dan** [1] - 6:25
**date** [1] - 17:9
**DATE** [1] - 25:23
**DAY** [2] - 1:7, 3:4
**days** [11] - 11:21, 14:22, 16:4, 16:10, 20:13, 21:5, 21:12, 22:14, 22:20, 22:22
**DC** [1] - 3:17
**DE** [2] - 3:5, 3:9
**deal** [1] - 17:3
**debate** [3] - 11:20, 12:10, 23:7
**Debby** [2] - 5:5, 7:4
**DEBBY** [2] - 1:7, 3:4
**December** [3] - 6:25, 22:1
**decide** [1] - 22:21
**decided** [4] - 6:14, 7:3, 14:24, 18:22
**decision** [1] - 15:22
**decisions** [1] - 14:12
**declaration** [1] - 17:12
**defamation** [1] - 14:5
**defects** [1] - 20:2
**defendant** [2] - 12:12, 15:3
**defendant's** [1] - 5:18
**DEFENDANT'S** [2] - 2:2, 4:4
**defendants** [8] - 5:14, 5:16, 12:16, 19:10, 19:23, 20:1, 22:6, 22:9
**Defendants** [1] - 1:20
**DEFENDANTS** [1] -

3:14
**Defense** [3] - 10:5, 11:10, 22:13
**deficiencies** [1] - 19:20
**delay** [1] - 17:18
**denied** [1] - 15:6
**DEPOSIT** [1] - 25:19
**DEPUTY** [2] - 5:4, 24:18
**determine** [2] - 13:4, 20:7
**determined** [1] - 8:21
**different** [3] - 11:22, 18:21, 23:6
**difficulty** [1] - 15:2
**diligent** [2] - 14:1, 14:2
**director** [1] - 6:24
**discretion** [10] - 14:9, 16:6, 16:7, 20:6, 22:21, 22:25, 23:5, 23:13, 23:15
**discretionary** [1] - 15:22
**dismiss** [4] - 5:18, 14:3, 19:19, 21:25
**DISMISS** [2] - 2:2, 4:4
**dismissal** [1] - 11:6, 14:5, 14:6, 15:24
**dispute** [1] - 23:25
**disputed** [1] - 12:21
**DISTRICT** [5] - 1:1, 1:2, 1:5, 25:11
**DIVISION** [1] - 1:3
**DO** [1] - 25:12
**docket** [1] - 24:13
**document** [1] - 17:23
**documents** [4] - 16:20, 17:1, 17:14, 19:12
**done** [6] - 9:16, 11:7, 13:23, 16:4, 21:1, 24:2
**draws** [1] - 9:9
**dreadlocks** [1] - 8:7
**dressed** [2] - 8:2, 8:6
**drop** [1] - 18:23
**during** [2] - 12:2, 17:2
**duty** [2] - 9:23, 10:2
**duty-bound** [1] - 9:23, 10:2
**Dynamite** [1] - 8:19

**E**

**e-mail** [1] - 8:25
**EAST** [2] - 3:6, 3:10
**effect** [1] - 15:21
**effective** [2] - 23:3, 23:8
**effectively** [1] - 12:9
**efficient** [1] - 10:8
**effort** [1] - 15:7
**efforts** [2] - 19:18,

21:23
**either** [4] - 7:17, 10:18, 15:6, 23:23
**ELANA** [1] - 3:10
**Elana** [1] - 5:12
**employment** [1] - 9:15
**encourage** [1] - 14:1
**end** [1] - 15:1
**engage** [1] - 7:23
**engaged** [1] - 9:1
**engaging** [1] - 7:25
**enlargement** [6] - 12:1, 12:4, 14:17, 14:21, 16:4, 20:7
**ENTITLED** [1] - 25:15
**ESQ** [4] - 3:5, 3:10, 3:15, 3:20
**essentially** [1] - 5:24
**et** [7] - 1:7, 1:18, 3:4, 3:15, 5:5, 5:6, 7:9
**event** [3] - 7:16, 8:23, 9:10
**eventual** [1] - 14:14
**evidentiary** [2] - 12:25, 13:3
**EWING** [2] - 3:14, 3:19
**exact** [1] - 7:24
**exception** [2] - 13:12, 23:17
**excusable** [1] - 15:17
**expectation** [2] - 12:6, 23:20
**experience** [1] - 18:24
**expired** [1] - 16:10
**explained** [2] - 18:19, 21:13
**expressed** [1] - 22:8
**extended** [1] - 20:23
**extending** [1] - 14:22
**extension** [3] - 14:8, 14:12, 15:1
**extent** [5] - 9:25, 10:2, 11:5, 18:4, 18:22
**extenuating** [1] - 21:14
**extra** [1] - 15:15
**extraordinary** [1] - 17:3

**F**

**F.3d** [1] - 16:9
**face** [2] - 8:7, 8:17
**faces** [1] - 8:17
**fact** [9] - 7:23, 9:22, 9:25, 12:15, 12:22, 13:21, 16:19, 16:25, 18:14
**factors** [1] - 14:13
**facts** [2] - 20:4, 23:17
**far** [3] - 6:8, 9:15, 23:1
**February** [1] - 8:25
**federal** [1] - 5:22
**FEE** [1] - 25:18
**FEES** [1] - 25:18

**Fetters** [1] - 16:8
**file** [7] - 16:11, 16:12, 19:21, 22:15, 22:20, 23:24
**filed** [11] - 12:8, 12:14, 12:16, 16:15, 16:23, 16:24, 19:13, 19:14, 19:17, 22:16
**filing** [2] - 21:18, 22:17
**financially** [1] - 18:20
**fine** [1] - 8:24
**firm** [2] - 20:19, 20:20
**first** [8] - 5:19, 11:21, 16:3, 19:19, 19:21, 19:22, 20:13, 23:19
**five** [2] - 8:2, 8:3
**FOR** [3] - 25:10, 25:11, 25:18
**FOREGOING** [1] - 25:13
**FORMAT** [1] - 25:16
**forth** [1] - 11:1
**frame** [4] - 6:19, 16:14, 17:10, 17:11
**FRIDAY** [2] - 2:6, 5:1
**fully** [1] - 22:2

**G**

**George** [1] - 8:20
**girls** [2] - 7:25, 8:18
**goatee** [1] - 8:19
**great** [1] - 8:9
**grounds** [1] - 11:24
**group** [1] - 8:2
**guess** [1] - 8:12
**guidelines** [1] - 12:7

**H**

**handled** [1] - 7:21
**happy** [1] - 11:8
**Hawaii** [1] - 13:18
**heard** [2] - 21:10, 22:11
**hearing** [2] - 12:25, 13:3
**hearings** [1] - 17:5
**held** [2] - 13:11, 13:22
**HELD** [1] - 25:15
**hell** [1] - 8:1
**HENRY** [1] - 3:15
**Henry** [1] - 5:14
**hereby** [1] - 20:8
**HEREBY** [1] - 25:12
**highlight** [1] - 11:11
**hired** [1] - 16:18
**hit** [1] - 11:14
**homes** [1] - 18:6
**Honor** [17] - 5:9, 5:11, 5:13, 6:7, 9:14, 10:6, 11:2, 14:7, 14:24, 15:22, 16:2, 20:15,

21:3, 22:23, 24:14, 24:15, 24:17
**HONORABLE** [1] - 1:5
**hours** [1] - 21:12
**hundreds** [1] - 17:8

**I**

**identified** [2] - 16:14, 17:2
**identify** [1] - 16:17
**III** [1] - 6:5
**immediately** [4] - 15:21, 16:19, 19:13, 21:18
**IN** [5] - 5:3, 25:10, 25:15, 25:16, 25:19
**inasmuch** [1] - 10:9
**Inc** [1] - 16:9
**incarcerated** [1] - 15:3
**incentive** [1] - 18:12
**incentivized** [1] - 18:21
**incident** [13] - 6:1, 6:3, 6:15, 6:17, 6:23, 7:3, 7:5, 7:8, 7:14, 8:4, 8:12, 8:13, 8:14
**incidents** [1] - 8:13
**independent** [2] - 10:14, 11:24
**individual** [5] - 11:15, 12:16, 12:17, 19:23, 22:8
**individuals** [4] - 15:14, 18:4, 18:7, 18:11
**information** [1] - 19:9
**informed** [2] - 20:19, 21:21
**Instagram** [4] - 7:8, 7:16, 7:25, 8:8
**instance** [2] - 9:2, 17:1
**instead** [1] - 15:15
**instructions** [3] - 18:2, 21:6, 22:8
**insufficiently** [1] - 11:3
**intact** [1] - 23:14
**intended** [1] - 22:2
**interviewed** [1] - 8:21
**investigated** [1] - 6:11
**investigation** [2] - 7:1, 7:11
**involve** [1] - 10:10
**involved** [3] - 20:18, 20:19, 20:21
**IS** [2] - 25:13, 25:16
**issue** [15] - 6:14, 7:3, 9:22, 10:11, 10:15, 10:20, 11:19, 11:20, 13:6, 14:7, 20:1, 21:24, 22:14, 22:18, 23:22
**issued** [2] - 15:8,

15:10
**issues** [6] - 6:13, 9:15, 12:15, 16:3, 19:24, 23:4
**item** [1] - 5:4
**items** [1] - 21:19
**itself** [4] - 6:3, 7:8, 7:14, 10:12
**IX** [10] - 6:8, 6:10, 6:13, 6:19, 6:22, 6:23, 7:1, 7:10, 7:11, 9:9

**J**

**Jackson** [2] - 8:2, 8:3
**JACOBSON** [2] - 3:4, 3:9
**January** [1] - 7:1
**JOSEPHINE** [1] - 1:5
**Josh** [1] - 5:15
**JOSHUA** [1] - 3:20
**JUDGE** [1] - 1:5
**JUDICIAL** [2] - 25:17, 25:20
**JULY** [2] - 2:6, 5:1
**jurisdiction** [6] - 5:21, 9:20, 10:7, 10:13, 10:15, 20:3
**jurisdictional** [2] - 24:5, 24:6

**K**

**Kimball** [2] - 8:5, 9:4
**kitchen** [1] - 11:5
**knowledgeable** [1] - 9:16
**Kuntz** [1] - 6:25

**L**

**LA** [2] - 3:5, 3:9
**lack** [1] - 9:11
**large** [1] - 10:7
**last** [1] - 6:23
**late** [2] - 11:25, 13:7
**law** [3] - 14:20, 16:7, 19:1
**lawyers** [1] - 17:7
**learned** [1] - 17:20
**least** [1] - 17:4
**leave** [3] - 7:4, 9:14, 24:9
**left** [1] - 15:17
**legitimate** [1] - 24:1
**LEHR** [2] - 3:15, 3:19
**Lemoge** [1] - 14:11
**LESS** [1] - 25:18
**level** [2] - 15:15, 20:25
**Levine** [2] - 5:12, 9:15
**LEVINE** [3] - 3:10, 5:11, 24:17

**licensed** [1] - 18:25
**lie** [1] - 18:13
**light** [1] - 15:2
**limitations** [3] - 13:20, 14:14, 19:4
**lip** [1] - 8:1
**literally** [2] - 15:7, 16:21
**litigate** [1] - 10:9
**litigation** [2] - 20:20, 20:21
**LLP** [4] - 3:5, 3:9, 3:15, 3:19
**local** [1] - 17:17
**look** [8] - 8:15, 10:18, 12:23, 13:7, 13:15, 22:19, 23:6, 24:3
**looking** [1] - 10:25
**LOS** [5] - 2:4, 2:17, 3:7, 3:11, 5:1
**lose** [1] - 11:24, 13:19
**lumped** [1] - 9:24
**Luth** [1] - 16:22
**LUTHERAN** [3] - 1:17, 3:14, 25:7
**Lutheran** [8] - 5:5, 6:12, 10:1, 18:3, 18:5, 18:6, 18:12

**M**

**mail** [1] - 8:25
**makeup** [4] - 8:6, 8:16, 8:18, 8:19
**mandatory** [1] - 15:23
**MARIA** [3] - 2:11, 25:10, 25:23
**marijuana** [1] - 8:7
**MARKET** [1] - 3:21
**Marley** [2] - 8:6, 8:9
**material** [1] - 21:1
**matter** [5] - 10:13, 10:14, 11:17, 18:14, 24:11
**MATTER** [1] - 25:15
**matters** [1] - 24:4
**McClanahan** [1] - 13:17
**McHugh** [1] - 9:5
**mean** [3] - 13:20, 15:14, 23:22
**meanwhile** [1] - 15:13
**measure** [1] - 10:7
**meet** [3] - 19:18, 21:22, 21:25
**meet-and-confer** [3] - 19:18, 21:22, 21:25
**memo** [1] - 21:11
**mention** [1] - 8:4
**merely** [1] - 13:19
**merits** [4] - 11:7, 19:19, 24:8, 24:9
**message** [1] - 18:17
**Meza** [11] - 12:11, 12:18, 12:20, 12:21,

15:11, 17:24, 17:25, 18:7, 18:11, 19:7, 22:3
**MICHAEL** [1] - 3:5
**Michael** [2] - 5:10, 8:20
**might** [2] - 10:17, 23:3
**mindful** [1] - 11:13
**mishandled** [1] - 5:25
**misleading** [2] - 19:9, 20:15
**missed** [1] - 21:12
**mistakenly** [1] - 8:14
**morning** [5] - 5:9, 5:11, 5:13, 5:17, 7:17
**MOTION** [2] - 2:2, 4:4
**motion** [5] - 5:18, 11:10, 19:18, 21:25, 24:9
**motive** [1] - 7:21
**MR** [27] - 5:9, 5:13, 5:15, 6:7, 6:21, 7:10, 7:15, 7:20, 9:14, 9:22, 10:6, 10:21, 10:22, 11:2, 11:13, 13:1, 14:16, 14:23, 16:2, 17:11, 20:15, 21:3, 21:17, 22:12, 22:23, 24:14, 24:15
**MS** [2] - 5:11, 24:17
**multiple** [1] - 14:25
**must** [1] - 13:12

**N**

**named** [1] - 5:10
**Napoleon** [1] - 8:19
**NASSIM** [2] - 3:5, 3:9
**Natasha** [2] - 20:17, 20:19
**NCAA** [3] - 6:11, 6:18, 6:22
**nearly** [1] - 17:21
**necessary** [1] - 13:1
**need** [3] - 12:24, 13:6, 16:12
**needed** [1] - 21:11
**needs** [2] - 13:3, 14:21
**neglect** [1] - 15:17
**never** [2] - 17:19, 21:10
**new** [2] - 19:25
**next** [2] - 7:17, 15:13
**nexus** [3] - 7:5, 9:1, 9:9
**Ninth** [4] - 13:10, 13:18, 13:21, 23:3
**North** [1] - 16:8
**nothing** [2] - 17:8, 24:2
**notice** [6] - 13:9, 13:14, 14:14, 19:13, 23:4
**November** [2] - 16:21,

16:23
**number** [3] - 5:4, 23:6, 23:8
**NW** [1] - 3:16

**O**

**obligation** [2] - 10:12, 10:13
**obviously** [1] - 24:8
**occurred** [1] - 8:14
**OF** [11] - 1:2, 1:25, 3:4, 3:14, 25:5, 25:11, 25:14, 25:17, 25:20
**offered** [1] - 18:1
**office** [1] - 17:13
**OFFICIAL** [3] - 2:12, 25:10, 25:23
**ON** [2] - 3:4, 3:14
**one** [15] - 5:4, 5:19, 5:24, 8:2, 8:16, 8:17, 8:19, 8:20, 10:3, 10:25, 11:4, 18:16, 20:1, 21:19, 23:6
**ones** [1] - 17:16
**opportunity** [2] - 9:7, 11:11
**oral** [1] - 24:10
**order** [17] - 12:5, 15:9, 16:10, 16:13, 16:14, 18:10, 18:12, 19:16, 20:6, 21:4, 21:18, 21:20, 22:14, 22:18, 23:2, 23:22
**original** [1] - 19:19
**otherwise** [2] - 6:15, 9:3
**overlap** [1] - 7:19
**overlapping** [1] - 10:10
**own** [1] - 19:7

**P**

**PA** [1] - 3:22
**packed** [1] - 22:24
**PAGA** [8] - 6:4, 9:12, 9:16, 9:17, 9:24, 10:20, 10:21, 11:2
**page** [1] - 8:8
**PAGE** [2] - 4:3, 25:16
**paid** [1] - 18:22
**papers** [4] - 11:11, 13:2, 16:17, 18:20
**PARK** [2] - 3:6, 3:10
**part** [1] - 13:4
**particular** [6] - 9:2, 10:20, 13:8, 14:5, 15:2, 17:1, 17:20, 24:11
**particularly** [1] - 10:19
**parties** [3] - 10:9, 10:10, 20:8

partner [1] - 20:25
partner-level [1] - 20:25
party [2] - 18:13, 19:7
PENNSYLVANIA [1] - 3:16
people [1] - 19:12
per [1] - 18:22
performed [1] - 8:3
period [11] - 6:14, 12:2, 14:8, 14:9, 14:18, 15:1, 17:14, 20:23, 21:8, 21:11, 21:15
person [4] - 15:13, 17:25, 18:23, 18:24
PHILADELPHIA [1] - 3:22
picture [1] - 8:5
pictures [4] - 7:25, 8:16, 8:21, 8:23
place [2] - 6:17, 23:19
plaintiff [3] - 5:8, 13:19, 16:1
plaintiff's [5] - 12:15, 12:22, 15:5, 15:19, 19:21
Plaintiffs [1] - 1:9
plaintiffs [8] - 5:10, 5:12, 6:6, 10:13, 11:23, 11:24, 12:11, 12:19
PLAINTIFFS [1] - 3:4
Platt [1] - 5:14
PLATT [10] - 3:15, 5:13, 6:21, 7:10, 7:15, 7:20, 9:14, 9:22, 10:22, 24:14
plausibility [1] - 13:5
players [2] - 8:22, 9:10
pleaded [1] - 11:3
point [3] - 9:8, 12:5, 15:23
pointed [2] - 16:17, 20:5
points [1] - 11:15
position [2] - 10:11, 10:16
posted [4] - 7:17, 7:24, 8:5, 24:12
posting [2] - 7:8, 7:16
practice [1] - 12:7
prejudice [5] - 11:8, 14:3, 14:6, 14:14, 15:24
preliminary [3] - 5:19, 10:5, 16:3
prepared [1] - 10:11
present [1] - 15:3
presented [1] - 18:16
preserve [1] - 21:24
president [2] - 8:5, 9:4
PRESIDING [1] - 1:13
presumably [1] - 7:13
presumption [1] -

19:1
problem [3] - 11:23, 12:10, 23:12
proceeding [1] - 24:19
PROCEEDINGS [2] - 1:25, 25:15
proces [1] - 18:17
process [12] - 15:10, 15:15, 15:20, 17:20, 18:2, 18:16, 18:20, 18:25, 19:9, 22:5, 22:7
prompt [1] - 23:3
promptly [2] - 23:20, 23:23
promulgating [1] - 13:24
proof [5] - 16:12, 22:16, 22:17, 23:24, 23:25
proofs [7] - 16:11, 16:14, 16:23, 16:24, 19:14, 19:16, 21:18
proper [3] - 14:3, 15:21, 23:2
properly [1] - 20:8
propose [1] - 19:21
proposed [1] - 19:18
provided [2] - 17:13, 20:3
providing [1] - 19:8
purport [1] - 12:11
purpose [2] - 13:25, 23:18
purposes [2] - 9:20, 16:19
PURSUANT [1] - 25:12
pursue [1] - 19:17
put [5] - 7:4, 8:6, 8:8, 17:11, 20:22

Q

questions [4] - 10:5, 22:24, 24:6, 24:11

R

raise [2] - 5:19, 11:16
raising [1] - 23:9
reach [1] - 13:6
reached [1] - 20:16
reads [1] - 23:15
realized [1] - 15:19
really [1] - 6:2
reason [5] - 12:7, 13:24, 15:6, 18:7, 23:1
received [1] - 21:17
receptionist [1] - 17:24
recess [1] - 24:18
REDUCTION [1] -

25:19
regard [18] - 6:9, 7:21, 7:22, 9:16, 9:24, 14:12, 16:2, 16:9, 16:16, 19:1, 19:16, 19:18, 20:2, 20:3, 20:11, 21:12, 21:13, 23:2
registered [4] - 12:14, 18:25, 19:8, 22:5
REGULATIONS [2] - 25:16, 25:20
relating [1] - 5:25
relationship [1] - 5:23
relevant [2] - 14:15, 14:17
remain [1] - 23:14
remedy [1] - 14:3
removed [1] - 15:15
repeat [1] - 11:18
repeating [1] - 22:10
report [3] - 6:12, 6:23, 7:1
REPORTED [1] - 25:14
reported [1] - 6:22
REPORTER [3] - 2:12, 25:10, 25:23
REPORTER'S [1] - 1:25
represented [1] - 18:8
request [2] - 12:1, 14:21
requested [3] - 12:3, 12:4, 14:21
requesting [1] - 16:16
require [1] - 14:1
resolve [1] - 13:2
respectfully [1] - 14:6, 15:21, 23:19
response [3] - 16:13, 22:17, 23:23
responsibility [2] - 20:22, 20:24
result [3] - 7:4, 14:2, 20:4
retaliation [4] - 5:25, 6:10, 6:16, 9:9
RICHARDS [10] - 3:20, 5:15, 10:6, 10:21, 11:2, 11:13, 13:1, 14:16, 14:23, 22:23
Richards [1] - 5:15
Richards... [1] - 11:1
rid [3] - 9:3, 9:6, 9:7
rule [5] - 13:11, 13:14, 14:1, 23:18, 23:19
Rule [7] - 12:6, 13:21, 13:24, 14:13, 16:7, 20:6, 23:11
ruling [1] - 24:12
RUSSELL [2] - 3:4, 3:9

S

SACV [1] - 5:5
Saltz [1] - 5:10
SALTZ [12] - 3:4, 3:5, 3:9, 5:9, 6:7, 16:2, 17:11, 20:15, 21:3, 21:17, 22:12, 24:15
sanctions [1] - 19:17
satisfy [1] - 10:12
SAUL [2] - 3:14, 3:19
saw [1] - 8:20
school [3] - 6:14, 7:2, 8:13
second [1] - 12:10
SECTION [1] - 25:12
see [3] - 5:23, 6:2, 6:4
seek [1] - 10:18
sense [3] - 19:2, 22:4, 22:5
sent [1] - 16:10
sentence [1] - 5:24
serve [12] - 13:12, 15:7, 15:13, 17:23, 18:3, 18:5, 18:6, 18:23, 21:7, 22:8, 23:20, 23:23
served [12] - 12:9, 12:11, 15:16, 15:20, 16:20, 17:9, 18:7, 19:23, 20:10, 20:13, 22:16, 23:1
server [12] - 15:10, 15:15, 15:20, 17:20, 17:21, 18:2, 18:16, 18:20, 18:25, 19:9, 22:5, 22:7
service [57] - 11:21, 12:2, 12:12, 12:14, 12:18, 12:19, 12:20, 13:13, 13:25, 14:14, 15:5, 15:11, 15:21, 16:11, 16:13, 16:15, 16:23, 16:25, 17:15, 17:16, 17:17, 17:19, 17:22, 17:25, 18:2, 18:14, 18:15, 18:17, 18:24, 19:10, 19:14, 19:16, 19:25, 20:2, 20:9, 20:13, 20:18, 20:22, 20:25, 21:6, 21:8, 21:9, 21:10, 21:13, 21:19, 21:22, 21:23, 21:25, 22:17, 22:18, 23:3, 23:8, 23:11, 23:13, 23:24, 23:25
services [1] - 16:3
serving [2] - 12:1, 15:3
SESSION [1] - 5:3
set [1] - 20:4
severed [1] - 12:8
show [8] - 15:9, 16:11, 22:15, 22:16, 23:10,

23:23
shown [3] - 12:2, 14:18, 22:25
sick [1] - 20:16
side [1] - 10:25
similar [1] - 7:24
simply [1] - 15:16
sink [1] - 11:5
six [1] - 11:14
so-called [2] - 6:15, 7:3
someone [1] - 13:12
sorry [2] - 10:21, 10:24
sort [3] - 11:4, 12:24, 15:18
sponte [1] - 10:18
SQUARE [1] - 3:21
squarely [1] - 13:22
standard [3] - 13:9, 13:10, 13:15
standing [1] - 12:5
start [1] - 6:5
starting [1] - 5:7
state [4] - 5:7, 5:22, 6:2, 13:18
STATES [7] - 1:1, 2:14, 25:5, 25:11, 25:13, 25:17, 25:20
States [1] - 14:11
STATON [1] - 1:5
statute [4] - 13:20, 14:13, 19:4, 19:6
STENOGRAPHICALLY [1] - 25:14
still [4] - 12:4, 12:9, 14:19, 18:11
stopped [1] - 17:8
stopping [1] - 17:7
strategically [1] - 15:6
STREET [2] - 2:15, 3:21
student [1] - 8:25
sua [1] - 10:18
subcontract [1] - 21:9
subject [3] - 10:12, 10:14, 16:5
submission [2] - 24:5, 24:12
submitted [1] - 21:6
subsequent [1] - 20:9
subsequently [1] - 19:23
substantial [1] - 6:9
substantive [1] - 24:9
successfully [1] - 9:8
sucked [1] - 9:10
sued [1] - 12:17
SUITE [4] - 2:16, 3:6, 3:11, 3:16
Summers [3] - 13:8, 13:17, 23:16
summons [2] - 19:25, 20:10
summonses [1] - 22:6

supervised [1] - 21:1
supplemental [4] - 5:21, 9:20, 10:7, 24:7
surgery [1] - 17:13
surrounding [1] - 12:23
suspect [1] - 23:2
swallowed [2] - 13:13, 23:18
sync [1] - 8:1

**T**

team [1] - 7:23
testimony [1] - 19:1
THAT [2] - 25:12, 25:15
THE [39] - 3:4, 3:14, 5:4, 5:17, 6:17, 7:7, 7:13, 7:18, 9:12, 9:19, 10:4, 10:17, 10:24, 11:9, 12:24, 14:10, 14:20, 15:25, 17:6, 20:12, 20:24, 21:16, 22:10, 22:13, 23:21, 24:16, 24:18, 25:10, 25:11, 25:13, 25:14, 25:15, 25:16, 25:17, 25:19, 25:20
themselves [1] - 16:18
thereafter [2] - 22:21, 23:9
THIS [1] - 25:18
thoroughly [1] - 11:17
three [1] - 12:16
thrown [1] - 11:4
time-barred [1] - 14:4
TITLE [1] - 25:13
Title [12] - 5:22, 5:24, 6:8, 6:10, 6:13, 6:19, 6:22, 6:23, 7:1, 7:10, 7:11, 9:9
TO [3] - 2:2, 4:4, 25:12
today [2] - 10:11, 15:16
together [1] - 10:9
tons [1] - 17:8
took [1] - 13:22
TORRE [2] - 3:5, 3:9
TRANSCRIPT [4] - 1:25, 25:14, 25:16, 25:18
Troxell [1] - 16:8
TRUE [1] - 25:13
try [4] - 11:14, 11:15, 11:17, 18:3
trying [1] - 9:3
turn [5] - 10:4, 10:25, 11:10, 15:25, 22:13
two [11] - 5:23, 6:14, 7:2, 7:6, 7:11, 7:13, 8:18, 11:24, 21:12, 22:24, 23:8
two-week [1] - 6:14

typically [1] - 23:22

**U**

ulterior [1] - 7:21
under [11] - 9:21, 12:6, 14:12, 16:7, 19:1, 20:5, 23:5, 23:13, 24:5, 24:12
underlying [1] - 23:11
unique [1] - 20:4
United [1] - 14:11
UNITED [7] - 1:1, 2:14, 25:5, 25:11, 25:13, 25:17, 25:20
University [8] - 5:6, 6:12, 10:1, 15:14, 18:3, 18:4, 18:5, 18:12
UNIVERSITY [3] - 1:18, 3:15, 25:7
university [1] - 15:11
unless [1] - 24:10
unlike [1] - 14:7
up [8] - 6:12, 8:8, 9:3, 19:20, 21:3, 22:14, 22:24, 23:7

**V**

valid [1] - 22:17
Ventura [1] - 17:17
verify [1] - 8:16
videos [1] - 8:23
violations [2] - 6:22
vitiate [1] - 13:11
volleyball [1] - 7:23
VP [1] - 12:13
vs [2] - 1:13, 25:6

**W**

W.B [1] - 3:20
wage [1] - 6:4
waiver [2] - 15:5, 16:16
WASHINGTON [1] - 3:17
week [4] - 6:14, 8:1, 12:8, 17:7
weeks [3] - 7:2, 7:11, 7:14
Wei [3] - 13:17, 13:18, 23:15
WEST [2] - 2:15, 3:21
WESTERN [1] - 1:3
whatsoever [1] - 15:7
whole [2] - 8:17, 15:15
wife [1] - 20:16
wife's [1] - 17:12
wigs [3] - 8:2, 8:3, 8:19
WITH [2] - 25:16,

25:19
word [1] - 9:11
works [1] - 18:11
worth [1] - 23:9

**Y**

years [4] - 9:8, 17:21, 18:24

**Z**

ZOOM [1] - 1:25
Zoom [3] - 10:25, 17:4, 17:5